**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **MARRIOTT INTERNATIONAL RESORTS, L.P., MARRIOTT INTERNATIONAL JBS CORPORATION, Tax Matters Partner,** | ) | |
| **Plaintiffs,** | ) | **Nos. 01-256T and 01-257T** |
| | ) | **Judge Charles F. Lettow** |
| **v.** | ) | |
| **THE UNITED STATES,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING THE DOCUMENTS WITHHELD OR REDACTED BY DEFENDANT ON THE GROUNDS OF EXECUTIVE PRIVILEGE**

Harold J. Heltzer (Attorney of Record)
Robert L. Willmore
Alex E. Sadler
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
Tel: (202) 624-2500
Fax: (202) 628-5116

Attorneys for Plaintiffs

# TABLE OF CONTENTS

Page

I. In Invoking Deliberative Process Privilege As To The Withheld Or Redacted 339 Documents, Defendant Has Failed To Show How The Disclosure Of The Withheld Information In Any One Of The 339 Documents Would Actually Harm The IRS. In Addition, Defendant Has Failed To Consider Any Other Competing Interests, Such As The Opposing Litigant's Interest Or The Public's Right To Know, But Instead Takes The Unsupported Position That Such Interests Need Only Be Considered By The Court. .......... 3

II. Even If Defendant's Invocation Of Executive Privilege Were Not Deficient Because Of The IRS's Failure To Identify Specific Harm From Disclosure And To Balance That Harm Against The Prejudice To Marriott From Non-Disclosure, Defendant Should Be Required To Produce The Withheld Documents Because Marriott's Evidentiary Need For Those Documents Far Outweighs the IRS's Need For Administrative Confidentiality. This Is Particularly True Here Given The Many Years That Have Elapsed And The Fact That The Pertinent Tax Policy Issues Are Now Governed By New Treasury Regulations. .......... 16

A. As This Court Has Already Held, The 339 Documents At Issue Are Relevant To The Merits Of This Action. Furthermore, To The Extent Such Documents Reflect The IRS's Actual Interpretations of I.R.C. § 752, They Are Not "Deliberative" But Represent The Working Law Of The Agency And Must Be Disclosed. .......... 16

B. Marriott's Evidentiary Need For The Documents At Issue Far Outweighs The Government's Interest In Confidentiality. The Documents Are Directly Relevant To Marriott's Contentions On The Liability Issue, And Defendant Cannot Identify Any Important Governmental Interest That Would Be Compromised By Their Disclosure. .......... 19

C. The Documents Withheld By The Government On Deliberative Process Grounds In Klamath Are Completely Different Than The Documents Being Withheld By Defendant Here. .......... 28

CONCLUSION .......... 30

**TABLE OF AUTHORITIES**

**Page**

**Cases**

Anderson, Clayton & Co. v. United States, 562 F.2d 972 (5th Cir. 1977) ........ 22

Bank of America v. United States, 42 A.F.T.R.2d 78-5225, 78-2 USTC ¶ 9493, 1978 WL 4492 (N.D. Cal. 1978) ........ 17

CACI Field Servs. v. United States, 12 Cl. Ct. 680, 687 (1987), aff'd, 854 F.2d 464 (Fed. Cir. 1988) ........ 19

Cheney v. United States District Ct. for the District of Columbia, 542 U.S. 367, 124 S. Ct. 2576 (2004) ........ 14

Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854 (D.C. Cir. 1980) ........ 18

Davis v. United States, 50 Fed. Cl. 192 (2001) ........ 21

Federal Trade Commission v. Warner Communications Inc., 742 F.2d 1156 (9th Cir. 1984) ........ 20, 24, 27

First Heights Bank, FSB v. United States, 46 Fed. Cl. 312 (2000) ........ 7, 11, 19

First Heights Bank, FSB v. United States, 46 Fed. Cl. 827 (2000) ........ 15, 24, 25

In re Franklin National Bank Sec. Litig., 478 F. Supp. 577 (E.D.N.Y. 1979) ........ 27

Gaw v. Commissioner, 70 T.C.M. (CCH) 1196 (1995) ........ 22

Helmer v. Commissioner, 34 T.C.M. (CCH) 727 (1975) ........ 21

Honeywell v. Commissioner, 87 T.C. 624 (1986) ........ 22

Huntleigh USA Corp. v. United States, 71 Fed. Cl. 726 (2006) ........ 8, 11

Jade Trading, LLC v. United States, 65 Fed. Cl. 487 (2005) ........ 16, 17

Judicial Watch, Inc. v. Department of Justice, 365 F.3d 1108
(D.C. Cir. 2004) ..... 15

Klamath Strategic Investment Fund, LLC v. United States,
440 F. Supp. 2d 608 (E.D. Tex. 2006) ..... passim

La Rue v. Commissioner, 90 T.C. 465 (1988) ..... 20, 21

Long v. Commissioner, 71 T.C. 1 (1978), aff'd, 660 F.2d 416
(10th Cir. 1981) ..... 20

Marriott Int'l Resorts, L.P. v. United States,
61 Fed. Cl. 411 (2004) ..... 8, 14, 16, 21

Marriott Int'l Resorts, L.P. v. United States,
63 Fed. Cl. 144 (2004) ..... 19, 22

Marriott Int'l Resorts, L.P. v. United States,
437 F.3d 1302 (Fed. Cir. 2006) ..... 4

Mobil Oil Corp. v. Department of Energy, 102 F.R.D. 1
(N.D.N.Y. 1983) ..... 8

N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132 (1975) ..... 18

Nixon v. United States, 418 U.S. 683 (1974) ..... 25

Pacific Gas & Electric Co. v. United States,
70 Fed. Cl. 128 (2006) ..... 8, 9, 10, 11, 12

Pacific Gas & Electric Co. v. United States,
71 Fed. Cl. 205 (2006) ..... 8, 10, 11, 12

Pikes Peak Family Housing, LLC v. United States,
40 Fed. Cl. 673 (1998) ..... 20

Resolution Trust Corp. v. Diamond, 773 F. Supp. 597
(S.D.N.Y. 1991) ..... 9, 10, 13

In re Sealed Case, 121 F.3d 729 (D.C. Cir. 1997) ..... 20

Tax Analysts v. Internal Revenue Service, 117 F.3d 607
(D.C. Cir. 1997) ..... 24

United States v. Cleveland Indians Baseball Co., 532 U.S. 200 (2001).......... 21

United States v. O'Neill, 619 F.2d 222 (3d Cir. 1980) .............................. 10, 24

Vons Cos. v. United States, 51 Fed. Cl. 1 (2000) ..................................... 16, 18

Walsky Constr. Co. v. United States, 20 Ct. Cl. 317 (1990) ........................ 8, 9

**Other**

26 U.S.C. (I.R.C.) § 752 .......................................................................passim

Notice 2000-44, 2000-2 C.B. 255................................................................... 25

Prop. Treas. Reg. § 1.752-1(a)(4)(ii) & (iv), 68 Fed. Reg. 37437, 37440 (June 24, 2003)........................................................................................ 25

Rev. Rul. 88-77, 1988-2 C.B. 128 .................................................................. 21

Rev. Rul. 95-26, 1995-1 C.B. 131 ..........................................................passim

Temp. Treas. Reg. § 1.752-1T(g)................................................................... 21

Temp. Treas. Reg. § 1.752-6T, 68 Fed. Reg. 37414 (June 23, 2003)........................................................................................ 25

Treas. Reg. § 1.701-2........................................................................................ 28

Treas. Reg. § 1.752-1(a)(4)(ii) & (iv), 70 Fed. Reg. 30334, 30343 (May 26, 2005) ........................................................................................ 26

26A Charles A. Wright & Kenneth W. Graham, Federal Practice and Procedure § 5680 (1992).......................................... 24

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **MARRIOTT INTERNATIONAL RESORTS, L.P., MARRIOTT INTERNATIONAL JBS CORPORATION, Tax Matters Partner,** | |
| **Plaintiffs,** | **Nos. 01-256T and 01-257T** |
| | **Judge Charles F. Lettow** |
| **v.** | |
| **THE UNITED STATES,** | |
| **Defendant.** | |

**PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING THE DOCUMENTS WITHHELD OR REDACTED BY DEFENDANT ON THE GROUNDS OF EXECUTIVE PRIVILEGE**

In accordance with this Court's August 18, 2006, Order, Plaintiffs Marriott International Resorts, L.P., Marriott International JBS Corp., Tax Matters Partner ("Marriott"), respectfully submit this supplemental brief regarding the 339 documents withheld or redacted by Defendant on the grounds of executive privilege. Marriott does not submit this brief as a substitute for, or as a restatement of, the arguments set forth in its Motion to Compel Supporting Memorandum dated February 26, 2004 ("Supporting Memorandum"), or in its Reply Memorandum dated April 30, 2004 ("Reply Memorandum").[1] Rather, this supplemental brief addresses additional issues that emerged (or perhaps became more transparent) during the

1 In addition, as appropriate, this brief will cite to the Appendix of Exhibits ("Appendix") submitted with Marriott's earlier memoranda (Exhibits A through M). Exhibits filed with this brief begin with Exhibit N.

interlocutory appeal regarding defendant's invocations of the deliberative process prong of the executive privilege, and cites additional case law supporting Marriott's arguments. In addition, as per the Court's request at the August status conference, this brief addresses the factors that should be considered in balancing the parties' respective interests in the documents withheld or redacted by Defendant, with particular attention to the relevancy of those documents to the interpretation of "liability" under I.R.C. § 752. See Aug. 18, 2006, Status Conference Transcript, at 19-21.

As discussed below, in light of the fact that Defendant has failed to show how the disclosure of the specific withheld information would actually harm the Internal Revenue Service ("IRS"), as well as failed to consider the competing interests as part of its decision to invoke the deliberative process privilege, the Court can order Defendant to produce all the documents in their entirety to Marriott. In addition, because Marriott has a compelling evidentiary need for the documents, and it is highly doubtful that there is any real harm to the government flowing from the disclosure of these documents to Marriott, the Court can order the documents to be produced on that basis as well.

However, to the extent that the Court concludes that it will not order all the documents to be produced in their entirety to Marriott under one or more of the above bases, Marriott respectfully requests that the Court review the 339 documents (comprising approximately 4,000 pages) in camera to make a determination as to each document whether Defendant's deliberative process claim

should be upheld.[2] In that regard, Marriott is hopeful that this discovery dispute, which has been pending for over two and one-half years, can be resolved soon so that these consolidated cases – which were filed in April of 2001 – can be set for trial next year. As noted by Marriott's counsel at the August status conference, with the exception of this unresolved discovery issue, these cases have been ready for trial for quite some time. While Marriott believes it is entitled to all 339 documents in their entirety for the reasons set forth below, Marriott appreciates the fact that, as a practical matter, the Court may conclude that in camera review of the documents is the quickest way to resolve this discovery dispute so that these cases can be set for trial next year.

## I. In Invoking Deliberative Process Privilege As To The Withheld Or Redacted 339 Documents, Defendant Has Failed To Show How The Disclosure Of The Withheld Information In Any One Of The 339 Documents Would Actually Harm The IRS. In Addition, Defendant Has Failed To Consider Any Other Competing Interests, Such As The Opposing Litigant's Interest Or The Public's Right To Know, But Instead Takes The Unsupported Position That Such Interests Need Only Be Considered By The Court.

In the Federal Circuit's split decision earlier this year holding that an agency head may delegate his ability to invoke the deliberative process privilege to withhold relevant documents in litigation, the Court of Appeals limited its

[2] Marriott has no objection to the Court delegating such a review to a Special Master, though Marriott believes it would be most appropriate for the Court to retain the responsibility for making any legal determinations, such as, for example, whether Marriott's evidentiary need for certain documents outweighs the government's need to maintain the confidentiality of the withheld information.

consideration to the delegation question it had accepted for interlocutory review. See Marriott Int'l Resorts, L.P. v. United States, 437 F.3d 1302 (2006). During the interlocutory appeal briefing, however, it became clear that Defendant has adopted an unprecedented view of its ability to use deliberative process claims to withhold relevant documents in litigation. Under this view, an agency may withhold any document (or redact portions of a document) provided that the withheld information is pre-decisional and deliberative in nature. Specifically, it is Defendant's view – as implemented here – that an agency invoking the deliberative process privilege is under no obligation to determine whether the disclosure of the withheld information would actually harm (much less seriously harm) a specific and important governmental interest, and then to balance that threatened interest against the competing interests of the opposing litigant and the public generally.

Rather, it is Defendant's position that it may rely on a concept of "per se harm" pursuant to which the disclosure of any and all pre-decisional and deliberative information always harms the government because such disclosure (1) might inhibit future internal frank and honest communication;[3] and (2) might

---

3 See Declaration of Margo Stevens ("Stevens Declaration," appended as Exhibit D in Marriott's Appendix) ¶ 10 ("The production of the withheld documents, or portions thereof, more fully described below, would inhibit the frank and honest discussion of legal and policy matters and thus would adversely affect the quality of the Service's decisions and policies."); id. ¶ 11 (same).

create "public confusion."[4] In other words, it is Defendant's position that it is entitled to, and apparently will as a matter of agency policy, invoke the deliberative process privilege to withhold relevant pre-decisional and deliberative information even if the disclosure of that information would not seriously harm any specific and important governmental interest and the non-disclosure of that information would significantly prejudice an opposing litigant and withholds probative information from the court.

As noted, these views were expressly set forth by Defendant in its appellate briefs and at oral argument. Specifically, in its August, 2005 Reply Brief, Defendant (there Appellant) summarized its position that the IRS was under no obligation, in invoking deliberative process privilege, to identify and then balance the asserted harm to the IRS from disclosure against the harm to Marriott and the public generally from non-disclosure of relevant information. As stated by Defendant there:

> A Government agency from whom privileged communications are sought is not responsible for balancing its need for confidentiality against a litigant's need for the relevant documents and testimony. That is the court's role. . . .
>
> The Government's only responsibility is to insure that the documents for which the deliberative process privilege is claimed are properly subject to the privilege. A document is subject to the privilege when it is both predecisional and deliberative . . . . There is no requirement that the Government must show "serious agency harm" . . . to invoke the privilege.

---

4 See Stevens Declaration ¶ 9 ("Disclosure of documents containing reasons and rationales that were not ultimately relied upon by the agency in reaching its decision(s) could create public confusion."); id. ¶ 11 (same).

Reply Brief for the Appellant, at 10-12 (emphasis added) (appended hereto as Exhibit N).[5]

This position was stated even more emphatically in Defendant's response to Marriott's Petition for Rehearing En Banc, where Defendant argued:

> The Government is not required to show that disclosure of documents would cause "serious harm to vital Governmental interests" in order to invoke the deliberative process privilege, as Marriott erroneously contends. . . . The Government's only responsibility is to insure that the documents for which the deliberative process privilege is claimed are properly subject to the privilege, *i.e.*, that they are both predecisional and deliberative. . . . The disclosure of documents that are deliberative and predecisional is *per se* harmful to the Government . . . .
>
> <u>A Government agency from whom privileged communications are sought is not responsible for balancing its need for confidentiality against a litigant's need for the relevant documents and testimony. That is the court's role. If the Government has properly invoked this privilege, it is the court's job to determine if the litigant has a compelling need for the documents that warrants disclosure.</u>

Appellant's Response to Petition for Rehearing En Banc, at 12-14 (emphasis added) (appended hereto as Exhibit O).

As demonstrated below, Defendant is simply wrong as a matter of law that it may invoke the deliberative process privilege to withhold relevant documents in litigation without first considering whether the disclosure of the withheld information will actually harm the agency, and then balancing that harm against the harm of non-disclosure. In arguing that this is not the Executive's

---

5 At oral argument, Defendant's appellate counsel indicated that this was, in fact, the Government's policy position. As noted, the Court of Appeals did not, however, address this particular question.

responsibility, but solely a function to be performed by the Judiciary, Defendant confounds the role of the Judiciary in this process, unnecessarily burdens the Judiciary, and ultimately increases the degree to which the Judiciary interferes in the affairs of the Executive.

There is no doubt that a reviewing court, when confronted with a claim that an otherwise proper invocation of the deliberative process privilege should be overcome due to the opposing litigant's compelling evidentiary need for the withheld documents, should consider both the asserted harm to the agency of such a disclosure as well as the evidentiary need of the opposing litigant for that information, which necessarily includes consideration by the court of the prejudice to the opposing litigant from continued non-disclosure. See, e.g., First Heights Bank, FSB v. United States, 46 Fed. Cl. 312, 322 (2000). In that sense, the court does in fact balance the conflicting interests triggered by the government's invocation of executive privilege.

That does not mean, however, that the Executive is freed of its separate and independent responsibility to ascertain, before invoking executive privilege, that an important governmental interest would be harmed by the disclosure of the withheld information, and that this harm justifies the prejudice to the opposing litigant of continuing to withhold that relevant information. Nor does it mean that the Executive is freed of its obligation to describe that harm in detail and with specificity as to each withheld document to the reviewing court, but may instead simply leave the court to make that complex determination on its own. See, e.g.,

Marriott Int'l Resorts, L.P. v. United States, 61 Fed. Cl. 411, 417 (2004) ("the agency must supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested documents") (quoting Walsky Constr. Co. v. United States, 20 Cl. Ct. 317, 320 (1990) and Mobil Oil Corp. v. Department of Energy, 102 F.R.D. 1, 6 (N.D.N.Y. 1983)).

Significantly, two other judges of this Court have recently issued opinions that are incompatible with the position being urged by the government here. The most extensive analysis (and rejection) of the government's arguments can be found in two opinions by Judge Hewitt in Pacific Gas & Electric Co. v. United States, published at 70 Fed. Cl. 128 (March 14, 2006) (ruling on plaintiffs' motion to compel) and at 71 Fed. Cl. 205 (June 20, 2006) (ruling on defendant's motion for reconsideration of March 14, 2006 order). Also pertinent is Judge Margolis' recent order in Huntleigh USA Corp. v. United States, 71 Fed. Cl. 726 (July 25, 2006).

In Pacific Gas & Electric, the Department of Energy ("DOE") made many of same generalized, per se allegations of harm being asserted by the IRS here – that is, assertions of harm not based on the substance of the information in the withheld documents, but based on the very concept of disclosure itself.[6] Judge Hewitt concluded that such generalized, non-document specific assertions of harm do not meet the procedural requirements for a proper invocation of the deliberative process

6 That is, the alleged harm is unrelated to the substance of the withheld information. Under these allegations, disclosure of pre-decisional, deliberative information is always harmful to the agency no matter how insignificant, dated or obsolete the withheld information may be.

privilege. See 70 Fed. Cl. at 137 ("defendant has failed to 'supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document[s]'") (quoting Walsky, supra). More specifically, Judge Hewitt observed: "The court believes that the deliberative process privilege can be invoked only if the proponent of the privilege explains with particularity how or why disclosure of the substance of the documents would harm an identified deliberative function." Id. at 139 n.11 (emphasis added).

Judge Hewitt considered the generalized allegations of harm set forth in the various DOE affidavits – allegations which largely mirror those set forth in the Stevens Declaration. Judge Hewitt concluded that "such vague, general and conclusory statements – all purporting to apply to many documents but unconnected to any particular document – fail to meet the requirement that defendant 'supply the court with 'precise and certain reasons' for maintaining the confidentiality of the requested document[s].' *Walsky*, 20 Cl. Ct. at 320." 70 Fed. Cl. at 140. As for the repeated assertions in the DOE affidavits that disclosure of the documents would inhibit frank and honest communication within the agency, Judge Hewitt observed that:

> [D]efendant's affidavits provide "merely a paraphrase of the rationale for the deliberative process privilege described in case law." *Resolution Trust,* 773 F. Supp. at 604. Nowhere do these affidavits provide "'precise and certain' reasons for [the government's] decision to withhold the documents," *id.*, nor do they "explain why, particularly, the documents in question here are so sensitive that disclosure would compromise the agency decision-making process to such a degree that the public interest in full disclosure is outweighed," *id.* . . . Adherence to this requirement ensures that the government official called upon to examine documents "has inspected the individual documents and

> determined that the public interest in confidentiality (as distinct from the government's interest in the litigation) outweighs the public interest in disclosure." *Resolution Trust,* 773 F. Supp. at 603.

70 Fed. Cl. at 142. In addition to Resolution Trust Corp. v. Diamond, 773 F. Supp. 597 (S.D.N.Y. 1991), Judge Hewitt cites numerous other cases that show that "this requirement is well-established in persuasive federal case law." 70 Fed. Cl. at 135 n.9 (citing cases).[7]

While Judge Hewitt, in her reconsideration order (71 Fed. Cl. 205), ultimately upheld a number of DOE's deliberative process claims based on her in camera review of the documents and of newly submitted DOE affidavits, she rejected the government's arguments challenging her holding that the agency must demonstrate specific harm and cannot rely on general and conclusory assertions of harm. To the contrary, she emphasized that the explanation offered by the agency "must only identify, with respect to a specific document or type of documents, *why* that document should be protected from discovery and *what* specific harm will result from its disclosure." 71 Fed. Cl. at 209 (emphasis in original); see also id. at 210 (noting that the new DOE affidavits indicate "that harm *particular* to the substance and contents of each document may be caused to defendant by disclosure

---

[7] In this regard, the Third Circuit in United States v. O'Neill, 619 F.2d 222 (3d Cir. 1980) (quoted in footnote 10 of Judge Hewitt's decision), observed that that the Supreme Court has rejected such broad, undifferentiated and generalized claims for confidentiality even when made by the President of the United States. Id. at 227.

of the document to plaintiff") (emphasis in original).[8] Judge Hewitt also reiterated that, in invoking the deliberative process privilege, the agency is required "to determine whether the public interest in confidentiality outweighs the public interest in disclosure." Id. at 208.

Also on point is Judge Margolis' recent decision in Huntleigh USA Corp. v. United States, 71 Fed. Cl. 726 (2006). Although much shorter than Judge Hewitt's two opinions in Pacific Gas & Electric, it reflects the same view of the agency's responsibility when invoking the deliberative process privilege to withhold relevant documents. As noted by Judge Margolis there:

> To protect documents under the privilege, defendant must state with particularity the information subject to the privilege, and provide precise and certain reasons for maintaining the confidentiality of the information. . . . In the [agency's] Declaration, the TSA Administrator describes the content of the 18 documents at issue, states the policy decision each document relates to, and describes the potential harm to the agency if each document were disclosed. The court finds the [agency's] Declaration satisfies the requirements for formal invocation of the deliberative process privilege.

Id. at 728 (citation omitted). See also First Heights Bank, 46 Fed. Cl. at 322 (noting that the government had failed to articulate "any specific or significant harm that would result from the disclosure of the particular documents").

As the Court can readily determine, the Stevens Declaration submitted by the IRS in support of its deliberative process privilege claims here (Appendix, Exhibit D) does not describe why any particular document should be withheld and

---

[8] For the reasons discussed below, due to the passage of time and the fact that the term "liability" has now been defined by regulation, it is very unlikely that the IRS can make a similar showing here.

how the IRS would be harmed if the information in that document were to be disclosed. Rather, all the Stevens Declaration does is assert that each identified document is pre-decisional and deliberative, and then relies on the very same type of vague, general and conclusory assertions of agency harm that were specifically rejected by Judge Hewitt in Pacific, Gas & Electric. Nor does the declaration indicate that the IRS made any effort whatsoever to determine whether the harm to the agency from disclosure outweighs the harm to Marriott or to the public generally from non-disclosure. As the above discussion demonstrates, not only did the IRS fail to do any of these things, but, in the briefing before the Federal Circuit, Defendant indicated that, as matter of policy, it was not obligated to do any of these things. Rather, in Defendant's view, such determinations and balancing can be abdicated to the court if and when the agency's invocation of deliberative process privilege is formally challenged. Even putting aside the fact that Defendant's position is inconsistent with the case law, there are many reasons why that view should be rejected.

First, Defendant would place an enormous and unreasonable burden on the reviewing court. Without the benefit of any explanation by the agency, the reviewing court would be asked to identify the specific information the disclosure of which would harm the agency and then determine how and to what extent the agency would be harmed. Perhaps the reviewing court can make those determinations without any explanation by the government, but it would be exceedingly difficult, if not virtually impossible in some instances. It is infinitely

more sensible to have the agency first identify the specific information the disclosure of which would harm the agency and explain to the court with particularity the nature and extent of that alleged harm. See Resolution Trust Corp., 773 F. Supp. at 604-05 ("The RTC's blanket policy of nondisclosure of predecisional, deliberative documents shirks the agency's responsibility of determining the need for confidentiality, and would force the court to bear the burden of making the determination without guidance from the agency. The court would be forced 'to become [a] mindreader[] – to discern without guidance . . . the reasons for [RTC's privilege claims], and then [to use] those assumptions to determine whether the documents may be justifiably withheld.'") (citations omitted).

Second, Defendant's position leaves the opposing litigant at an enormous disadvantage in trying to understand and respond to the government's rationale for invoking the deliberative process privilege. Without some explanation by the government of why the disclosure of the information would harm the agency, it is very difficult for the opposing litigant to explain to the reviewing court why its evidentiary need for the withheld document outweighs the agency's self interest in non-disclosure. The private litigant can only guess at the possible harm to the agency since it obviously does not have the benefit of in camera review.

Third, as this and other recent cases make readily evident, Defendant's position will vastly increase the number of documents the government withholds pursuant to deliberative process claims. If all an agency must do to withhold a

document is to assert that the document is pre-decisional and deliberative, the government will use the privilege (as it has here) to withhold hundreds and perhaps thousands of documents at a time. This is in marked contrast to the way in which the deliberative process privilege had been used historically, where it was typically used to withhold a handful of highly significant agency documents. See Marriott Int'l Resorts, 61 Fed. Cl. at 419 (observing that IRS's invocation of deliberative process in this case "in its bulk overshadows the government's deliberative process claims made over the years to this Court and its predecessors on a combined basis"). This, of course, is contrary to the teaching of the Supreme Court in Cheney v. United States Dist. Ct. for the Dist. of Columbia, 542 U.S. 367, 389, 124 S. Ct. 2576, 2592 (2004), that executive privilege is "an extraordinary assertion of power 'not to be lightly invoked.'" (citations omitted).

Fourth, to the extent the government's deliberative process claims are then challenged by litigants who have a compelling evidentiary need for the withheld documents, it will increase – by perhaps an order of magnitude or more – the instances where courts are forced into "the awkward position of evaluating the Executive's claims of confidentiality and autonomy, and pushes to the fore difficult questions of powers and checks and balances." Id. But, as also noted in Cheney, "[t]hese 'occasion[s] for constitutional confrontation between the two branches' should be avoided whenever possible." 542 U.S. at 389-90, 124 S. Ct. at 2592 (citation omitted); see also Marriott Int'l Resorts, 61 Fed. Cl. at 419 (noting that the privilege should only be "invoked when absolutely necessary," and that "the Court

must ensure that the discovery process be hindered only when necessary."); First Heights Bank, FSB v. United States, 46 Fed. Cl. 827, 829-30 (2000) ("Numerous courts have noted that the deliberative process privilege should be construed narrowly in order to permit parties seeking discovery to obtain sufficient information.") (citations omitted).

Finally, by requiring the Executive to identify and consider with particularity the actual harm disclosure would cause the agency, and then to balance that harm against the harm of non-disclosure to opposing litigants and the public, the courts hopefully will ensure that the agency officials to whom the responsibility to invoke the privilege has been delegated actually think through the need to invoke this extraordinary privilege as well as whether that need justifies compromising the public's right to know. See Judicial Watch, Inc. v. Department of Justice, 365 F.3d 1108, 1122 (D.C. Cir. 2004) ("[O]urs is a democratic form of government where the public's right to know how its government is conducting its business has long been an enduring and cherished value.") Absent such a requirement, invoking the deliberative process privilege will become a largely ministerial and routine task where agency legal personnel review documents to determine whether they are deliberative and pre-decisional, and then simply log them to be withheld from production.

For the above reasons, in that the IRS has failed to identify with particularity any specific and important harm to its agency operations that would be caused by the full disclosure of any one of the 339 documents, and also has failed to balance

any such harm against the harm of non-disclosure to Marriott and to the public generally, this Court should order Defendant to produce all 339 documents in their entirety to Marriott.

## II. Even If Defendant's Invocation Of Executive Privilege Were Not Deficient Because Of The IRS's Failure To Identify Specific Harm From Disclosure And To Balance That Harm Against The Prejudice To Marriott From Non-Disclosure, Defendant Should Be Required To Produce The Withheld Documents Because Marriott's Evidentiary Need For Those Documents Far Outweighs the IRS's Need For Administrative Confidentiality. This Is Particularly True Here Given The Many Years That Have Elapsed And The Fact That The Pertinent Tax Policy Issues Are Now Governed By New Treasury Regulations.

### A. As This Court Has Already Held, The 339 Documents At Issue Are Relevant To The Merits Of This Action. Furthermore, To The Extent Such Documents Reflect The IRS's Actual Interpretations of I.R.C. § 752, They Are Not "Deliberative" But Represent The Working Law Of The Agency And Must Be Disclosed.

This Court has already held that the documents being withheld by Defendant, viewed in their entirety, are relevant within the meaning of Rule 26(b)(1) of the Rules of the Court of Federal Claims. Marriott Int'l Resorts, 61 Fed. Cl. at 415-16. The Court concluded, correctly, that documents showing the IRS's administrative interpretation of I.R.C. § 752 are relevant because "conflicting interpretations of the law [by the IRS] might constitute an important framework for the matters at issue," and that such files "might 'prove[] informative,' particularly 'in sounding a note of caution.'" Id. at 416 (quoting Vons Cos. v. United States, 51 Fed. Cl. 1, 21 (2001)).

The Court is not alone in its conclusion that the documents being withheld by Defendant are relevant. In Jade Trading, LLC v. United States, 65 Fed. Cl. 487

(2005), a case involving a 1999 transaction challenged by the IRS on the ground, inter alia, that a short currency option contributed to a partnership was not a "liability" under I.R.C. § 752, the taxpayer requested all IRS background files relating to the agency's historical interpretation of that statutory term. Id. at 490. Relying, in part, upon the Stevens Declaration from this case, the IRS in Jade Trading withheld the requested documents on deliberative process grounds. Id. at 490-91.[9] Addressing the threshold question of relevance, Judge Williams flatly rejected the government's argument that the IRS's background files were not relevant (id. at 492, footnote omitted and emphasis added):

> [B]ackground files relating to the IRS' construction of the term liabilities in 26 U.S.C. § 752 . . . would potentially be relevant to the extent they embody the IRS' interpretations of this term at any point in time pertinent to this action. Plaintiffs are entitled to know how the IRS interpreted this term in assessing their tax liability . . . and whether the IRS' interpretation was consistent over time. Plaintiffs allege that Defendant's position in this case contradicts its historic construction and application of the word liability for purposes of § 752. As the court recognized in *Bank of America v. United States*, 42 AFTR 2d 78-5225, 78-2 USTC ¶ 9493, 1978 WL 4492 (N.D. Cal. 1978), "[i]nsofar as the historical files of the treasury regulations embody unpublished general policy statements or interpretations adopted by the IRS, or factual bases of the regulations, and concern the intended scope of the applicable regulations, they are analogous to the

[9] In Jade Trading, which involved broader discovery requests than Marriott's, the IRS and Treasury Department withheld a total of 520 documents comprising 6,792 pages. As in this case, the government declined to make a specific, document-by-document showing of agency harm, but instead relied upon generalized assertions that disclosure would "inhibit 'the frank and honest discussion of legal and policy matters and would adversely affect the qualify of the [Internal Revenue] Service's decisions and policies.'" Jade Trading, 65 Fed. Cl. at 490.

legislative histories of statutes which are routinely resorted to in order to interpret ambiguous provisions of such statutes."

Judge Williams also correctly noted that the IRS's actual interpretations of a statutory term are not deliberative, and thus fall beyond the scope of the deliberative process privilege, because the IRS is forbidden from applying "secret law" in discharging its regulatory duties. Id. at 492 n.17. In this regard, it is well established that, to qualify for the privilege, an internal agency document "must truly be deliberative, reflecting 'the give-and-take of the consultative process,' rather than constituting a 'body of secret law' used to discharge its regulatory duties and its dealings with the public." Vons, 51 Fed. Cl. at 22 (citations omitted); see also Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 867 (D.C. Cir. 1980) ("A strong theme of our [deliberative process] opinions has been that an agency will not be permitted to develop a body of 'secret law' . . . ."); N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 153 (1975) (holding that opinions and interpretations embodying the agency's effective law and policy fall outside the deliberative process privilege).

It thus is clear that the 339 documents withheld or redacted by Defendant, considered in their entirety, are relevant to this action, and that many may not be privileged at all. Obviously, neither the Court nor Marriott is in a position to assess either relevance or the applicability of the deliberative process privilege with respect to any particular document until Defendant makes them available for inspection. As the Court observed in its November 30, 2004 Order: "Because the government put forward only a blanket objection to the relevancy of any and all of

the 339 documents, the court has had no opportunity to determine the relevance of any individual document to the merits of this case." Marriott Int'l Resorts, L.P. v. United States, 63 Fed. Cl. 144, 146 (2004). However, if judicial inspection of the documents is found to be necessary, the balancing of the parties' respective interests weighs heavily in favor of disclosure.

**B. Marriott's Evidentiary Need For The Documents At Issue Far Outweighs The Government's Interest In Confidentiality. The Documents Are Directly Relevant To Marriott's Contentions On The Liability Issue, And Defendant Cannot Identify Any Important Governmental Interest That Would Be Compromised By Their Disclosure.**

As shown above, the government should be required to produce all 339 withheld and redacted documents because the IRS has failed to comply with its obligation to identify the specific harm that would result from disclosure of each such document, and then to balance that harm against competing interests of Marriott and the public in favor of disclosure. Nevertheless, should the Court find that Defendant's generalized assertions of agency harm are not deficient, in camera examination of those documents, whether by the Court or a designated Special Master, would clearly be appropriate. The deliberative process privilege "is not absolute, and may be 'overcome upon a showing of evidentiary need weighed against the harm that may result from disclosure.'" First Heights Bank, 46 Fed. Cl. at 320-21 (quoting CACI Field Servs. v. United States, 12 Cl. Ct. 680, 687 (1987), aff'd, 854 F.2d 464 (Fed. Cir. 1988)). "Such a balancing of interests is required whenever a party seeks to overcome the presumption of open proceedings in American courts, whether by protective order, assertion of privilege, or other

means." Pikes Peak Family Housing, LLC v. United States, 40 Fed. Cl. 673, 683 (1998) (footnote omitted). Factors to be considered in this balancing determination include "1) the relevance of the evidence; 2) the availability of other evidence; 3) the government's role in the litigation; and 4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." Federal Trade Commission v. Warner Communications Inc., 742 F.2d 1156, 1161 (9th Cir. 1984); accord In re Sealed Case, 121 F.3d 729, 737-38 (D.C. Cir. 1997).

At the August 18, 2006 status conference, the Court requested the parties' assistance in "sorting through the balancing aspect of this exercise on in camera review, with particular attention to relevance." See Aug. 18, 2006, Status Conference Transcript, at 20-21. In response to this request, Marriott respectfully submits that it has a compelling evidentiary need for documents falling into any of the following four categories, broadly construed:

1. Any document tending to show that, before issuing Rev. Rul. 95-26, 1995-1 C.B. 131, the IRS and/or Department of Treasury interpreted the term "liability" under I.R.C. § 752 not to include open, contingent, and nonexecutory transactions, including but not limited to short sales.

2. Any document tending to show that the IRS and/or Department of Treasury recognized that Rev. Rul. 95-26 was a policy-driven ruling intended to eliminate the Federal income tax benefits associated with a particular type of transaction involving short sales.

3. Any document tending to show that the IRS and/or Department of Treasury recognized that Rev. Rul. 95-26 was a departure from prior law interpreting the term "liability" under I.R.C. § 752, including but not limited to La Rue v. Commissioner, 90 T.C. 465 (1988); Long v. Commissioner, 71 T.C. 1 (1978), aff'd,

660 F.2d 416 (10th Cir. 1981); Helmer v. Commissioner, 34 T.C.M. (CCH) 727 (1975); Rev. Rul. 88-77, 1988-2 C.B. 128; and Temp. Treas. Reg. § 1.752-1T(g).

4. Any document tending to show that the IRS and/or Department of Treasury recognized that Rev. Rul. 95-26 was inconsistent with the IRS's prior interpretations of the term "liability" under I.R.C. § 752 with respect to open, contingent, or nonexecutory transactions, including but not limited to short sales.

Documents falling into any of these categories are directly relevant to the merits of this case. Such documents are highly probative to Marriott's contention that Rev. Rul. 95-26 was a deliberate, result-oriented departure from the IRS's and Department of Treasury's prior interpretations of I.R.C. § 752, which bears directly upon the degree of deference, if any, the Court should accord the revenue ruling in this proceeding. See Marriott Int'l Resorts, 61 Fed. Cl. at 416 n.9 (citing United States v. Cleveland Indians Baseball Co., 532 U.S. 200, 220 (2001)). As this Court explained in Davis v. United States, 50 Fed. Cl. 192, 205 (2001):

> An agency is of course free to change its interpretation of a statute, but changes that are sudden and unexplained or that do not account for reliance on the agency's prior interpretation should give a court pause before it decides to defer to an agency's decisions relying on that interpretation.[10]

Furthermore, such documents support Marriott's position that Rev. Rul. 95-26 represented an effort by the IRS and Department of Treasury to retroactively change settled law through an administrative ruling. It is well established that the

---

10 For additional authorities holding that inconsistency in an agency's administrative interpretation of a statute is relevant to the judicial deference to which that interpretation is entitled, see Supporting Memorandum, at 26-30.

retroactive application of a revenue ruling may constitute an abuse of discretion "where such application changes settled law upon which taxpayers justifiably relied." Gaw v. Commissioner, 70 T.C.M. (CCH) 1196, 1253 (1995); see also Anderson, Clayton & Co. v. United States, 562 F.2d 972, 981 (5th Cir. 1977) ("Courts have declined to give retroactive effect to regulations or rulings when retroactivity would work a change in settled law relied upon by the taxpayer and implicitly approved by Congress."); Honeywell v. Commissioner, 87 T.C. 624, 634-35 (1986) (refusing to give retroactive effect to a revenue ruling reflecting a new IRS position). In this respect, Marriott's situation is closely analogous to Klamath Strategic Investment Fund, LLC v. United States, 440 F. Supp.2d 608 (E.D. Tex. 2006), where the District Court held that the Treasury Department's retroactive application of a Treasury Regulation issued in 2003 that redefined the term "liability" under I.R.C. § 752 to include contingent obligations was an abuse of discretion since the new definition was contrary to "the well-established position of the Service for the past 25 years in the 752 Cases." Id. at 625.

As the Court observed in its November 30, 2004 Order, "undoubtedly some of the withheld documents are relevant to the merits." Marriott Int'l Resorts, 63 Fed. Cl. at 146. This observation is supported by the government's production of two internal IRS documents, described on pages 8 and 9 of Marriott's Supporting Memorandum, both of which demonstrate that Rev. Rul. 95-26 was a policy-driven effort initiated by the Treasury Department to "cram through" the desired result.

See Appendix, Exhibits A & B.[11] In addition, the document descriptions in the Stevens Declaration strongly suggest that these two documents are not isolated instances of relevant evidence, but are exemplary of numerous other documents withheld or redacted by Defendant that might very well support Marriott's position that Revenue Ruling 95-26 was a clear and deliberate departure from the IRS's prior interpretations of I.R.C. § 752. See, e.g., Stevens Declaration, at 33-34 (describing Bates 9373 to 9385); 34 (describing Bates 9387 to 9404); 42-50 (describing numerous documents within the range from Bates 10746 to 10863); and 51-59 (describing numerous documents within the range from Bates 10932 to 11098).

Marriott's compelling evidentiary need for such documents far outweighs the IRS's self-interest in preserving their secrecy, which is, at best, highly attenuated. As explained above, to the extent that the documents reflect the IRS's actual interpretation of I.R.C. § 752 (as Marriott believes many of the withheld documents do), the IRS has no claim to confidentiality because such documents are not deliberative at all, but reflect the body of administrative "working law" that the agency had developed and applied to taxpayers. Documents that "reflect the law the government is actually applying in its dealings with the taxpaying public" fall

---

11 The relevance of documents such as these is further demonstrated by the trial proceedings in Jade Trading. In the September 2005 trial of that case, Judge Williams admitted, over the government's objection, one of these documents, typewritten notes of a meeting of IRS and Treasury Department officials regarding Rev. Rul. 95-26 (Appendix, Exhibit B), and allowed the document's author, Richard Starke, to be called as a trial witness to testify regarding the document.

outside the deliberative process privilege and are plainly discoverable. Tax Analysts v. Internal Revenue Service, 117 F.3d 607, 618 (D.C. Cir. 1997) (citations omitted).

Furthermore, the only harm that the IRS has identified to date is the generalized per se harm that allegedly results from the disclosure of deliberative and pre-decisional agency records (i.e., that such disclosure would "chill" frank discussions among agency employees and possibly create "public confusion"). This boilerplate recitation of the traditional rationale for the deliberative process privilege is patently insufficient to overcome Marriott's demonstrated evidentiary need for relevant evidence. See, e.g., United States v. O'Neill, 619 F.2d at 226-27 (rejecting "wholesale claims of privilege" to withhold relevant information); 26A Charles A. Wright & Kenneth W. Graham, Federal Practice and Procedure § 5680, at 131 (1992) ("The deliberative process privilege should seldom be upheld in a case where there is any need for the evidence because it rests on such a puny instrumental rationale.").

In this regard, it is highly improbable that the disclosure of the documents in question actually "would hinder frank and independent discussion regarding contemplated policies and decisions." Warner Communications, 742 F.2d at 1161. The vast majority of the documents withheld by Defendant were prepared more than ten (and in several instances more than fifteen) years ago. In such circumstances, it is difficult to see how their disclosure would inhibit candid discussions among current IRS employees. As stated by this Court in First Heights

Bank, 46 Fed. Cl. at 829: "[T]he need for the deliberative process privilege is less acute, where, as here, the privilege relates to events that took place over a decade ago . . . ." Accord Nixon v. United States, 418 U.S. 683, 712 (1974) ("[W]e cannot conclude that advisers will be moved to temper the candor of their remarks by the infrequent occasions of disclosure because of the possibility that such conversations will be called for in the context of a criminal prosecution.").

The IRS's professed need for continued secrecy is further diminished by the Treasury Department's issuance of new regulations superseding Rev. Rul. 95-26. In June 2003, the Treasury Department proposed new regulations under I.R.C. § 752 expanding the definition of "liability" to include "any fixed or contingent obligation to make payment without regard to whether the obligation is otherwise taken into account for purposes of the Internal Revenue Code." Prop. Treas. Reg. § 1.752-1(a)(4)(ii), 68 Fed. Reg. 37437, 37440 (June 24, 2003). The new definition was proposed to apply to liabilities incurred or assumed by partnerships on or after June 24, 2003. Prop. Treas. Reg. § 1.752-1(a)(4)(iv), 68 Fed. Reg. 37437, 37440 (June 24, 2003).[12] In May 2005, the Treasury Department issued final regulations containing

---

12 At the same time, the Treasury Department issued Temp. Treas. Reg. § 1.752-6T, 68 Fed. Reg. 37414 (June 24, 2003), which purported to apply the new, expanded definition of "liability" to all assumptions of liabilities by partnerships after October 18, 1999, and before June 24, 2003. However, in the recent Klamath decision, the District Court invalidated the temporary regulation insofar as it purported to apply retroactively to transactions occurring before August 11, 2000, the date on which the IRS issued Notice 2000-44, 2000-2 C.B. 255, in which the IRS announced that it would challenge certain transactions that did not treat contingent obligations as (continued...)

the expanded liability definition, also applicable to partnership liabilities incurred or assumed on or after June 24, 2003. Treas. Reg. § 1.752-1(a)(4)(ii) & (iv), 70 Fed. Reg. 30334, 30343 (May 26, 2005). The new regulations supersede and effectively moot earlier IRS regulations and administrative rulings, including Rev. Rul. 95-26, purporting to define partnership liabilities under I.R.C. § 752. In that the tax policies addressed in the documents withheld or redacted by Defendant are now governed entirely by the new Treasury Regulations, it is difficult to see how the continued non-disclosure of these documents serves any important governmental need for confidentiality.

Juxtaposed against the complete absence of harm to the IRS is the substantial prejudice that Marriott will suffer by the continued non-disclosure of the documents in question. Defendant has indicated that it views the liability issue as dispositive and that it will advance that issue, either by summary judgment or post-trial, as grounds to have the case resolved in its favor. At the same time, Defendant is using the deliberative process privilege as a shield preventing Marriott from obtaining highly relevant evidence that would undermine the government's position on this issue. Defendant has effectively transformed the deliberative process privilege from its intended role in Federal litigation, i.e., an extraordinary privilege to be invoked only when absolutely necessary to protect

---

(…continued)

partnership liabilities under I.R.C. § 752. Klamath, 440 F. Supp.2d at 623-25.

highly sensitive intra-agency communications, to a discovery tactic employed to enhance its litigation position.[13]

Other factors relevant to the Court's balancing of interests also weigh in favor of disclosure. With respect to the "availability of other evidence," Warner Communications, 742 F.2d at 1161, the government is the sole custodian of the documents at issue. Accordingly, if Defendant's privilege claims are sustained, Marriott would be denied the ability to marshal relevant evidence in support of key arguments on the liability issue. With respect to "the government's role in the litigation," id., the government here is not acting as a disinterested third party seeking to preserve the confidentiality of agency records to serve the public interest. Rather, the government is a litigant with a vested interest in the outcome of this case, and whose continued non-disclosure of the documents serves only to further its litigation position at Marriott's expense. See In re Franklin Nat'l Bank Sec. Litig., 478 F. Supp. 577, 587 (E.D.N.Y. 1979) ("[A]n element of unfairness would enter if the government could further its defense against these claims by concealing relevant evidence behind the screen of government privilege.").

---

13 The harm to Marriott is all the more substantial because the government is advancing a position on the liability issue that has already been rejected by the District Court in Klamath, 440 F. Supp.2d at 614-19, while depriving Marriott of documents that would show that Klamath's interpretation of a partnership liability under I.R.C. § 752 was fully consistent with the IRS's and Treasury Department's interpretation before Rev. Rul. 95-26.

### C. The Documents Withheld By The Government On Deliberative Process Grounds In Klamath Are Completely Different Than The Documents Being Withheld By Defendant Here.

In Klamath, a case involving a leveraged investment transaction entered into in 2000, the taxpayer filed a motion to compel seeking the production of more than 1,000 documents, comprising more than 9,000 pages, that the IRS had withheld or redacted on grounds of, inter alia, the deliberative process privilege. By Order dated July 11, 2006, the District Court ordered the government to tender the documents for in camera inspection.[14] Thereafter, the government submitted three separate declarations by Ms. Stevens asserting the deliberative process privilege with respect to the withheld and redacted documents.[15]

Based on its in camera review, the District Court entered an Order dated September 19, 2006, sustaining the government's deliberative process privilege claims.[16] However, the Klamath Order has no bearing on the discovery dispute before this Court. Marriott has compared the Stevens Declaration submitted by

---

14 A copy of the July 11, 2006 Order is appended hereto as Exhibit P. It is notable that the Klamath court found that in camera examination of the documents in question was necessary even though it had already ruled against the government on the issue of whether contingent obligations were liabilities under I.R.C. § 752.

15 The declarations submitted by Ms. Stevens in Klamath in support of the government's deliberative process privilege claims (entitled the Second, Third, and Fourth Declarations of Margo L. Stevens, respectively) are appended hereto as Exhibit Q. (Ms. Stevens' first declaration in Klamath set forth facts relevant to a request by the government for an extension of time in which to file the subsequent declarations.)

16 A copy of the September 19, 2006 Order is appended hereto as Exhibit R.

Defendant here against the declarations filed by Ms. Stevens in Klamath, and there appears to be no overlap between the documents covered by the declarations filed in the two cases. Rather, the documents withheld by the government in Klamath appear to relate to (1) transactions allegedly "similar" to the taxpayer's transaction in that case; (2) the development of Treas. Reg. § 1.701-2 (partnership anti-abuse rule issued in 1995); and (3) administrative notices, rulings, and regulations issued by the IRS after 2000.

Accordingly, the District Court's ruling in Klamath in no way undermines Marriott's evidentiary need for the documents withheld or redacted by Defendant reflecting the IRS's and Treasury Department's interpretations of I.R.C. § 752 before Rev. Rul. 95-26 and the policy-driven reasons for issuance of that revenue ruling. As this Court has already held, such documents are directly relevant to the interpretation of I.R.C. § 752 for purposes of Marriott's 1994 short sale transaction. Finally, it is not apparent from the Klamath Order that the District Court undertook any balancing of the parties' respective interests in the documents at issue, and the Order makes no findings of specific agency harm the IRS would suffer as a result of their disclosure. Accordingly, the Klamath Order does not bolster Defendant's generalized and unsupported assertion in this case that the disclosure of the documents it has withheld or redacted would adversely affect the administrative operations of the IRS.

## CONCLUSION

For the reasons set forth above, as well as in Marriott's February 26, 2004 Supporting Memorandum and April 30, 2004 Reply Memorandum, Marriott respectfully requests that the Court order Defendant to produce to Marriott in their entirety the 339 documents withheld or redacted by the IRS on the grounds of executive/deliberative process privilege. Alternatively, Marriott respectfully requests that the Court, either itself or through a Special Master, review the withheld or redacted documents in camera to determine whether each of the IRS's executive/deliberative process privilege claims should be upheld.

Respectfully submitted,

September 29, 2006

s/Alex E. Sadler
Harold J. Heltzer (Attorney of Record)
Robert L. Willmore
Alex E. Sadler
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel: (202) 624-2915
Fax: (202) 628-5116

Counsel for Plaintiffs

2849814