**Bates Nos. 3642-3684**. Redline version of a draft of final regulations under section 701, consisting of 43 pages, dated December 20, 1994, with additional handwritten comments by an unidentified reviewer throughout. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 3685-3711**. Pages 1 through 26 of a draft of final regulations under section 701, dated December 20, 1994, with an indication that the handwritten comments throughout were those made by Treasury personnel, dated December 20, 1994. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 3712-3752**. Redline version of a draft of final regulations under section 701, consisting of 41 pages, dated December 19, 1994, with additional handwritten comments by Monte A. Jackel throughout. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 3753-3795**. Pages 1-9, and 11-41 of a 41-page draft of final regulations under section 701 and 2 pages of riders to be inserted, dated December 20, 1994, with a fax imprint of December 21, 1994, with an indication that the handwritten comments throughout were made by Treasury personnel, dated December 20, 1994. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 3797-3839**. Redline version of draft final regulations under section 701, dated December 20, 1994, consisting of 43 pages. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations.

**Bates No. 3840**. Page 31 of draft final regulations under section 701, with Paul Kugler's handwritten comments throughout, dated December 21, 1994. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 3841-3881**. Redline version of draft final regulations under section 701, consisting of 41 pages, dated December 21, 1994, with additional handwritten comments by Monte A. Jackel, dated December 21, 1994, throughout.

The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 3884-3925**. Draft final regulations under section 701, consisting of 41 pages and a single page rider to be inserted, dated December 21, 1994, with an indication that the handwritten comments throughout were made by Treasury personnel, dated December 21, 1994. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 3927-3960**. Pages 1-32 and 41-42 of draft final regulations under section 701, in redline format, dated December 21, 1994, with additional handwritten comments by an unidentified reviewer throughout. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates No. 3961**. Page 8 of draft final regulations under section 701, undated, with a fax stamp indicating that the handwritten comments throughout were made by Treasury personnel, dated December 22, 1994. (This page is probably the final page of Bates Nos. 3966-3970.) The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 3962-3963**. Pages 43 and 44 of 44-page draft final regulations under section 701, undated. (These pages are probably the final two pages of Bates Nos. 3927-3960.) The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 3966-3970**. Pages 1 through 3, 6, and 7 of draft final regulations under section 701, dated December 20, 1994, with an indication that the handwritten comments throughout were made by Treasury personnel, dated December 21, 1994. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations and comments regarding the draft final regulations.

**Bates Nos. 3971-3978**. Pages 33 through 40 of a redline version of draft final regulations under section 701, undated (probably the missing pages from Bates Nos. 3927-2960), with additional handwritten comments. The Service asserts executive privilege for the entire document because it consists of draft language

for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 3980-4001**. Pages 1 through 20, 22, and 23 of draft final regulations under section 701, dated December 20, 1994, with a fax stamp dated December 21, 1994, and handwritten notation of "Treasury 12/20/94," indicating that the handwritten comments throughout were made by Treasury personnel. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 4003-4006**. Pages 24 through 27 of draft final regulations under section 701, undated, with a fax stamp indicating that the handwritten comments throughout were made by Treasury personnel (probably additional pages from Bates Nos. 3980-4001). The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 4008-4017**. Pages 27 through 32 of draft final regulations under section 701 and 2 pages of riders to be inserted, undated, with a fax stamp indicating that the handwritten comments throughout were made by Treasury personnel. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 4018-4058**. Draft final regulations under section 701, consisting of 41 pages, dated December 20, 1994, with handwritten comments by an unidentified reviewer throughout. A notation in the upper right corner indicates that the Regulations Unit received it December 23, 1994. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 4059-4062**. Pages 14 through 17 of draft final regulations under section 701, undated, with handwritten comments by an unidentified reviewer. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 4063-4104**. Draft final regulations under section 701, dated December 22, 1994, with handwritten comments by Monte A. Jackel throughout, dated December 22, 1994. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

**Bates Nos. 4105-4111**. Draft language of examples for possible inclusion in the final regulations under section 701, undated. The Service asserts executive privilege for the entire document because it consists of draft language for the final regulations and comments regarding the draft final regulations.

9. The production of the documents, or the withheld portions thereof, described in paragraph 8, would inhibit the frank and honest discussion of legal and policy matters, and thus would adversely affect the quality of the Service's decisions and policies. Disclosure of the withheld documents, or portions thereof, would reveal opinions of Office of Chief Counsel, Office of the Assistant Secretary (Tax Policy) at the Department of the Treasury, as well as other Department of Treasury, personnel at many levels at a time when the opinions were not fully developed and the issues were still being debated. None of the withheld documents, or portions thereof, represents a statement of agency policy or a final decision and release of the withheld information could, therefore, result in confusion to the public. Disclosure of the withheld information would adversely affect the Service's ability to administer and enforce the law under subchapter K of the Internal Revenue Code at all levels, from voluntary compliance and examination to appeals and litigation.

10. Certain of the documents described in paragraph 8 were generated with respect to, or contain information which relates to, taxpayers other than the plaintiffs. These documents contain the names, other identifying information, and/or other return information of these third party taxpayers. These documents, or portions thereof, are also being withheld pursuant to I.R.C. § 6103(a) which provides that returns and return information shall be confidential and shall not be disclosed except as authorized by a

provision of the Code. None of the provisions of the Code authorize the release of this information to plaintiffs and, therefore, I.R.C. § 6103(a) bars its disclosure.

11. Further, pursuant to the authority vested in me by Delegation Order No. 220 (Rev. 3), I hereby assert a formal claim of executive privilege and respectfully request that none of the withheld documents, or portions thereof, described in paragraph 8, be disclosed in response to Plaintiffs' First and Second Requests for Production of Documents dated June 25, 2004 or August 24, 2004, or otherwise in connection with any issue in this case.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 10th day of January, 2005, in Washington, D.C.

MARGO L. STEVENS
Assistant Chief Counsel
(Disclosure and Privacy Law)
Office of Chief Counsel
Internal Revenue Service
1111 Constitution Avenue, N.W.
Washington, D.C. 20224
Tel: (202) 622-4560

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| KLAMATH STRATEGIC INVESTMENT FUND, LLC, By and through ST. CROIX VENTURES, LLC (Managing Member), Plaintiff, | ' | CASE NO. 5:04-CV-278-TJW |
| v. | ' | |
| UNITED STATES OF AMERICA, Defendant. | ' | (Consolidated with Kinabalu v. United States, Civil Case No. 5:04-CV- 00279-TJW) |

THIRD DECLARATION OF MARGO L. STEVENS

1. I am the Assistant Chief Counsel (Disclosure & Privacy Law) in the Office of Associate Chief Counsel (Procedure & Administration), Office of Chief Counsel, Internal Revenue Service (Service). This declaration supplements the declaration I executed on July 20, 2006, setting forth the basis for an extension of time in which to lodge formally an assertion of executive privilege, and the declaration I executed on July 21, 2006, asserting executive privilege for the documents maintained in the background files to proposed Income Tax Regulations section 1.701-2 and Treasury Decision 8588.

2. I have been informed by attorneys in the office of the Associate Chief Counsel (Passthroughs and Special Industries) ("PSI") that the documents described as responsive to the plaintiff's First Request for Production of Documents, dated November 2, 2005, were located in files maintained by PSI. PSI, following its review of the documents, provided me information regarding the nature of such documents and the context(s) in which they were generated. In actions seeking a readjustment of the partnership items brought in the United States district courts in which partnership issues

are present, the Associate Chief Counsel (PSI) is responsible for determining the Service's litigating position, for advising and assisting the Department of Justice as to the facts and the law, and for preparing recommendations concerning defense. A complete description of the duties of the Associate Chief Counsel (PSI) is published in the Chief Counsel Directives Manual at CCDM 30.3.2.3.6.2 (July 21, 2005); a true and correct copy is attached hereto as Exhibit A.

3. Based upon the thorough review of the documents at issue by attorneys in PSI, the information provided to me by these attorneys, and my own personal review of these documents, I have determined to assert the claim of executive privilege with respect to certain documents or portions of certain documents, maintained in the background files to Chief Counsel Notices CC-2003-20 and CC-2003-30, more thoroughly described herein below. My personal review of the documents at issue required approximately 12 hours. Should the Court determine the withheld documents or portions thereof to be relevant and that no other evidentiary privileges apply, I am claiming executive privilege.

4. When the Service asserts a formal claim of executive privilege with respect to predecisional/deliberative documents, the privilege is claimed only to protect those intragovernmental documents reflecting advisory opinions, recommendations, and deliberations which comprise part of the process by which agency decisions and policies are formulated. The agency does not seek to protect documents containing factual matters unless such factual matters are so intertwined with advisory opinions, recommendations, conclusions, or reasoning by Government officials that the factual material cannot be excised from the privileged material or unless the factual matter

itself, through its selection and distillation by the author, would reveal the author's mental processes or the agency's deliberations. The privilege is not claimed to protect all opinions, conclusions, mental impressions, and thought processes of Government officials, but only those whose disclosure would interfere with vital Government functions or would cause injury to the quality of agency decisions.

5. When the Service asserts a formal claim of executive privilege with respect to predecisional/deliberative documents, the agency first considers whether the document falls within the scope of the deliberative process privilege; that is, whether the document was generated before the adoption of an agency policy or position and whether the document reflects the give-and-take of the consultation process leading up to the formulation of an agency policy or position. The agency also considers whether the document is recommendatory in nature or is a draft of what may become a final document; whether the document weighs the pros and cons as to the agency's ultimate adoption of one viewpoint or another; and whether the material is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency. Consequently, the agency considers protecting recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy or position of the agency. These types of documents could inaccurately reflect or prematurely disclose the views of Government officials, suggesting an agency position which is, as yet, only a personal position. Disclosure of documents containing reasons and rationales that were not ultimately relied upon by the agency in reaching its decision(s) could create public confusion.

6. The following documents, authored between February 12, 2003, and September 10, 2003, were prepared and/or considered by the Office of Chief Counsel during the development of the aforementioned Chief Counsel Notices. The documents are maintained in the files of the Associate Chief Counsel (PSI). The production of the withheld documents, or portions thereof, more fully described below, would inhibit the frank and honest discussion of legal and policy matters and thus would adversely affect the quality of the Service's decisions and policies. Furthermore, disclosure of the withheld documents, or portions thereof, would reveal opinions of personnel within the Office of Chief Counsel at a time when the opinions were not fully developed and the issues were still being debated. None of the withheld documents, or portions thereof, represents a statement of agency policy or a final decision and release of the withheld information could, therefore, result in confusion to the public and have a negative impact on the processes in which administrative guidance and instructions to staff (*e.g.*, Chief Counsel Notices) are considered. Further, disclosure of the withheld information would adversely affect the Service's ability to administer and enforce the law under the Internal Revenue Code at all levels, from voluntary compliance and examination to appeals and litigation. By way of example, taxpayers may choose to argue that the Service must defend positions that were not adopted, or that consideration of a position not adopted demonstrates the reasonableness of a taxpayer's position.

7. The following documents are responsive to the portion of Plaintiff's First Request for Production of Documents, dated November 2, 2005, which seeks the background files to Chief Counsel Notices CC-2003-20 and CC-2003-30, for which the Service asserts executive privilege in whole or in part:

- **Chief Counsel Notice 2003-20**

Bates No. 0016-0030: Unsigned, draft memorandum, dated "June __, 2003," prepared by James Gergurich, attorney, Branch 3, PSI, for the signature of Christine Ellison, Chief, Branch 3, PSI, to Heather Maloy, Associate Chief Counsel (PSI), concerning Notice 2000-44 Son of Boss Tax Shelters, with a "draft" box dating it June 18, 2003, appearing in the upper right hand corner of each page. Although written in memorandum format, this document is an early draft of the Chief Counsel Notice, with extensive redlining and strike-outs throughout the document. (Bates No. 0028 is blank). The Service claims executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates No. 0031-0043: A draft of the Chief Counsel Notice, dated June 24, 2003, concerning Notice 2000-44, Son of Boss Tax Shelter, with handwritten annotations, including editorial changes and questions, by Chris Trump, attorney, Branch 3, PSI, throughout. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates No. 0044-0055: Another unsigned draft of the Chief Counsel Notice, dated "June __, 2003," in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, concerning Notice 2000-44 Son of Boss Tax Shelters, with a "draft" box dating it June 24, 2003, appearing in the upper right corner of each page. There are a few handwritten annotations by Mr. Gergurich, including revised language, on Bates No. 0047. The Service claims executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates No. 0056-0057: An exchange of three emails among Emily Parker (Deputy Chief Counsel, Operations), Gary Wilcox (Deputy Chief Counsel, Technical), Nicholas DeNovio (Senior Counsel to Chief Counsel), Cary Pugh (Special Counsel to Chief Counsel), Jonathan Zelnick (Senior Counsel to Chief Counsel), David FP O'Connor (Special Counsel to Chief Counsel), Heather Maloy, Christine Ellison, and James Gergurich, on June 24 and 25, 2003, transmitting for these officials' review and comment clean and redline versions of the draft Chief Counsel Notice. The Service claims executive privilege for the portions of the document that contain the email of Mr. Wilcox, in which he provides comments on, and suggested languages to, the draft Chief Counsel Notice being circulated and some handwritten reactions to Mr. Wilcox's comments by James Gergurich.

Bates No. 0058-0069: A "compare" version of the Chief Counsel Notice, dated June 24, 2003, concerning Notice 2000-44, Son of Boss Tax Shelter, showing redlined changes from prior versions. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates No. 0070-0082: Another unsigned draft of the Chief Counsel Notice, dated "June __, 2003," in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, concerning Notice 2000-44 Son of Boss Tax Shelters, with a "draft" box dating it June 18, 2003, appearing in the upper right corner of each page. There are a few handwritten annotations, by James Gergurich, including editorial changes and questions, on several pages. The Service claims executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates No. 0083-0095: Another unsigned draft of the Chief Counsel Notice, dated "June __, 2003," in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, concerning Notice 2000-44 Son of Boss Tax Shelters, with a "draft" box dating it June 18, 2003, appearing in the upper right corner of each page. There are handwritten annotations, by Christine Ellison, including editorial changes, revised language, and questions, on several pages. The Service claims executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates No. 0096-0107: Another unsigned draft of the Chief Counsel Notice, dated "June __, 2003," in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, concerning Notice 2000-44 Son of Boss Tax Shelters, with a "draft" box dating it June 24, 2003, appearing in the upper right corner of each page. There is redlining and strike-outs throughout. The Service claims executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates No. 0113-114: Email, dated June 24, 2003, from Nicholas DeNovio to Christine Ellison, with a copy to Heather Maloy, conveying his comments on a June 18th draft of the Chief Counsel Notice concerning Notice 2000-44 Son of Boss Tax Shelters. There are handwritten annotations by Ms. Ellison, reflecting her discussions with Ms. Maloy as to their reactions to Mr. DeNovio's comments. The Service claims executive privilege for the entire document as it consists of suggested draft language and the author's opinions, analyses, conclusions and recommendations with regard to the draft Chief Counsel Notice.

Bates No. 0115-0127: Another draft of the Chief Counsel Notice with the electronic signature notation, dated June 24, 2003, concerning Notice 2000-44, Son of Boss Tax Shelter, with handwritten annotations, including final editorial changes and language revisions to be made. This draft includes the numeric assignment of "Chief Counsel Notice 2003-020" in the upper right corner. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

- **Chief Counsel Notice 2003-030**

Bates Nos. 0141-0142: Email chain consisting of two pages from Matthew W. Lay, Acting Special Counsel, PSI, to James Gergurich and Christine Ellison, dated August 12, 2003, with copies to Donna Marie Young, Special Counsel, PSI, and David F. P. O'Connor, Special Counsel to the Senior Counsel, addressing the language to be used in the "Son of Boss Loan Premium Notice." The Service asserts executive privilege with regard to the first page and the first email string of the second page because it consists of the authors' respective suggestions on draft language for, and their opinions, analyses, conclusions and recommendations regarding, the proposed Chief Counsel Notice that had not yet been issued. .

Bates Nos. 0143-0157: An unsigned draft of the Chief Counsel Notice, dated "August __, 2003," in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, concerning Notice 2000-44 Son of Boss Loan Premium Tax Shelters, with a "draft" box dating it August 11, 2003, appearing in the upper right corner of each page. There are handwritten annotations, by James Gergurich, including editorial revisions and questions with respect to certain draft language on one page. The Service claims executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates Nos. 0158-0172: An unsigned draft of the Chief Counsel Notice, dated "July __, 2003", in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, concerning Notice 2000-44 Son of Boss Loan Premium Tax Shelters, with a "draft" box dating it July 28, 2003, appearing in the upper right corner of each page. There are handwritten comments, by James Gergurich, primarily of an editorial nature, throughout. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates No. 0173: Email correspondence, dated August 8, 2003, from Christopher Sterner, Area Counsel, Small Business Self-Employed (SBSE) Area 7, to William O'Shea, Deputy Associate Chief Counsel (PSI), forwarding to him an email Mr. Sterner had sent to Heather Maloy, dated August 6, 2003, in which he commented on, and raised a question about, a July 24th version of the draft Chief Counsel Notice on the Son of Boss Loan Premium Transaction. The Service asserts executive privilege for the portion of the document that contains Mr. Sterner's substantive comments and his opinions and concerns about the scope of the proposed language of the draft Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates Nos. 0174-0188: An unsigned draft of the Chief Counsel Notice, dated "July __, 2003", in memorandum format, prepared by James M. Gergurich for the signature of Christine Ellison to Heather Maloy, concerning Notice 2000-44 Son of Boss Loan Premium Tax Shelters, with a "draft" box dating it August 8, 2003, appearing in the upper right corner of each page. There are typewritten redlining, of an editorial nature,

and handwritten changes, by Christine Ellison, reflected on this draft. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates Nos. 0189-0203: An unsigned draft of the Chief Counsel Notice, dated "July __, 2003", in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, concerning Notice 2000-44 Son of Boss Loan Premium Tax Shelters, with a "draft" box dating it July 22, 2003, appearing in the upper right corner of each page. There is typewritten redlining, of an editorial nature, and handwritten underscoring, reflected on this draft. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates Nos. 0204-0219: An unsigned draft of the Chief Counsel Notice, dated "July __, 2003," in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, titled "Notice 2000-44 Son of Boss Loan Premium Tax Shelters," with a "draft" box dating it July 28, 2003, appearing in the upper right corner of each page. There is typewritten redlining, of an editorial nature, as well as typewritten comments, by Donna Young, reacting to the draft language, raising comments and offering alternative analysis and rationale, on the draft language. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates Nos. 0220-0234: An unsigned draft of the Chief Counsel Notice, dated "July __, 2003," in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, titled "Notice 2000-44 Son of Boss Loan Premium Tax Shelters" with a "draft" box dating it July 22, 2003, appearing in the upper right corner of each page. There are handwritten comments, by James Gergurich, on pages 2 and 4-7, reflecting the author's comments and questions with respect to the draft language. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates Nos. 0235-0249: An unsigned draft of the Chief Counsel Notice, dated "July __, 2003," in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, titled "Notice 2000-44 Son of Boss Loan Premium Tax Shelters" with a "draft" box dating it July 16, 2003, appearing in the upper right corner of each page. There are handwritten comments, by James Gergurich, of an editorial nature, on page 2. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates No. 0253: Email correspondence, dated July 7, 2003, from Rebecca E. Asta, attorney, Branch 3, Office of Associate Chief Counsel (Financial Institutions and Products) ("FIP"), to James Gergurich, with copies to Christine Ellison and William Blanchard, Senior Technician Reviewer, Branch 3, FIP, providing comments from FIP's perspective on the proposed language of the draft Chief Counsel Notice, which PSI had

shared with FIP for their input on the issues falling under their jurisdiction. The Service asserts executive privilege for the four bulleted paragraphs in the center of the email because they consist of FIP's comments and concerns with regard to the draft language of the Chief Counsel Notice that as not yet issued by the Office of Chief Counsel.

Bates Nos. 0254-0267: An unsigned draft of the Chief Counsel Notice, dated "July __, 2003," in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, titled "Notice 2000-44 BLIPS Tax Shelters" with a "draft" box dating it July 7, 2003, appearing in the upper right corner of each page. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates Nos. 0288-0302: Undated draft of the Chief Counsel Notice titled "Son of Boss Loan Premium Tax Shelters," prepared by James Gergurich for the signature of Heather Maloy. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates No. 0303: Document, dated April 23, 2003, titled "Son of Boss (BLIPS) Arguments," prepared by an unspecified author, most likely either Mr. Gergurich or Ms. Asta. The document reflects alternative arguments and rationales under I.R.C. § 752, which is a Code section falling under the jurisdiction of the Associate Chief Counsel (FIP), that were considered during the development of the Chief Counsel Notice. The Service asserts executive privilege for the entire document because it consists of the author's opinions and analysis regarding the alternative positions that may be taken, and the draft language to be included, in the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates Nos. 0304-0309: Unsigned draft of a memorandum prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, titled "Bond Linked Issue Premium Structure (BLIPS) Son of Boss transaction," dated April 23, 2003, in response to questions raised by the Large and Mid Size Business Division (LMSB) arising out of an examination of a third party taxpayer. The document appears to have been written to brief Ms. Maloy on the facts and issues framed in LMSB's request for legal advice and to secure her views before the branch issued any final response (which was not issued). There is a handwritten notation on the first page. The Service asserts executive privilege for the entire document as it is a draft of a memorandum that was not yet issued and it consists of the author's (and, with respect to the handwritten notation, the commentator's) opinions, conclusions, analysis and recommendations with respect to the position the Office of Chief Counsel should take in advising LMSB as to the proper tax treatment of the transactions under examination, as described in the memorandum. The Service also asserts I.R.C. § 6103 to protect the entirety of the document as being a third party taxpayer's return information. The assistance was prepared by Mr. Gergurich in the course of an examination with respect to the determination as to the existence, or possible existence, of this third party taxpayer's tax

liability under the Code. As such, it constitutes return information under I.R.C. § 6103(b)(2)(A), which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

Bates Nos. 0334-0350: Unsigned draft of a memorandum prepared by James Gergurich for the signature of Heather Maloy to B. John Williams, Chief Counsel, titled "Bond Linked Issue Premium Structure (BLIPS) Son of Boss transaction," dated June 6, 2003, with a "draft" box dating it June 6, 2003, in the upper right corner of each page, with handwritten notes by Christine Ellison throughout. The Service asserts executive privilege for the entire document as it is a draft of a memorandum that was not yet issued and it consists of the reviewer's comments on, and the author's opinions, conclusions, analysis and recommendations with respect to, the position the Office of Chief Counsel should take in advising LMSB as to the proper tax treatment of the transactions under examination, as described in the memorandum. The Service also asserts I.R.C. § 6103 to protect the entirety of the document as being a third party taxpayer's return information. The assistance was prepared by Mr. Gergurich in the course of an examination with respect to the determination as to the existence, or possible existence, of this third party taxpayer's tax liability under the Code. As such, it constitutes return information under I.R.C. § 6103(b)(2)(A), which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

Bates No. 0352. A single page of handwritten notes, taken by James Gergurich during his attendance at an internal meeting among Counsel attorneys, date unspecified (but given its content it is clear that it took place before the Chief Counsel Notice was finalized and issud), during which the attendees discussed an outline of the issues and arguments to be developed in the proposed Chief Counsel Notice. The Service asserts executive privilege for the entire document because it reflects the author's memorialization of what the attendees considered to be an appropriate outline for drafting the Chief Counsel Notice that was not yet issued; it reflects assessments of the relative strengths and weaknesses of the alternative arguments that could be made.

Bates Nos. 0353-0370: Unsigned draft of a memorandum prepared by James Gergurich for the signature of Heather Maloy to B. John Williams, titled "Bond Linked Issue Premium Structure (BLIPS) Son of Boss transaction" dated June 6, 2003, with a "draft" box dating it June 6, 2003, in the upper right corner of each page. There is a handwritten notation "Ned" on the first page, apparently indicating that the handwritten notes throughout the draft memorandum are William (Ned) Blanchard's. The Service asserts executive privilege for the entire document because it is a draft of a memorandum that was not yet issued and it consists of the reviewer's comments on, and the author's opinions, conclusions, analysis and recommendations with respect to, the position the Office of Chief Counsel should take in advising LMSB as to the proper

tax treatment of the transactions under examination, as described in the memorandum. The Service also asserts I.R.C. § 6103 to protect the entirety of the document as being a third party taxpayer's return information. The assistance was prepared by Mr. Gergurich in the course of an examination with respect to the determination as to the existence, or possible existence, of this third party taxpayer's tax liability under the Code. As such, it constitutes return information under I.R.C. § 6103(b)(2)(A), which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

Bates Nos. 0371-0389: Unsigned draft of a memorandum prepared by James Gergurich for the signature of Heather Maloy to B. John Williams, titled "Bond Linked Issue Premium Structure (BLIPS) Son of Boss transaction" dated June 6, 2003, but with a "draft" box dating the draft June 10, 2003, in the upper right corner of each page. The handwritten notation "DY 6/10" on the first page, apparently indicating that the handwritten notes throughout the draft memorandum are Donna Marie Young's. The document also contains typewritten redlining. The Service asserts executive privilege for the entire document because it is a draft of a memorandum that was not yet issued and it consists of the reviewer's comments on, and the author's opinions, conclusions, analysis and recommendations with respect to, the position the Office of Chief Counsel should take in advising LMSB as to the proper tax treatment of the transactions under examination, as described in the memorandum. The Service also asserts I.R.C. § 6103 to protect the entirety of the document as being a third party taxpayer's return information. The assistance was prepared by Mr. Gergurich in the course of an examination with respect to the determination as to the existence, or possible existence, of this third party taxpayer's tax liability under the Code. As such, it constitutes return information under I.R.C. § 6103(b)(2)(A), which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

Bates Nos. 0390-0407: Unsigned draft of a memorandum prepared by James Gergurich for the signature of Heather Maloy to B. John Williams, titled "Bond Linked Issue Premium Structure (BLIPS) Son of Boss transaction" dated June 6, 2003, with a "draft" box dating it June 10, 2003, in the upper right corner of each page, with handwritten notes by an unidentified reviewer on pages 4, 11 and 18. The Service asserts executive privilege for the entire document because it is a draft of a memorandum that was not yet issued and it consists of the reviewer's comments on, and the author's opinions, conclusions, analysis and recommendations with respect to, the position the Office of Chief Counsel should take in advising LMSB as to the proper tax treatment of the transactions under examination, as described in the memorandum. The Service also asserts I.R.C. § 6103 to protect the entirety of the document as being a third party taxpayer's return information. The assistance was prepared by Mr. Gergurich in the course of an examination with respect to the determination as to the existence, or possible existence, of this third party taxpayer's tax liability under the

Code. As such, it constitutes return information under I.R.C. § 6103(b)(2)(A), which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

Bates Nos. 0410-0429: Unsigned draft of a memorandum prepared by James Gergurich for the signature of Heather Maloy to B. John Williams, titled "Bond Linked Issue Premium Structure (BLIPS) Son of Boss transaction" dated June 6, 2003, but with a "draft" box dating the draft June 10, 2003, in the upper right corner of each page, with typewritten redlining and handwritten notes by James Gergurich throughout. The Service asserts executive privilege for the entire document because it is a draft of a memorandum that was not yet issued and it consists of the reviewer's comments on, and the author's opinions, conclusions, analysis and recommendations with respect to, the position the Office of Chief Counsel should take in advising LMSB as to the proper tax treatment of the transactions under examination, as described in the memorandum. The Service also asserts I.R.C. § 6103 to protect the entirety of the document as being a third party taxpayer's return information. The assistance was prepared by Mr. Gergurich in the course of an examination with respect to the determination as to the existence, or possible existence, of this third party taxpayer's tax liability under the Code. As such, it constitutes return information under I.R.C. § 6103(b)(2)(A), which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

Bates Nos. 0430-0447: Unsigned draft of a memorandum prepared by James Gergurich for the signature of Heather Maloy to B. John Williams, titled "Bond Linked Issue Premium Structure (BLIPS) Son of Boss transaction," dated June 6, 2003, with a "draft" box dating it June 6, 2003, in the upper right corner of each page. The Service asserts executive privilege for the entire document because it is a draft of a memorandum that was not yet issued and it consists of the author's opinions, conclusions, analysis and recommendations with respect to, the position the Office of Chief Counsel should take in advising LMSB as to the proper tax treatment of the transactions under examination, as described in the memorandum. The Service also asserts I.R.C. § 6103 to protect the entirety of the document as being a third party taxpayer's return information. The assistance was prepared by Mr. Gergurich in the course of an examination with respect to the determination as to the existence, or possible existence, of this third party taxpayer's tax liability under the Code. As such, it constitutes return information under I.R.C. § 6103(b)(2)(A), which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

Bates Nos. 0448-0465: Unsigned draft of a memorandum prepared by James Gergurich for the signature of Heather Maloy to B. John Williams, titled "Bond Linked Issue Premium Structure (BLIPS) Son of Boss transaction," dated June 6, 2003, with a "draft" box dating it June 4, 2003, in the upper right corner of each page, with typewritten redlining and handwritten comments by Christine Ellison throughout. The Service asserts executive privilege for the entire document because it is a draft of a memorandum that was not yet issued and it consists of the reviewer's comments on, and the author's opinions, conclusions, analysis and recommendations with respect to, the position the Office of Chief Counsel should take in advising LMSB as to the proper tax treatment of the transactions under examination, as described in the memorandum. The Service also asserts I.R.C. § 6103 to protect the entirety of the document as being a third party taxpayer's return information. The assistance was prepared by Mr. Gergurich in the course of an examination with respect to the determination as to the existence, or possible existence, of this third party taxpayer's tax liability under the Code. As such, it constitutes return information under I.R.C. § 6103(b)(2)(A), which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

Bates Nos. 0466-0478: Unsigned draft of a memorandum prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, titled "Assertion of Internal Revenue Code § 6694 return preparer penalty against promoter of BLIPS transaction," dated February 26, 2003, with a handwritten notation "draft 2/26/03" in the upper right corner of the first page, with handwritten notes by Christine Ellison throughout. The Service asserts executive privilege for the entire document because it is a draft of a memorandum that was not yet issued and it consists of the reviewer's comments on, and the author's opinions, conclusions, analysis and recommendations, with respect to, the position the Office of Chief Counsel should take in advising LMSB as to the proper tax treatment of the transactions under examination, as described in the memorandum. The Service also asserts I.R.C. § 6103 to protect the entirety of the document as being a third party taxpayer's return information. The assistance was prepared by Mr. Gergurich in the course of an examination with respect to the determination as to the existence, or possible existence, of this third party taxpayer's tax liability under the Code. As such, it constitutes return information under I.R.C. § 6103(b)(2)(A), which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

Bates Nos. 0624-0636: An unsigned draft of the Chief Counsel Notice, dated "July __, 2003," in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, titled "Notice 2000-44 BLIPS Tax Shelters," with a "draft" box dating it June 14, 2003, appearing in the upper right corner of each page. There are extensive handwritten comments, by Christine Ellison, of a substantive nature, throughout. The Service asserts executive privilege for the entire document as it

is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates Nos. 0637-0649: An unsigned draft of the Chief Counsel Notice, dated "June __, 2003," in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, titled "Notice 2000-44 BLIPS Tax Shelters," with a "draft" box dating it June 17, 2003, appearing in the upper right corner of each page, with typewritten redlined changes throughout. There are also handwritten comments, by Christine Ellison, of a substantive nature, on the fifth page. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates Nos. 0651-0665: An unsigned draft of the Chief Counsel Notice, dated "June __, 2003," in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, titled "Notice 2000-44 BLIPS Tax Shelters," with a "draft" box dating it June 18, 2003, appearing in the upper right corner of each page, with typewritten redlined changes throughout. There are also handwritten comments, by Christine Ellison, of a substantive nature, on pages 4 and 5. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates Nos. 0666-0677: An unsigned draft of the Chief Counsel Notice, dated "July __, 2003," in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, titled "Notice 2000-44 BLIPS Tax Shelters" with a "draft" box dating it June 14, 2003, in the upper right corner of each page and handwritten question as to certain language of the draft, by James Gergurich, on the first page. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates Nos. 0678-0690: Another version of an unsigned draft of the Chief Counsel Notice, dated "July __, 2003," in memorandum format, prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, titled "Notice 2000-44 BLIPS Tax Shelters" with a "draft" box dating it June 14, 2003, in the upper right corner of each page. The Service asserts executive privilege for the entire document as it is a draft of the Chief Counsel Notice that was not yet issued by the Office of Chief Counsel.

Bates Nos. 0691-0705: Undated draft memorandum prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, titled "BLIPS Son of boss transaction" with extensive handwritten annotations by Ms. Ellison, consisting of revised language, substantive comments, and questions raised by the draft she was reviewing, throughout. The Service asserts executive privilege for the entire document because it is a draft of a memorandum that was not yet issued and it consists of the reviewer's comments on, and the author's opinions, conclusions, analysis and recommendations, with respect to, the position the Office of Chief Counsel should take

in advising LMSB as to the proper tax treatment of the transactions under examination, as described in the memorandum. The Service also asserts I.R.C. § 6103 to protect the entirety of the document as being a third party taxpayer's return information. The assistance was prepared by Mr. Gergurich in the course of an examination with respect to the determination as to the existence, or possible existence, of this third party taxpayer's tax liability under the Code. As such, it constitutes return information under I.R.C. § 6103(b)(2)(A), which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

Bates Nos. 0706-0720: Undated memorandum from Frank Panza, attorney, Area Counsel, Area 7, SBSE, to William Blanchard titled "Son of BOSS – BLIPS Tax Shelter," requesting Chief Counsel Advice on the Bond Link Issue Premium Structure in the context of multiple examinations of third party taxpayers. (The attachments indicated on the final page of the memorandum are not included.) The Service asserts executive privilege for the entire document because it consists of the author's opinions, conclusions, analysis and recommendations with respect to how the author believes the Office of Chief Counsel should advise IRS Examination personnel as to the appropriate tax treatment of the particular transactions described in the memorandum. The Service also asserts I.R.C. § 6103 to protect the entirety of the document as being a third party taxpayer's return information. The request for legal advice was prepared by Mr. Panza, to assist IRS Examination personnel who were conducting examinations of third party taxpayers for which the appropriate tax treatment of their participation in the BLIPS transactions was at issue. Mr. Panza prepared this document in the course of several examinations with respect to the determination as to the existence, or possible existence, of these third party taxpayers' tax liability under the Code. As such, it constitutes return information under I.R.C. § 6103(b)(2)(A), which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

Bates Nos. 0721-0726. Draft of a memorandum prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, titled "BLIPS Son of Boss transaction." There are handwritten annotations, of an editorial nature, on pages 4 and 6, by Ms. Ellison. The Service asserts executive privilege for the entire document because it is a draft of a memorandum that was not yet issued and it consists of the reviewer's comments on, and the author's opinions, conclusions, analysis and recommendations, with respect to, the position the Office of Chief Counsel should take in advising LMSB as to the proper tax treatment of the transactions under examination, as described in the memorandum. The Service also asserts I.R.C. § 6103 to protect the entirety of the document as being a third party taxpayer's return information. The assistance was prepared by Mr. Gergurich in the course of an examination with respect to the determination as to the existence, or possible existence, of this third party taxpayer's tax liability under the Code. As such, it constitutes return information under I.R.C. § 6103(b)(2)(A), which is confidential under I.R.C. § 6103(a). Plaintiff has not

demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

Bates Nos. 0727-0732. Draft of a memorandum prepared by James Gergurich for the signature of Christine Ellison to Heather Maloy, titled "Bond Linked Issue Premium Structure (BLIPS) Son of Boss transaction" dated April 23, 2003, with a handwritten notation "draft 4/23/03" and handwritten comments by Christine Ellison throughout. The Service asserts executive privilege for the entire document because it consists of the reviewer's comments on and the author's opinions, conclusions, analysis and recommendations with respect to, the position the Office of Chief Counsel should take in advising LMSB as to the proper tax treatment of the transactions under examination, as described in the memorandum. The Service also asserts I.R.C. § 6103 to protect the entirety of the document as being a third party taxpayer's return information. The assistance was prepared by Mr. Gergurich in the course of an examination with respect to the determination as to the existence, or possible existence, of this third party taxpayer's tax liability under the Code. As such, it constitutes return information under I.R.C. § 6103(b)(2)(A), which is confidential under I.R.C. § 6103(a). Plaintiff has not demonstrated a material interest in this third party return information under section 6103(e), secured a consent from the taxpayer under section 6103(c), nor otherwise demonstrated its entitlement under the Internal Revenue Code.

8. The production of the documents, or the withheld portions thereof, described in paragraph 7, would inhibit the frank and honest discussion of legal and policy matters, and thus would adversely affect the quality of the Service's decisions and policies. Disclosure of the withheld documents, or portions thereof, would reveal opinions of the Office of Chief Counsel at many levels at a time when the opinions were not fully developed and the issues were still being debated. None of the withheld documents, or portions thereof, represents a statement of agency policy or a final decision and release of the withheld information could, therefore, result in confusion to the public. Disclosure of the withheld information would adversely affect the Service's ability to administer and enforce the law under subchapter K of the Internal Revenue Code at all levels, from voluntary compliance and examination to appeals and litigation.

9. Certain of the documents described in paragraph 7 were generated with respect to taxpayers other than the plaintiffs. These documents, which were prepared by Counsel personnel with respect to the determination, by IRS Examination personnel, of the existence or possible existence of liability under the Internal Revenue Code of these third party taxpayers. Accordingly, these documents are also being withheld pursuant to I.R.C. § 6103(a), which provides that returns and return information shall be confidential and shall not be disclosed except as authorized by a provision of the Code. Since plaintiffs have not demonstrated a material interest under section 6103(e), nor secured a consent from these third party taxpayers under section 6103(c), nor otherwise demonstrated entitlement under the Code, I.R.C. § 6103(a) bars disclosure.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 24th day of July, 2006, in Washington, D.C.

Margo L. Stevens

MARGO L. STEVENS
Assistant Chief Counsel
(Disclosure and Privacy Law)
Office of Chief Counsel
Internal Revenue Service
1111 Constitution Avenue, N.W.
Washington, D.C. 20224
Tel: (202) 622-4560

Exhibit A

Declaration of Margo L. Stevens
(July 24, 2006)

information gathering and collection processes. In addition, provides assistance to Area Counsel, Division Counsel, and Operating Division personnel with respect to such matters.

30.3.2.3.6.2
(07-21-2005)
**Deputies Associate Chief Counsel and Director (APA Program)**

(1) Functions of the Deputies Associate Chief Counsel (International) and Director (APA). The Deputies Associate Chief Counsel (International) (Deputy or Deputies) and Director (APA) report to and are supervised by the Associate. The Deputies perform those functions the Associate is authorized to perform that arise out of, relate to, or concern the respective activities or functions administered by each Deputy, subject to the continuing supervision, control, and review of the Associate. Each Deputy may act for the Associate, or one another, as directed by the Associate. The Director (APA) performs those functions the Associate is authorized to perform that arise out of, relate to, or concern the APA Program.

(2) In general, the Deputy Associate Chief Counsel (Strategic International Programs) focuses on strategic planning within the Office of Chief Counsel; develops strategic relationships with the Operating Divisions, including the relationship of the Associate Chief Counsel (International) with international specialists assigned to the Division Counsel at field offices across the country; plans, directs, and coordinates the Office of Chief Counsel's participation in all multinational fora; assists Treasury in planning, directing, and coordinating the negotiation of treaties and other international agreements; oversees the tax shelter program of the Associate Chief Counsel (International) and plans, directs, and coordinates international training for the Office of Chief Counsel.

(3) In general, the Deputy Associate Chief Counsel (International - Technical) focuses on the public guidance program; helps ensure accurate, consistent, and uniform legal analysis in all the Office's legal products; and coordinates these matters with other components of the Service, Chief Counsel's Office, Treasury, other government agencies, and international organizations, as necessary.

(4) In general, the Deputy Associate Chief Counsel (International Field Service and Litigation) focuses on formulating and coordinating the Service's position in litigation with the Division Counsel, the Service, and DJ in order to ensure that consistent and appropriate technical positions are taken; coordinates appeal and settlement recommendations and prepares other documents setting forth the Service's position in such cases; coordinates letter rulings in response to requests from taxpayers; and coordinates technical advice memoranda and other legal advice responding to questions raised by Service personnel.

(5) In general, the Director (APA) is responsible for the APA Program. See CCDM 32.4.1.

30.3.2.3.7
(07-21-2005)
**Associate Chief Counsel (Passthroughs & Special Industries)**

(1) The Passthroughs and Special Industries legal function is headed by the Associate Chief Counsel (Passthroughs & Special Industries), who reports to, and who is supervised by, the Deputy Chief Counsel (Technical). Two Deputy Associate Chief Counsel report to, and are supervised by, the Associate Chief Counsel (PSI). The Associate Chief Counsel (PSI), together with his or her Deputies, supervises nine branches, a legislative unit, technical and planning

staff, and administrative staff, as depicted on the organizational chart in Exhibit 30.3.2-9. With the exception of the front office staff, employees are assigned to nine branches and the legislative unit.

(2) The Associate Chief Counsel (PSI) is responsible for providing legal support and guidance to the Commissioner, the Operating Divisions, Division Counsel, other components of the Service and Chief Counsel's Office, Treasury, other government agencies and the public on all legal matters within its jurisdiction.

30.3.2.3.7.1
(07-21-2005)
**Subject Matter Responsibility and Functions**

(1) The Associate Chief Counsel (PSI) is responsible for tax matters involving income taxes of S corporations, partnerships (including limited liability companies) and trusts; estate, gift, generation-skipping transfer, and certain excise taxes; depreciation, depletion, and other cost recovery issues; income tax credits; cooperative housing corporations; farmers' and other cooperatives; the low-income housing credit; research and experimental expenditures; and certain homeowners associations, to the Service, the Office of Chief Counsel, the Department of the Treasury, and, where appropriate or required, to other government agencies and the public.

(2) The Associate Chief Counsel (PSI) performs the following functions:

a. Prepares legislative proposals, regulations, revenue rulings and procedures, actions on decisions, other items of public guidance and advisory opinions on matters of law within the jurisdiction of the Associate's office. Coordinates these matters with other components of the Service, Chief Counsel's Office and Treasury, as necessary.
b. Assists the Operating Divisions in setting strategic goals, policy, and procedure by providing input in the areas within the Associate's jurisdiction and working with Division Counsel and other Counsel offices to ensure the correct application of law.
c. Coordinates the Service's position in litigation with Division Counsel, the Service and DJ in areas within the Associate's jurisdiction in order to ensure the Operating Divisions are taking consistent and appropriate technical positions in litigation. Makes appeal and settlement recommendations and prepares other documents setting forth the Service's position in such cases.
d. Coordinates the resolution of cases and other matters where the subject matter is within the jurisdiction of the Associate's office. Works with the Service, Operating Divisions, Division Counsel, Taxpayer Advocate, and other components of the Service, as appropriate.
e. Provides administrative and technical support to Division Counsel and other Associate Chief Counsel in the handling and processing of litigation pending in the U.S. Tax Court and other federal courts. Reviews and coordinates pleadings, motions, briefs, settlement documents, notices of appeal, and any other material prepared in connection with U.S. Tax Court litigation. Processes or coordinates, as appropriate, petitions and complaints, briefs, actions on decision, and other matters with Division Counsel and other Associates.
f. Advises DJ as to the facts and legal positions of the Service in matters within the jurisdiction of the Associate's office; prepares recommendations concerning defense, settlement, appeal, or certiorari; and coordinates other matters with the Department as required.
g. Develops policy, procedure, directives, Chief Counsel Notices, Litigation Guideline Memorandums, and Chief Counsel Directives Manual provisions to provide uniform application of the provisions within the Associate's juris-

diction to the Office of Chief Counsel. Provides support and guidance in connection with the development of Internal Revenue Manual provisions.

h. Issues Technical advice or other legal advice or determinations responding to questions raised by Service personnel.
i. Issues letter rulings and general technical information letters in response to requests from taxpayers.
j. Reviews booklets, training materials, Audit Technique Guides, Coordinated Issue Papers, Appeals Settlement Guidelines, forms, publications and instructions to ensure technical accuracy, and upon request, assists in their preparation.

30.3.2.3.8
(07-21-2005)
**Associate Chief Counsel (Procedure & Administration)**

(1) The Procedure and Administration legal function is headed by the Associate Chief Counsel (Procedure & Administration), who reports to, and who is supervised by, the Deputy Chief Counsel (Operations). A Deputy Associate Chief Counsel reports to, and is supervised by, the Associate Chief Counsel (P&A). The Associate Chief Counsel (P&A), together with his or her Deputy, supervises three Assistants Chief Counsel (who, in turn, supervise three branches each) as well as the Director, Legal Processing Division (who, in turn, supervises a number of support units that provide support services to the entire Office of Chief Counsel). See organizational chart in Exhibit 30.3.2-10.

(2) The Associate Chief Counsel (P&A) is responsible for providing legal support and guidance to the Commissioner, the Operating Divisions, Division Counsel, other components of the Service and Chief Counsel's Office, Treasury, other government agencies and the public on all legal matters within its jurisdiction. The Associate Chief Counsel (P&A) is responsible for all legal matters in the area of federal tax procedure and administration including matters relating to reporting and paying taxes; assessing and collecting taxes (including interest and penalties); abating, crediting or refunding over-assessments or overpayments of tax; and filing information returns.

30.3.2.3.8.1
(07-21-2005)
**Subject Matter Responsibility and Functions**

(1) The Associate Chief Counsel (P&A) is responsible for matters falling under Subtitle F of the Internal Revenue Code, related off Code provisions and various provisions of Titles 5, 11 and 28 of the United States Code. The subject matter jurisdiction of the Associate Chief Counsel (P&A) includes judicial proceedings, disclosure, FOIA, and Privacy Act matters affecting the Service and the Office of Chief Counsel. The Associate Chief Counsel (P&A) is responsible for the uniform application and interpretation of these provisions within the Service. The Associate Chief Counsel (P&A) also serves as the liaison officer of the Chief Counsel with the U.S. Tax Court and the U.S. Court of Federal Claims. The Associate Chief Counsel (P&A) serves as the sanctions officer for the Office of Chief Counsel.

(2) The Associate Chief Counsel (P&A) performs the following functions:

a. Prepares legislative proposals, regulations, revenue rulings and procedures, letter rulings, actions on decisions, other items of public guidance and advisory opinions on matters of law within its jurisdiction. Coordinates these matters with other components of the Service, Chief Counsel's office and Treasury as necessary.
b. Assists the Operating Divisions in setting strategic goals, policy, and procedure by providing input in the areas within the Associate's jurisdiction

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| KLAMATH STRATEGIC INVESTMENT FUND, LLC, By and through ST. CROIX VENTURES, LLC (Managing Member), | § | |
| Plaintiff, | § | CASE NO. 5:04-CV-278-TJW |
| v. | § | |
| | § | (Consolidated with Kinabalu v. United States, Civil Case No. 5:04-CV- 00279-TJW) |
| UNITED STATES OF AMERICA, | § | |
| Defendant. | § | |

FOURTH (AMENDED) DECLARATION OF MARGO L. STEVENS

I, Margo L. Stevens, pursuant to the provisions of 28 U.S.C. § 1746, state:

1. I am the Assistant Chief Counsel (Disclosure & Privacy Law) in the Office of Associate Chief Counsel (Procedure & Administration), Office of Chief Counsel, Internal Revenue Service (Service). This declaration supplements the declaration I executed on July 20, 2006, setting forth the basis for an extension of time in which to lodge formally an assertion of executive privilege, the declaration I executed on July 21, 2006, asserting executive privilege for the documents maintained in the background files to proposed Income Tax Regulation section 1.701-2 and Treasury Decision 8755, and the declaration I executed on July 24, 2006, asserting executive privilege for the documents maintained in the background files to Chief Counsel Notices CC-2003-20 and CC-2003-30.

2. I have been informed that plaintiff's First Request for Production of Documents, dated November 2, 2005, sought, *inter alia,* the production of documents pertaining to the development of Treasury Regulations §§ 1.752-6 and -7, and 1.358-7. I have been informed by Stacy Short, an attorney in the office of the Associate Chief Counsel (Passthroughs and Special Industries) ("PSI"), that since Treasury Regulations

1814326 1

§§ 1.752-6 and -7, and 1.358-7 were developed simultaneously under one project, the primary responsibility for which was with PSI, a single file for the project was created and maintained by PSI.

3. Based upon the thorough review of the documents at issue by attorneys in the office of the Associate Chief Counsel (PSI), the information provided to me by these attorneys, and my own personal review of these documents, I have determined to assert the claim of executive privilege with respect to certain documents or portions of certain documents more thoroughly described herein below. Should the Court determine the withheld documents or portions thereof to be relevant and that neither I.R.C. § 6103 nor any evidentiary privileges apply, I am claiming executive privilege.

4. When the Service asserts a formal claim of executive privilege with respect to predecisional/deliberative documents, the privilege is claimed only to protect those intra-governmental documents reflecting advisory opinions, recommendations, and deliberations which comprise part of the process by which agency decisions and policies are formulated. The agency does not seek to protect documents containing factual matters unless such factual matters are so intertwined with advisory opinions, recommendations, conclusions, or reasoning by Government officials that the factual material cannot be excised from the privileged material or unless the factual matter itself, through its selection and distillation by the author, would reveal the author's mental processes or the agency's deliberations. The privilege is not claimed to protect all opinions, conclusions, mental impressions, and thought processes of Government officials, but only those whose disclosure would interfere with vital Government functions or would cause injury to the quality of agency decisions.

5. When the Service asserts a formal claim of executive privilege with respect to predecisional/deliberative documents, the agency first considers whether the document falls within the scope of the deliberative process privilege; that is, whether the document was generated before the adoption of an agency policy or position and whether the document reflects the give-and-take of the consultation process leading up to the formulation of an agency policy or position. The agency also considers whether the document is recommendatory in nature or is a draft of what may become a final document; whether the document weighs the pros and cons as to the agency's ultimate adoption of one viewpoint

or another; and whether the material is so candid or personal in nature that public disclosure is likely in the future to stifle honest and frank communication within the agency. Consequently, the agency considers protecting recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy or position of the agency. These types of documents could inaccurately reflect or prematurely disclose the views of Government officials, suggesting an agency position which is, as yet, only a personal position. Disclosure of documents containing reasons and rationales that were not ultimately relied upon by the agency in reaching its decision(s) could create public confusion.

6. The following documents, authored between August 13, 2001, and April 19, 2005, were prepared and/or considered by the Office of Chief Counsel during the development of the aforementioned Treasury Regulations. The documents are maintained in the files of the Associate Chief Counsel (PSI). The production of the withheld documents, or portions thereof, more fully described below, would inhibit the frank and honest discussion of legal and policy matters and thus would adversely affect the quality of the Service's decisions and policies. Furthermore, disclosure of the withheld documents, or portions thereof, would reveal opinions of Office of Chief Counsel, Office of the Assistant Secretary (Tax Policy) at the Department of the Treasury, as well as other Department of the Treasury, personnel at many levels at a time when the opinions were not fully developed and the issues were still being debated. None of the withheld documents, or portions thereof, represents a statement of agency

policy or a final decision and release of the withheld information could, therefore, result in confusion to the public and have a negative impact on the processes in which published guidance (*e.g.*, regulations, revenue rulings, etc.) are considered. Further, disclosure of the withheld information would adversely affect the Service's ability to administer and enforce the law under the Internal Revenue Code at all levels, from voluntary compliance and examination to appeals and litigation. By way of example, taxpayers may choose to argue that the Service must defend positions that were not adopted, or that consideration of a position not adopted demonstrates the reasonableness of a taxpayer's position.

7. The following documents are responsive to Plaintiff's First Request for Production of Documents, dated November 2, 2005, for which the Service asserts executive privilege in whole or in part:

**Treasury Regulations §§ 1.752-6 and -7, and 1.358-7**

- **Binder 1**

**Bates Nos. CC0002-CC0004** – An exchange of nine emails among Deborah Harrington, attorney, Office of Tax Policy ("OTP"), Dianna Miosi, Chief, Branch 1, PSI, William O'Shea, Deputy Associate Chief Counsel, PSI, Horace Howells, attorney, Branch 1, PSI, and Donna Marie Young, Special Counsel to the Associate Chief Counsel, PSI, on July 19 and 22, 2002, discussing potential regulation requirements. The Service claims executive privilege for the entire document because it consists of the respective authors' opinions, analyses, conclusions and recommendations for the treatment of one particular issue in the draft regulations.

**Bates No. CC0006** – An email from Deborah Harrington to Horace Howells, Dianna Miosi, and Donna Marie Young, dated August 1, 2002, listing recommended changes to the latest draft of the regulations. The Service claims executive privilege for the entire document because it consists of the tentative approaches to, and recommended language that Gary Wilcox, Deputy Chief Counsel (Technical), and Eric Solomon, Deputy Assistant Secretary (Regulatory Affairs), recommended be given to, several issues that PSI was to incorporate into the next draft of the regulations.

**Bates Nos. CC0008-CC0009** – An email from Deborah Harrington to Horace Howells, Dianna Miosi, Donna Marie Young, William O'Shea, and Heather Maloy, Associate Chief Counsel, PSI, dated September 27, 2002, containing an explanation of substantive changes that Deborah Harrington suggests be made to the August 9, 2002, version of the draft regulations. The Service claims executive privilege for the entire document because it consists of suggested draft language, and the author's opinions, analyses, conclusions and recommendations for various approaches to be taken in the draft regulations (including references to, and reactions about, suggestions and comments offered by other Treasury and Counsel attorneys on the draft regulations).

**Bates No. CC0011** – Email from Deborah Harrington to Horace Howells, dated October 30, 2002, transmitting an October 30, 2002, revision of the draft regulations. This Service claims executive privilege for the portion of the document that contains the text of the email message because it discusses the reason for the revisions to a particular section of the draft regulations, in light of certain concerns raised by another Counsel attorney.

**Bates No. CC0013** – An email from Deborah Harrington to Horace Howells, Dianna Miosi, Donna Marie Young, William O'Shea, and Heather Maloy dated December 16, 2002, transmitting clean and redlined versions, dated December 9 and 16, 2002, of the draft regulations. The Service claims executive privilege for the second sentence of the message because it discusses a particular section of the regulations for which treatment had not yet been made.

**Bates Nos. CC0014-CC0015** – An exchange of two emails among Donna Marie Young, Deborah Harrington, Horace Howells, Dianna Miosi, William O'Shea, and Heather Maloy, on December 16 and 17, 2002, transmitting clean and redlined versions of the draft regulations and discussing revisions to language from the December 16, 2002, version of the draft regulations. The Service claims executive privilege for the portion of the document that contains the body of the message from Ms. Young, except for the introductory line, because it contains comments on, and suggested language for, the draft regulations. The Service also claims executive privilege for the second sentence of the message from Deborah Harrington because it discusses a particular section of the regulations for which treatment had not yet been made.

**Bates No. CC0016** – An email from Deborah Harrington to Horace Howells, Dianna Miosi, and Donna Marie Young and copied to William O'Shea, Heather Maloy, and Audrey Nacamuli, attorney, OTP, dated January 8, 2003, discussing language that she was proposing to address the Chief Counsel's comments regarding the draft regulations. The Service claims executive privilege for the entire document because it discusses a potential concern in the draft regulations and outlines a suggested change to address such concern.

**Bates Nos. CC0018-CC0020** – An exchange of three emails among Deborah Harrington, Donna Marie Young, Horace Howells, William O'Shea, and Dianna Miosi, on March 11 and 13, 2003, addressing the example section of the most recent version of the draft regulations. The Service claims executive privilege for the entire document because it consists of suggested draft language for, and the authors' opinions and recommendations with respect to, the language being suggested for the examples section of the draft regulations.

**Bates Nos. CC0021-CC0023** –An exchange of four emails among Deborah Harrington, Donna Marie Young, Horace Howells, William O'Shea, and Dianna Miosi, on March 11 and 13, 2003, commenting upon, including revising language from, previous e-mail (Bates Nos. CC0018-CC0020). The emails address examples of the most recent version of the draft regulations. The Service claims executive privilege for the entire document because it consists of suggested draft language for, and the authors' opinions and recommendations with respect to, the language being suggested for the examples section of the draft regulations.

**Bates No. CC0024** – An exchange of two emails among Deborah Harrington, Horace Howells, Heather Maloy, William O'Shea, Donna Marie Young, Dianna Miosi, and Cary Pugh, Special Counsel to the Chief Counsel, dated April 14, 2003, transmitting copies of the April 9, 2003, versions of the draft Notice of Proposed Rulemaking (NPRM) and temporary regulations, including a description of tentative positions to be taken in the draft regulations. The Service claims executive privilege for the portion of the document that contains Ms. Harrington's message following the first two sentences because this material discusses substantive changes being made in this version of the draft regulations and reflects comments and concerns expressed by other OTP and Counsel attorneys that are addressed in the next version of the draft regulations.

**Bates No. CC0025** – An exchange of two emails among Deborah Harrington, Horace Howells, Heather Maloy, William O'Shea, Donna Marie Young, Dianna Miosi, Audrey Nacamuli, attorney, OTP, and Eric Solomon, on April 14, 2003, transmitting the April 9, 2003, versions of the draft regulations and including a description of the revisions made in this version of the draft regulations. The Service claims executive privilege for the text of Ms. Harrington's message because it discusses a substantive change made to the language of the draft regulations.

**Bates No. CC0026** – An exchange of three emails among Cary Pugh, Deborah Harrington, Horace Howells, Heather Maloy, William O'Shea, Donna Marie Young, Dianna Miosi, and Cary Pugh on April 14, 2003, transmitting the April 9, 2003, versions of the draft regulations and discussing the whether the authority for the draft regulations covers a particular area. (Two of the three emails duplicate Bates No. CC0025 and the Service's claim of executive privilege, and the reason therefor, is the same.) The Service claims executive privilege for the message from Ms. Pugh because it discusses a substantive change made to the

language of the draft regulations and raises a question about, and reflects her own thoughts about, an aspect of the draft regulations that needs resolution.

**Bates No. CC0027 –** An exchange of three emails among Deborah Harrington, Horace Howells, Heather Maloy, William O'Shea, Donna Marie Young, Dianna Miosi, Audrey Nacamuli, and Eric Solomon on April 14, 2003, transmitting the April 9, 2003, version of the draft regulations and including a description of revisions made in this version of the draft regulations. The Service claims executive privilege for the portion of the document that contains Deborah Harrington's message, which is a duplicate of Bates No. CC0025, and the Service's claim of executive privilege, and the reason therefor, is the same.

**Bates Nos. CC0028-CC0029** – An exchange of four emails among Deborah Harrington, Cary Pugh, Horace Howells, Heather Maloy, William O'Shea, Donna Marie Young, and Dianna Miosi on April 14, 2003, transmitting the April 9, 2003, versions of the draft regulations. The Service claims executive privilege for the portions of the document that contain Ms. Pugh's message and the first paragraph of Ms. Harrington's 1:16pm email, which is a duplicate of Bates No. CC0026, and the Service's claim of executive privilege, and the reason therefor, is the same.

**Bates Nos. CC0030-CC0031 –** An exchange of five emails among Donna Marie Young, Deborah Harrington, Cary Pugh, Heather Maloy, William O'Shea, Dianna Miosi, Horace Howells, and Christine Ellison, Chief, Branch 3, PSI, on April 14 and 15, 2003, transmitting the April 9, 2003, versions of the draft regulations and discussing a question about, and reflects the views of the respective authors, with respect to, an aspect of the draft regulations that needs resolution. The Service claims executive privilege for the portions of the document that contain the first paragraph of Ms. Young's email, because it memorializes her discussions with IRS Examination personnel who had experience with the transactions that were the subject of the draft regulations, and how that experience informed the development of the draft regulations. The Service claims executive privilege for Ms. Pugh's email and Ms. Harrington's 1:16pm email, which are duplicates of Bates No. CC0026, and the Service's claim of executive privilege, and the reason therefor, is the same.

**Bates Nos. CC0032-CC0034** – An exchange of eight emails among Donna Marie Young, Cary Pugh, Deborah Harrington, Heather Maloy, William O'Shea, Dianna Miosi, Horace Howells, Christine Ellison, and Gary Wilcox, on April 14 and 15, 2003, transmitting the April 9, 2003, versions of the draft regulations and discussing a question about, and reflects the views of the respective authors, with respect to, an aspect of the draft regulations that needs resolution. The Service claims executive privilege for the portions of the document that contain Ms. Young's two emails, Ms. Pugh's two emails, and Ms. Harrington's April 14, 2003, 1:16pm and April 15, 2003 emails. The Service claims executive privilege for the portions that reflect the respective authors' views of, and recommended

treatment of, a particular transaction under the draft regulations. Some of these portions are duplicates of Bates No. CC0030-CC0031, and the Service's claim of executive privilege, and the reason therefor, is the same.

**Bates No. CC0035** – An exchange of three emails among Deborah Harrington, William Alexander, Associate Chief Counsel (Corporate), Derek Cain, Deputy Associate Chief Counsel (Corporate), and Horace Howells on April 14 and 15, 2003, forwarding the transmission of the April 9, 2003, versions of the draft regulations for Corporate's review of the draft regulations and pointing out specific changes of interest. The Service claims executive privilege for the portions of the document containing the second sentence of Ms. Harrington's April 15th email and Ms. Harrington's April 14th email because these portions discuss a substantive change being proposed for the draft regulations.

**Bates Nos. CC0036-CC0039** – An exchange of four emails among Deborah Harrington, Donna Marie Young, Horace Howells, William O'Shea, Heather Maloy, and Dianna Miosi on April 17, 2003, suggesting changes to the language in the draft regulations. The Service claims executive privilege for the portions of the document that contain Ms. Young's 4:35pm email after the first line and Ms. Young's 11:46am email after the first two lines because these portions contain suggested draft language, with typewritten redlining and strike-outs, for the draft regulations.

**Bates Nos. CC0040-CC0043** – An exchange of nine emails among Cary Pugh, Donna Marie Young, Heather Maloy, William O'Shea, Dianna Miosi, Horace Howells, and Christine Ellison on April 14, 15, and 18, 2003, transmitting the April 9, 2003, versions of the draft regulations and discussing a question about, and reflects the views of the respective authors, with respect to, an aspect of the draft regulations that needs resolution. The Service claims executive privilege for the portions of the document that contain the first three paragraphs of Ms. Pugh's April 18, 2003, email, Ms. Young's April 15, 2003, at 4:05pm email, Ms. Pugh's April 14 and 15, 2003, emails, Ms. Harrington's April 15, 2003, email, Ms. Young's April 15, 2003, at 10:45am email, and the first paragraph of Ms. Harrington's April 14, 2003, email because these portions discuss whether the regulations, as currently drafted, would reach certain transactions. Portions of this document are duplicates of Bates No. CC0032-CC0034; the Service's claim of executive privilege for those portions, and the reason therefor, is the same.

**Bates No. CC0047** – An email from Deborah Harrington to Horace Howells, Donna Marie Young, Heather Maloy, William O'Shea, Gary Wilcox, and Cary Pugh, dated May 6, 2003, transmitting clean and redlined versions of the May 5, 2003, draft regulations with a discussion of revision of the preambles to the draft NPRM and temporary regulations. The Service claims executive privilege for the entire document because it discusses a substantive change in the draft regulations.