**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**Nos. 01-256 T and 01-257 T**
**(Judge Lettow)**

**MARRIOTT INTERNATIONAL RESORTS, L.P.,**
**MARRIOTT INTERNATIONAL JBS CORPORATION,**
**TAX MATTERS PARTNER,**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

**DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD OR REDACTED BASED ON DELIBERATIVE PROCESS PRIVILEGE**

Pursuant to the Court's Order of August 18, 2006, defendant, the United States, hereby files this supplemental brief with respect to plaintiff's motion to compel defendant to produce documents withheld or redacted on the grounds of the deliberative process privilege. In *Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302 (Fed. Cir. 2006), the Court of Appeals for the Federal Circuit ruled that the IRS properly invoked the deliberative process privilege, but this Court must still rule on the question of whether plaintiff has established a compelling need for the documents in order to overcome the Government's assertion of privilege. This supplemental brief highlights relevant developments since briefs were last filed in this Court.

## BACKGROUND[1]

This case concerns the taxable periods ended October 28, 1994, and December 30, 1994, of a partnership, Marriott International Resorts, L.P. (MIR). The IRS examined the partnership returns filed for those tax periods and issued Notices of Final Partnership Administrative Adjustment (FPAA). In the FPAA for the taxable period ended October 28, 1994, the IRS cited § 752 and Treas. Reg. § 1.701-2 as the statutory and regulatory authority for the adjustments made to the return. In the FPAA for the taxable period ended December 31, 1994, the IRS cited §§ 708 and 752 as the statutory authority for the adjustments made to the return.

In the Joint Preliminary Status Report filed in this case, defendant identified the following relevant legal questions involved in these cases:

> 1. Whether the series of transactions facilitated by Marriott International Resorts, L.P., lacked economic substance.
>
> 2. Alternatively, whether the formation of Marriott International Resorts, L.P., and the transactions facilitated by Marriott International Resorts, L.P., violated the intent of subchapter K, and fall within Section 1.701-2 of the Income Tax Regulations (the partnership anti-abuse rules).
>
> 3. Alternatively, whether the obligation of Marriott International Resorts, L.P., to close a short sale was a liability within the meaning of Internal Revenue Code of 1986, Section 752 (26 U.S.C. § 752).

In discovery, plaintiff requested from defendant all documents relating to the preparation and application of Treas. Reg. § 1.701-2; Temp. Treas. Reg. § 1.752-1T(g)(1988); Treas. Reg. § 1.752-1 (1991); Rev. Rul. 88-77; Rev. Rul. 95-8; Rev. Rul. 95-26; and Rev. Rul. 95-45.

---

[1] Because the relevant facts have been thoroughly ventilated in previous briefing in this Court and the Court of Appeals for the Federal Circuit, defendant recounts only those facts which are relevant for the purposes of this supplemental brief.

## DISCUSSION

### A. Defendant has established the potential harm that would result if the documents were disclosed

Plaintiff is incorrect when it argues that defendant's assertion of the deliberative process privilege is deficient because the IRS failed to describe the potential harm to the agency if *each* document were disclosed. The United States submitted the Declaration of Margo L. Stevens, IRS Assistant Chief Counsel (Disclosure and Privacy), in support of its claim of the deliberative process privilege. In Paragraph 10 of Ms. Stevens' declaration, she stated that disclosure of the withheld documents:

> . . . would inhibit the frank and honest discussion of legal and policy matters and thus would adversely affect the quality of the Service's decisions and policies. Furthermore, disclosure of the withheld documents, or portions thereof, would reveal opinions of Office of Chief Counsel, Office of the Assistant Secretary (Tax Policy) at the Department of Treasury, as well as other Department of Treasury personnel at many levels at a time when the opinions were not fully developed and the issues were still being debated. None of the withheld documents, or portions thereof, represents a statement of agency policy or a final decision and release of the withheld information, could, therefore, result in confusion to the public. Disclosure of the withheld information would adversely affect the Service's ability to administer and enforce the law under subchapter K of the Internal Revenue Code at all levels, from voluntary compliance and examination to appeals and litigation. By way of example, taxpayers may choose to argue that the Service must defend positions that were not adopted, or that consideration of a position not adopted demonstrates the reasonableness of a taxpayer's position.

Because this explanation applies to *all* documents for which the privilege was asserted, it also applies to *each* document. Repeating the explanation for each document would be pointlessly repetitive and wasteful.

**B. Other courts have ruled that similar privileged documents should not be produced to taxpayers**

**1. *Jade Trading, LLC v. United States***

In *Jade Trading, LLC v. United States*, CFC No. 03-2164 T (Aug. 15, 2005), the taxpayer requested documents similar to those sought by Marriott here.[2] Specifically, Jade requested, *inter alia*, IRS documents relating to Treas. Reg. § 1.701-2, *Helmer v. Commissioner*, T.C. Memo 1975-160 (1975), and the definition of "liability" under § 752. (Ex. 1 at 2.)[3] The United States asserted the deliberative process privilege with respect to the requested documents, and ultimately the parties requested that the Court review the documents *in camera* to rule on whether the documents should be produced notwithstanding the Government's assertion of the privilege. (*Id.* at 1.) After examining the documents, Judge Williams first determined that the IRS declarations describing the documents were accurate and complete and that the documents contained pre-decisional opinions, recommendations, or advice that were properly withheld under the privilege so as to protect the integrity of the government's decision- and policy-making process. (*Id.* at 4.)

Next, the court addressed whether the taxpayer's need for the documents outweighed the harm to the Government that would result from a disclosure. (*Id.* at 5.) Jade's purported justification for needing the documents was "trying to discover Defendant's ever-changing position with respect to the definition of contingent liabilities...." (*Ibid.*) In holding that the taxpayer's need for the documents did not outweigh the Government's interest, Judge Williams stated that (*id.* at 6) :

---

[2] This non-published decision was a follow-up to the court's ruling in *Jade Trading, LLC v. United States*, 65 Fed. Cl. 487 (2005).

[3] Exhibits 1- 4 are attached to the Declaration of G. Robson Stewart, filed herewith.

> production of the deliberative documents will not advance the accuracy and integrity of fact finding. Rather, the documents address solely internal governmental debate on matters of law – the scope and content of a regulation and the interpretation of a legal term. Both the validity of the regulation and the interpretation of the term "liabilities" can be adjudicated by the court without resort to the Government's predecisional debate and opinion.

Judge Williams cogently focused on the critical factor in the consideration of the privileged documents–whether any governmental pre-decisional opinions, recommendations, or advice will aid a court in resolving a legal issue–the definition of a term in a statute. As Judge Williams concluded, a court can adjudicate the relevant legal issues without resort to sifting through the unguarded ruminations of Government attorneys.

**2. *Klamath Strategic Investment Fund, LLC v. United States***

In *Klamath Strategic Investment Fund, LLC v. United States,* No. 5:04-cv-00278-TJW (E.D.Tex. Sept. 19, 2006), the taxpayer requested documents along the same lines as those requested by Marriott here. Specifically, Klamath requested, *inter alia*, IRS documents relating to Treas. Reg. § 1.701-2, Treas. Reg. § 1.752-6 and -7, and *Helmer v. Commissioner*, T.C. Memo 1975-160 (1975). (Ex. 2 at 4.) The United States asserted the deliberative process privilege with respect to the documents, and Klamath moved to compel production of the documents notwithstanding the assertion of the privilege. In its motion to compel, Klamath declared that it needed the documents because they reflect the Government's "prior understanding of what constitutes a liability, and under what circumstances it can rely on Treasury Regulation Section 1.701-2 to upset compliance with the Code." (*Id.* at 12.) Moreover, Klamath contended that the United States "has not articulated any specific or significant harm that would result from disclosure of the particular documents sought here." (*Id.* at 14.)

To resolve the dispute, Judge Ward examined the documents *in camera*.[4] (Ex. 3.) Judge Ward noted that the deliberative process privilege protects pre-decisional materials which concern deliberative and policy-making processes. (*Ibid.*) After reviewing the disputed documents, Judge Ward ruled that the United States had properly invoked the privilege,[5] and sustained the Government's claim that the documents were protected from disclosure. (*Ibid.*) Thus, the court effectively rejected Klamath's argument that the United States had failed to establish that specific or significant harm would result from disclosure of the documents. Moreover, the court's ruling functionally rejected Klamath's claim that its purported need for the documents outweighed any potential harm that might result from disclosure of the documents.

Significantly, Judge Ward's September 19, 2006, ruling on the privileged documents was issued two months *after* his ruling in *Klamath Strategic Investment Fund, LLC v. United States*, 440 F.Supp.2d 608 (E.D.Tex. 2006)(issued July 20, 2006). In *Klamath*, the taxpayer moved for summary judgment on two issues: (1) whether a particular loan premium is a "liability" under § 752; and (2) whether Treas. Reg. § 1.752-1(a)(4)(ii) could be applied retroactively.[6] *Klamath*, F.Supp.2d at 610. The court analyzed the question of what constitutes a "liability" for the purposes of § 752 by examining the statute itself, related statutes, and relevant case law. Ultimately, the court ruled that the particular loan premium at issue did not constitute a liability under § 752. The court was able to reach its decision without citing any pre-decisional documents drafted by Government attorneys. Moreover, it appears unlikely that the court

---

[4] Judge Ward ordered the United States to submit the documents to him on July 17, 2006. (Ex. 4.)

[5] Contrast this to *Pac. Gas & Elec. Co. v. United States*, 71 Fed. Cl. 205 (2006), involving procedural defects in claiming the deliberative process privilege.

[6] This regulation is not applicable to the tax periods at issue in this case.

examined any of the privileged documents prior to rendering its decision on the § 752-liability issue. The § 752-liability decision was issued on July 20, 2006, while the court had ordered the United States to submit the documents for *in camera* review only three days prior, on July 17, 2006. Even if the court had examined any of the privileged documents prior to issuing the court's decision on the § 752 merits, there is no evidence that they played any part in the court's decision-making process. This conclusion is confirmed by the court's subsequent rejection of Klamath's request to procure the documents.

As the decisions in *Jade Trading* and *Klamath* demonstrate, taxpayers have no compelling need for the production of pre-decisional documents in these circumstances which can defeat the properly-invoked deliberative process privilege. In this action, plaintiff is seeking the privileged documents because they purportedly relate to the specific legal issues cited in the FPAAs and the statement of issues by the United States in the Joint Preliminary Status Report. The Court, however, can resolve those issues without resort to the privileged documents, just as the court in *Klamath* reached a decision on the definition of liability under § 752 without any privileged documents. Quite simply, it would be clear error for the Court to rely on any non-published, pre-decisional Government documents to resolve any question of law. Moreover, it is hard to imagine that the privileged documents could contain any information pertinent to the Court's fact-finding in this case. Accordingly, the Court should find that plaintiff's purported compelling need does not trump defendant's properly-invoked executive process privilege in this action.

## CONCLUSION

Based on the foregoing reasons, defendant respectfully requests that the Court deny plaintiff's motion to compel and issue a protective order with respect to the documents protected by the properly-invoked deliberative process privilege.

Respectfully submitted,

s/G. Robson Stewart
G. ROBSON STEWART
U.S. Department of Justice - Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, DC 20044
tel: (202) 307-6493
fax: (202) 514-9440

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section

s/David Gustafson
Of Counsel

Dated: September 29, 2006

**APPENDIX**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**Nos. 01-256 T and 01-257 T**
**(Judge Lettow)**

**MARRIOTT INTERNATIONAL RESORTS, L.P.,**
**MARRIOTT INTERNATIONAL JBS CORPORATION,**
**TAX MATTERS PARTNER,**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

---

**DECLARATION OF G. ROBSON STEWART**

---

I, G. Robson Stewart, being of legal age and pursuant to 28 U.S.C., Section 1746, declare as follows:

1. I am the Department of Justice trial attorney assigned to defend the above-captioned case.

2. Attached hereto are true and accurate copies of the following documents:

Exhibit 1 - Order dated August 15, 2005, filed in *Jade Trading, LLC v. United States,* CFC No. 03-2164 T.

Exhibit 2 - Plaintiff's Motion to Compel the Production of Documents and Memorandum in Support, filed in *Klamath Strategic Investment*

*Fund, LLC v. United States,* No. 5:04-cv-00278-TJW (E.D.Tex.).

Exhibit 3 - Order dated September 19, 2006, filed in *Klamath Strategic Investment Fund, LLC v. United States,* No. 5:04-cv-00278-TJW (E.D.Tex.).

Exhibit 4 - Order dated July11, 2006, filed in *Klamath Strategic Investment Fund, LLC v. United States,* No. 5:04-cv-00278-TJW (E.D.Tex.).

I declare under penalty of perjury, that the foregoing is true and correct. Executed in Washington, D.C., on September 29, 2005.

G. ROBSON STEWART
Trial Attorney, Tax Division
U.S. Department of Justice

FILED
AUG 15 2005
U.S. COURT OF FEDERAL CLAIMS

# In the United States Court of Federal Claims

**No. 03-2164T**
**(Filed August 15, 2005)**
**(Not for Publication)**

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**JADE TRADING, LLC, ET AL.,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

## ORDER SUSTAINING DEFENDANT'S INVOCATION OF DELIBERATIVE PROCESS PRIVILEGE

This matter comes before the Court on the parties' joint request that the Court review documents in camera and rule on whether they are protected from disclosure in discovery under the deliberative process privilege.[1] The documents were submitted for in camera review in two increments. The first group of documents contained comments regarding the Internal Revenue Service's proposed adoption of Treasury Regulation § 1.701-2 -- including its scope, content and the pros and cons of adopting the regulation or portions thereof. The second submission contained two documents that mentioned Helmer v. Comm'r, T.C. Memo 1975-160 (1975) and the definition of "liability" under Internal Revenue Code Sections 357, 358, and 752. During the Pretrial Conference on August 4, 2005, the Court orally ruled that the documents are properly protected by the deliberative process privilege. This decision memorializes and explains that ruling.

### Background

In support of its invocation of the executive privilege, Defendant submitted five declarations of Margo L. Stevens, Assistant Chief Counsel (Disclosure and Privacy Law) in the Office of Associate Chief Counsel (Procedure & Administration), Office of Chief Counsel, Internal Revenue

---

[1] Joint Stipulation (May 25, 2005).

PENGAD-Bayonne, N. J.
EXHIBIT
1

Service (IRS), and two declarations of Eric Solomon, the Acting Deputy Assistant Secretary of Treasury.[2] There ensued a dispute concerning the adequacy of these assertions of executive privilege by these individuals because neither is the head of his or her respective agency. On April 22, 2005, the Court issued an order requiring Defendant to assert the executive privilege through the head of each agency by providing declarations from the Commissioner of the IRS and the Secretary of Treasury, or producing the documents. Jade Trading v. United States, 65 Fed. Cl. 487 (2005).

On May 6, 2005, Defendant filed a motion seeking reconsideration of the April 22, 2005, order, certification of the order for interlocutory appeal, or stay of its enforcement pending resolution of the issue of who must assert the privilege -- which is currently pending before the United States Court of Appeals for the Federal Circuit in Marriott Int'l Resorts v. United States, Nos. 01-256T and 01-257T. Plaintiffs opposed Defendant's motion. In an effort to resolve this controversy, the parties filed a stipulation requesting in camera review of documents. In this stipulation, the parties narrowed the scope of documents responsive to Plaintiffs' first request for production of documents, including No. 18 relating to Treas. Reg. § 1.701-2, which sought "the 'Background, Information, and Notes' file (BIN), any other documents maintained by Defendant with respect to the drafting, proposal, reservations, vagueness, criticisms, invalidity, abandonment, and/or inconsistent application of Treas. Reg. § 1.701-2," Pl.s' First Request ¶ 18, and Plaintiffs' second request for production of documents, including Nos. 1, 2, 3, 4, and 5, which sought documents addressing Helmer v. Comm'r, T.C. Memo 1975-160 (1975), "the definition of 'liability' under [Internal Revenue] Code Sections 357, 358, and 752, and associated topics." Stip. at ¶ 3. Plaintiffs narrowed the body of documents relating to Treas. Reg. 1.701-2 by excluding the drafts of the regulation. See Stip. at ¶ 11(a). As to the documents relating to Helmer and the definition of liability, Plaintiffs narrowed the request to documents "containing a citation or reference to Helmer." See Id., ¶ 11(b).

On May 26, 2005, Defendant filed approximately 87 documents for in camera review relating to Treasury Regulation § 1.701-2. In general, these documents appear to have been authored by and directed to IRS and/or Treasury employees. The documents contain draft language of and comments on the proposed regulation, proposed recommendations and opinions on drafts of the proposed regulation, opinions on public comments, questions asked by the IRS Chief Counsel and answers of IRS staffers, predecisional discussions of the pros and cons regarding the proposed regulation and its scope and content, opinions about potential examples to be included in the final regulation, and a partial draft of a notice of proposed rulemaking.[3]

On June 2, 2005, Defendant filed two additional documents for in camera review – one of which had been produced in the Marriott litigation and given to Plaintiff, the "Helmer/Cram memo." In Ms. Stevens' Declaration filed in the Marriott litigation, she described the withheld document as

---

[2] The Government submitted declarations of Margo Stevens on April 9, 2003, March 25, 2004, December 23, 2004, January 10, 2005, and January 28, 2005 and of Eric Solomon on January 5, 2005, and February 12, 2005. See Stip. at ¶ 6.

[3] Some of these documents reflect legal analysis and legal opinion as well.

follows:

> Bates Nos. 10997-10999. Document drafted by Mary Berman, attorney, Passthroughs and Special Industries, Branch 1, titled "Attachment to Chief Counsel Meeting Request Form," addressing the appropriate treatment of short sales of securities by partnerships. The portions of this document for which the Service asserts executive privilege consist of: the second sentence of the first full paragraph on page one (Bates No. 10997) since this sentence contains the recommended holding of a proposed revenue ruling on short sales of securities, the paragraph beginning on the bottom on page one (Bates No. 10997) and continuing on the first four lines of page two (Bates No. 10998) since this information contains the author's recommendations concerning the definition of liability and the expansion of a project with respect to liability, and the final paragraph on page three (Bates No. 10999) since these paragraphs contain opinions concerning the use of section 705(b) to reach short sales.[4]

Stevens Decl. at 53, Def.'s Opp'n to Pl.'s Supp. Motion to Compel (Feb.11, 2005) at 53.

**Discussion**

The executive privilege denotes at least three broad categories of privilege. First, the state secrets doctrine or privilege is an evidentiary privilege protecting military and state secrets, so as not to compel the dissemination of sensitive or classified information. Reynolds v. United States, 345 U.S. 1, 7-8 (1953); Marriott, 61 Fed. Cl. 411, 416 (2004). Second, the presidential privilege protects conversations and communications between the President and senior advisors. See Cheney v. United States Dist. Ct. for the Dist. of Columbia, 542 U.S 367 (2004); United States v. Nixon, 418 U.S. 683 (1974); Marriott, 61 Fed. Cl. at 416. This case involves a third category of executive privilege -- the deliberative process privilege, covering intra-governmental pre-decisional documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions are formulated. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975).

The deliberative category of the executive privilege was first articulated and adopted by the Court of Claims in Kaiser Aluminum & Chem. Corp. v. United States, 157 F. Supp. 939 (Ct. Cl. 1958).[5] The Kaiser Court characterized this privilege as an "evidentiary privilege" and recognized

---

[4] If Defendant has not yet provided a redacted version of this document to Plaintiffs in this action, it shall do so forthwith.

[5] See, CACI v. Field Servs., Inc. v. U.S., 12 Cl. Ct. 680, 687 n.7 (1987) ("[A]ccording to commentators, the creation of the executive deliberation privilege can be traced to Kaiser.") (citing Development in the Law of Privileged Communications, 98 HARV. L. REV. 1592, 1620 (1985); Note, "Discovery of Government Documents and the Official Information Privilege," 76 COLUM. L. REV.

that "[t]he power must lie in courts to determine executive privilege in litigation." Id. This privilege subsequently has been widely recognized in Federal courts. CACI, 12 Cl. Ct. at 686 (citing Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 324 (D.D.C. 1966), aff'd, 384 F.2d 979, cert. denied, 389 U.S. 952 (1967)).

For a document to fall within the deliberative category of the executive privilege, it must be both pre-decisional and deliberative. Vons Cos. v. United States, 51 Fed. Cl. 1, 22 (2001). To qualify as pre-decisional, the information must address matters "antecedent to the adoption of agency policy." Walsky Constr. Co. v. United States, 20 Cl. Ct. 317, 320 (1990) (quoting Jordan v. Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978). Additionally, to be deliberative, a document must reflect 'the give-and-take of the consultative process,' rather than constituting a 'body of secret law.' Vons, 51 Fed. Cl. at 22 (quoting Coastal States Gas Corp. v. Dep't of Energy, 67 F.2d 854, 866-67 (D.C. Cir. 1980)). The executive privilege is a qualified one, and can be overcome upon a showing of evidentiary need weighted against the harm that may result from disclosure. Kaiser, 157 F. Supp. at 946; CACI at 68, (citing Smith v. FTC, 403 F. Supp. 1000, 1015-16 (D. Del. 1975)); FTC v. Bramman, 54 F.R.D. 364, 366-367 (W.D. Mo. 1972).

At the outset, the Court concludes that the description of documents in the seven declarations is accurate and complete.[6] Also, after in camera review, the Court finds that all of the documents or portions thereof for which the privilege has been claimed contain pre-decisional opinions, recommendations or advice offered in the course of the IRS' decisionmaking process and are therefore properly withheld under the deliberative process privilege.[7] Specifically, the first set of documents reflect predecisional give-and-take among government employees' including their opinions, questions, answers and debate on what should be included in the final version of a proposed regulation -- quintessential examples of communications protected by the deliberative process privilege. Similarly, the second document, drafted by an IRS attorney, contains a recommended holding of a proposed revenue ruling on short sales of securities, as well as recommendations concerning the definition of liability, the expansion of a project with respect to liability and opinions concerning the use of Section 705(b) to reach short sales. Such predecisional deliberations about the scope of a statutory definition and a recommended governmental decision

---

142, 156 (1976)).

[6] Nothing in this opinion alters the Court's earlier conclusion that the deliberative process privilege must be raised by the head of the agency. See Jade Trading v. United States, 65 Fed. Cl. 487 (2005).

[7] The Court issued a Notice to the Parties indicating that it had completed its review of the in camera documents submitted on May 26, 2005, but had questions relating to four of the documents reviewed. On June 6, 2005, Defendant provided its response to the Notice to Parties, answering the Court's questions about the author of certain documents and amplifying its explanation regarding why portions of certain documents were properly subject to the deliberative process privilege.

are protected under the deliberative process privilege. See CACI, 12 Cl. Ct. at 686 (stating that the privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated" (quoting Carl Zeiss, Stiftung v. V.E.B. Carl Zeiss, Jena, 40 F.R.D. 318, 324 (D.D.C. 1966), aff'd, 384 F.2d 979, cert. denied, 389 U.S. 952 (1967)).

This does not end the inquiry. Rather the Court must assess whether the need for disclosure here outweighs the harm that would result from opening up the Government's deliberative and pre-decisional files to inspection. See In re Grand Jury Subpoena dated August 9, 2000, 218 F. Supp. 2d 544, 553 (S.D.N.Y. 2002) ("The deliberative process privilege is qualified; it may be overcome by a showing of need, which is determined on a case by case basis."). In support of their need for these internal documents relating to Treas. Reg. 1.701-2, Plaintiffs' aver:

> [t]he treasury regulation is Defendant's primary weapon to deny Plaintiffs' tax return position. It is cited in four of the five substantive contentions in Defendant's [Notice of Final Partnership Administrative Adjustment] and it is the primary authority contained in Defendant's Preliminary Statement of Contentions. As a result, it is the primary basis for imposing over $4 million in penalties against the Ervins. Only through the underlying documents can Plaintiffs . . . prove their claim . . . that the regulation is unconstitutionally vague and subject to multiple interpretations.

Pl.s' Reply to Def.'s Invalid Assertion of Executive Privilege at 1. In support of their need for the internal documents relating to the definition of liabilities, Plaintiffs' assert:

> Plaintiffs are only trying to discover Defendant's ever-changing position with respect to the definition of contingent liabilities -- a position that seems to change when it benefits the Government.

Pl.s' Reply to Def.'s Opp. to Pl.s' Mot. to Compel Pl.s' Second Set of Requests for Production of Documents at 9.

Despite Plaintiffs' stated goals in this litigation, disclosure of the deliberative documents is not warranted here. In weighing a litigant's need for discovery against the government's interest in protecting its predecisional internal deliberations, the Court "must consider 'the interests of the litigants, society's interest in the accuracy and integrity of fact finding, and the public's interest in honest, effective government.'" In re Grand Jury Subpoena, 218 F. Supp. 2d at 553 (internal citations omitted); In re Sealed Case, 121 F.3d 729, 737-38 (D.C. Cir. 1997) ("This need determination is to be made flexibly on a case-by-case, ad hoc basis. 'Each time [the deliberative process privilege] is asserted the district court must undertake a fresh balancing of the competing interests,' taking into account factors such as 'the relevance of the evidence,' 'the availability of other evidence,' 'the seriousness of the litigation,' 'the role of the government,' and the 'possibility of future timidity by

government employees.'" (internal citations omitted)). In the instant case, production of the deliberative documents will not advance the accuracy and integrity of fact finding. Rather, the documents address solely internal governmental debate on matters of law -- the scope and content of a regulation and the interpretation of a legal term. Both the validity of the regulation and the interpretation of the term "liabilities" can be adjudicated by the court without resort to the Government's predecisional debate and opinion.

## Conclusion

For the foregoing reasons, the documents reviewed in camera and withheld by the Government are protected by the deliberative process privilege. Plaintiffs' motions to compel, to the extent still viable under the parties' stipulation of May 25, 2005, are **DENIED**.

The documents submitted for in camera review will be preserved as part of the record for purposes of any appeal in this case.

Mary Ellen Coster Williams

**MARY ELLEN COSTER WILLIAMS**
**Judge**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | |
|---|---|
| Klamath Strategic Investment Fund, LLC<br>by and through St. Croix Ventures, LLC<br>(Managing Member),<br><br>Petitioner/Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Respondent/Defendant. | Civil Action No. 5:04-cv-00278-TJW<br>(lead case) |
| Kinabalu Strategic Investment Fund, LLC<br>by and through Rogue Ventures, LLC<br>(Managing Member),<br><br>Petitioner/Plaintiff,<br><br>v.<br><br>United States of America,<br><br>Respondent/Defendant. | Civil Action No. 5:04-cv-00279-TJW<br>(member case) |

**PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF DOCUMENTS AND MEMORANDUM IN SUPPORT**

Defendant, United States of America, in its production in response to Plaintiff's First Request for Production of Documents, has withheld over 750 documents and redacted over 390 documents under the executive privilege[1], withheld or redacted over 85 additional documents based on other claims of privilege,[2] and provided privilege logs which lack the necessary

[1] Throughout defendant's privilege logs, defendant refers to "govt./executive/deliberative process privilege," "govt./executive/deliberative privilege," and "govt./executive/deliberative process." For purposes of this motion, plaintiffs will collectively refer to such privileges as the "executive privilege."

[2] In this Motion, Plaintiffs are not contesting the claim of privilege on these documents, and have limited this Motion to contesting claims of executive privilege.

PENGAD-Bayonne, N. J.
EXHIBIT
2

information to assess the validity of the defendant's claims of privilege. Furthermore, defendant has withheld many more documents – perhaps thousands – from plaintiffs in responding to this Court's Amended Discovery Order. Pursuant to Rules 34 and 37(a) of the Federal Rules of Civil Procedure ("FRCP"), Klamath Strategic Investment Fund, LLC ("Klamath") by and through St. Croix Ventures, LLC, managing member of Klamath, and Kinabalu Strategic Investment Fund, LLC ("Kinabalu") by and through Rogue Ventures, LLC, managing member of Kinabalu, move this Court to take the following two actions:

1. To compel defendant to produce the large number of responsive documents that defendant has withheld from disclosure under the executive privilege in response to Plaintiffs' First Request for Production of Documents and this Court's September 9, 2005 Amended Discovery Order and

2. To compel defendant to produce unredacted versions of the responsive documents provided, but redacted, in part, by defendant under the executive privilege in response to Plaintiffs' First Request for Production of Documents and this Court's September 9, 2005 Amended Discovery Order.

Defendant's response to Plaintiffs' Document Request and this Court's Discovery Order shows that defendant has abused the discovery process and prefers that the Court not be given a full record in this case.

Counsel for plaintiffs have conferred with counsel for defendant in a good faith attempt to resolve this dispute. However, the parties have been unable to reach a resolution.

As grounds for this Motion, plaintiffs show the Court:

## I. <u>BACKGROUND.</u>

### *A. September 9, 2005 Discovery Order.*

On October 28, 2005, defendant produced 27 binders of documents pursuant to the September 9, 2005 Amended Discovery Order (the "Discovery Order"), which required the parties to exchange all relevant documents by October 31, 2005. In the spirit of cooperation, plaintiffs agreed to allow the defendant until November 18, 2005 to produce certain additional

documents responsive to the Discovery Order, which were produced at that time, with one exception. On November 10, 2005, defendant filed a motion requesting until January 6, 2006 to produce 550 boxes of documentation responsive to the Discovery Order (the so called, "pattern evidence"). The Court granted the motion. Plaintiffs later agreed to allow defendant until March 31, 2006 to complete a rolling production of the pattern evidence.

On March 31, 2006, defendant filed a motion to further extend the time to produce the pattern evidence until May 1, 2006, which this Court denied. On April 17, 2006, per this Court's order dated April 12, 2006, defendant produced additional documents in response to the Discovery Order.

It is unclear how many documents defendant withheld as privileged in response to the Discovery Order, as defendant's privilege log does not provide such detail. Instead, defendant's privilege log claims many blanket assertions of privilege to what it refers to as "various" documents. A copy of defendant's privilege log for the documents produced on or before November 18, 2005 is attached as Exhibit A. On July 3, 2006, additional privilege logs were sent via Federal Express to plaintiffs' counsel regarding pattern evidence. However, these privilege logs are wholly insufficient to determine whether any or all of the privilege logs relate to the documents produced on or before November 18, 2005. A copy of defendant's July 3, 2006 privilege logs is attached as Exhibit B. Thus, plaintiffs have no way of knowing which or how many of these documents have been withheld under a claim of executive privilege.

***B. Plaintiffs' First Requests for Production of Documents.***

On November 2, 2005, plaintiffs filed Plaintiffs' First Request for Production of Documents ("Plaintiffs' Document Request"). In Plaintiffs' Document Request, plaintiffs requested information regarding eight categories of documents related to: (1) transactions that are the same as or substantially similar to transactions described in IRS Notice 2000-44, (2) Chief

Counsel Notice CC-2003-020 (June 27, 2003), (3) Chief Counsel Notice CC-2003-03 (September 10, 2003), (4) Treasury Regulation Section 1.752-6, (5) Treasury Regulation Section 1.752-7, (6) Treasury Regulation Section 1.358-7, (7) all Documents citing or discussing *Helmer v. Commissioner*, 34 T.C.M. (CCH) 727 (1975) in the context of Section 752 the Internal Revenue Code of 1986, as amended (the "Code")[3], including in particular any such Documents created by IRS employee Richard Stark, and (8) Treasury Regulation Section 1.701-2. Plaintiffs' First Document Request is attached as Exhibit C. On December 5, 2005, defendant responded to Plaintiffs' Document Request. On December 13, 2005, defendant produced supplemental documents in response to Plaintiffs' Document Request.

In response to Plaintiffs' Document Request, defendant produced approximately one-third of the documents that it determined were responsive, providing only 395 documents totaling approximately 3,840 pages in which a large percentage of the material was redacted. A sample of the redacted documents is attached as Exhibit D. Defendant withheld under the executive privilege approximately 750 documents consisting of approximately 9,100 pages. Defendant also withheld or redacted approximately 89 documents on various other privilege claims.

***C. The Privilege Logs.***

On January 6, 2006, defendant provided 27 privilege logs. The first 26 privilege logs corresponded to Plaintiffs' Document Request and the final privilege log corresponded to documents relevant to pleaded claims and defenses in accordance with the Discovery Order. A copy of defendant's January 6, 2006 privilege logs is attached as Exhibit E.

---

[3] Unless otherwise stated, all references to "section" in this brief are to sections of the Internal Revenue Code of 1986.

## II. <u>MEMORANDUM IN SUPPORT OF MOTION.</u>

### *A. This Court Should Compel Defendant to Produce the Large Number of Responsive Documents that Defendant Has Withheld from Disclosure or Provided in Redacted Form Under the Executive Privilege.*

The term "executive privilege" refers to a group of judicially created privileges that are available to the Executive Branch to withhold otherwise discoverable information in a judicial proceeding.[4] The deliberative process privilege is a subset of the executive privilege that protects documents "reflecting advisory opinions, recommendations and deliberations compromising part of a process by which governmental decisions and policies are formulated." *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (citation omitted). The deliberative process privilege is not conclusive, as it may be overcome upon a showing that the need for the evidence overrides the government's interest in non-disclosure. *Exxon Corp. v. Department of Energy*, 91 F.R.D. 26, 43 (N.D. Tex. 1981).

The deliberative process privilege requires a three-step review process. First, the court must determine whether the requirements to properly invoke the executive privilege were met. Second, if the requirements were met, then the court must determine if the communications are in fact privileged, with the burden on government to show privilege. Finally, the court must balance the parties' interest, with the burden on the party-seeking discovery to show that its need for the documents outweighs the government's interests. *See Scott Paper Co. v. United States*, 943 F. Supp. 489, 496 (E.D. Pa. 1996).

#### 1. Defendant Has Failed to Satisfy the Fundamental Prerequisites for Invoking the Executive Privilege.

To protect against abuse of the executive privilege, an agency must follow established procedural safeguards, including (1) the head of the agency claiming the privilege must

[4] Plaintiffs direct the Court's attention to Gerald Wetlaufer, *Justifying Secrecy: An Objection to the General*

personally review the material and invoke the executive privilege; (2) the head of the agency claiming the privilege must specifically designate and describe the documents claimed to be privileged; and (3) the agency claiming the privilege must provide precise and certain reasons for preserving the confidentiality of the communications. *Scott Paper Co.*, 943 F. Supp. at 497.

Failure to meet any one of these requirements will overcome the executive privilege, and the information for which the privilege was sought must be disclosed. *Exxon Corp.*, 91 F.R.D. at 44.

**a. Defendant Did Not Submit an Affidavit or Declaration From the Commissioner of the Internal Revenue Service Providing that He Personally Reviewed the Material and Is Invoking the Executive Privilege.**

The deliberative process privilege can only be invoked by the head of the agency, which has control over the matter, after personal review of the documents involved and a determination that disclosure would have a significant negative impact on the agency's fundamental functions. *See Campbell v. Eastland*, 307 F.2d 478, 486 (5th Cir. 1962) ("There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." (quoting *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953))); *Exxon Corp.*, 91 F.R.D. at 43[5] ("Only the agency head may assert the privilege after that officer's personal consideration of the matter."). *But see Branch v. Phillips Petroleum Co.*, 638 F.2d 873 (5th Cir. 1981) (holding that in the case of *a third party subpoena* to a government agency, the director of the agency's Houston district office and custodian of the records subpoenaed could properly invoke the executive privilege after consulting with the General Counsel). Further, the affidavit or declaration from the head of the agency must be submitted to

---

*Deliberative Process Privilege*, 65 IND. L.J. 845 (1990) for the background and scope of the executive privilege.

[5] In *Exxon Corp.*, the court did comment that the agency head could rely on subordinates to examine each document before deciding whether the privilege should be invoked. *Exxon Corp.*, 91 F.R.D. at 43 - 44.

the opposing party at the time the government responds to the discovery request. *Miller v. Pancucci*, 141 F.R.D. 292, 300 (C.D. Cal. 1992).

The agency head requirement is essential to ensure that the executive privilege is invoked only when absolutely necessary, in situations where the government's need for secrecy outweighs the public's interest in full disclosure of all relevant facts. *Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367, 389 (2004) ("Executive privilege is an extraordinary assertion of power 'not to be lightly invoked.'") (quoting *United States v. Reynolds*, 345 U.S. at 7); *Exxon Corp.*, 91 F.R.D. at 43 (the deliberative process is "to be applied as narrowly as possible, consistent with efficient administrative operations"); *Campbell*, 307 F.2d at 486 (the executive privilege "may not be invoked lightly").

For three main reasons, the executive privilege should only be used when absolutely necessary. First, the privilege interferes with the effectiveness of the judicial function, as it protects an agency's documents at the expense of withholding evidence from the trier of fact. Second, if the government is allowed to assert the executive privilege with respect to thousands of responsive documents, the privilege is no longer being used to protect vital agency interests, but rather as a litigation tool. This expansive use of the privilege makes the public suspicious of the government and detracts from the public interest in the search for the judicial truth. Finally, the executive privilege places tension between the Executive and the Judicial Branches of the government, which must be avoided whenever possible. *Cheney*, 542 U.S. at 389-90. The Supreme Court explained this inevitable tension stating that:

> Once executive privilege is asserted, coequal branches of the Government are set on a collision course. The Judiciary is forced into the difficult task of balancing the need for information in a judicial proceeding and the Executive's Article II prerogatives. This inquiry places courts in the awkward position of evaluating the Executive's claims of confidentiality and autonomy, and pushes to the fore difficult questions of powers and checks and balances. These "occasion[s] for constitutional confrontation between the two branches" should be avoided whenever possible.

*Id.* (citation omitted). Thus, the formal invocation of the privilege by the head of the agency is a vital safeguard that assures the court, the public, and the private litigant that the responsible agency head has correctly balanced the agency's alleged need for confidentiality against the public interest in full disclosure of relevant facts.

Defendant has provided no affidavit or other statement by the Commissioner of the Internal Revenue Service (the "Service") demonstrating that the Commissioner has reviewed the question of executive privilege and believes that disclosure of the materials sought would genuinely threaten the public interest or efficiency of agency operations. In fact, on June 19, 2005, defendant sent two declarations by Margo L. Stevens in two unrelated cases, which relates to some of the documents defendant withheld under the executive privilege (the "Declarations"). Defendant has not produced any affidavit for other documents upon which it has claimed privilege. The Declarations demonstrate that the Commissioner did not review any of the documents being withheld under the executive privilege. Accordingly, defendant did not meet this requirement.

**b. Defendant Did Not State With Particularity What Information Is Subject to Privilege.**

Both case law and the Federal Rules of Civil Procedure set forth the requirement that the documents an agency is seeking to shield under a claim of privilege must be identified and described with particularity. *Scott Paper Co.*, 943 F. Supp. at 497 (stating that the party seeking protection must provide "a specific designation and description of the documents claimed to be privilege . . . "); FED. R. CIV. P. 26 (b)(5)(stating that "[w]hen a party withholds information otherwise discoverable under these rules by claiming that it is privileged . . . the party shall make the claim expressly and shall describe the nature of the documents . . . not produced . . . in a manner that, without revealing information itself privileged or protected, will enable other parties

Case 1:01-cv-02786-CFL Document 76-12 Filed 09/29/2006 Page 17 of 28

to assess the applicability of the privilege . . . .").

Defendant's privilege logs did not identify specific details of the exact information that was privileged, as it sometimes described documents simply as a "draft," "briefing notes," or "e-mail chain discussing revisions to language of the draft regulations." In some instances, defendant simply referred to a broad category of documents, without describing any of the documents within that category. Although, defendant did provide the Declarations, the Declarations do not cover all the documents to which the executive privilege was claimed nor does it completely correspond to the privilege logs provided by Defendant. Additionally, defendant does not always provide the date that the document was created. Defendant claims this is because the date is not available. Usually this would be acceptable; however, in order to determine if a document meets the requirements of the executive privilege one must have the date to determine if the document is predecisional. These descriptions are not sufficient for plaintiffs to assess the validity of the privilege. Nor is the description ample to allow a court to determine whether the documents are of a predecisional, advisory nature, and whether the documents contain analytical as opposed to severable factual information. Accordingly, defendant did not meet this requirement as it did not designate with particularity those materials alleged to be privileged.

**c. <u>Defendant Does Not Set Forth the "Precise and Certain Reasons" For Withholding the Documents In Question</u>.**

The agency claiming the privilege must provide "precise and certain reasons" for preserving the confidentiality of the communications. *Scott Paper Co.*, 943 F. Supp. at 497. Defendant's privilege logs do not explain why disclosure of each particular document would be detrimental to the Service's decision-making process. Nor has defendant articulated in any manner the precise reasons why the public interest would be adversely affected by disclosure. The harm to an agency's decision-making process cannot be simply presumed. *Judicial Watch,*

Case 1:01-cv-02786-DWT Document 96-1 Filed 07/29/2006 Page 18 of 28

*Inc. v. United States Postal Serv.*, 297 F. Supp. 2d 252, 259 (D.D.C. 2004). A broad claim of harm is insufficient to overcome the burden placed on the party seeking to shield material from disclosure. *Exxon Corp.*, 91 F.R.D. at 43 ("Because the outcome is dependent upon the individual document considered and the role it plays in the administrative process, any blanket assertion of privilege must summarily be rejected."); *Revelle v. Trigg*, 1999 WL 80283, at *2 (E.D. Pa. Feb. 2, 1999) ("A broad assertion of harm is [therefore] clearly not enough. In fact, the Third Circuit has held that an 'indiscriminate claim of privilege may in itself be sufficient reason to deny it.'"(quoting, in part, *United States v. O'Neill*, 619 F.2d, 222, 227 (3d Cir. 1980))). The Supreme Court has even rejected the privilege when the President of the United States has asserted it "solely on the broad, undifferentiated claim of public interest in the confidentiality of . . . conversations" and has refused to extend deference to a President's "generalized interest in confidentiality." *United States v. Nixon*, 418 U.S. 683, 706 (1974). Thus, this requirement was not met, as no such particularized, specific harm was identified by defendant as to any of the individually withheld documents.

**2. Defendant Has Not Established that the Documents Are In Fact Privileged.**

In addition to its failure to properly invoke the executive privilege, defendant also has not established that such documents should in fact be subject to that privilege. The deliberative process privilege protects evidence from disclosure if it is both predecisional and deliberative. *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1113 (D.C. Cir. 2004) (citations omitted) (stating that the privilege protects predecisional materials "reflecting deliberative or policy-making processes," but not materials that are "purely factual"). A document is predecisional if the communication is "antecedent to the adoption of [an] agency policy." *Jade Trading, LLC v. United States*, 65 Fed. Cl. 487 (2005). A document is deliberative if it reflects "the give-and-take of the consultative process," rather than constituting a "body of secret law." *Coastal States*

Case 1:01-cv-00250-CFL Document 70-1 Filed 09/28/2006 Page 19 of 28

*Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866-867 (D.C. Cir. 1980). "The mere fact that an agency uses a document during policy discussion does not trigger the privilege." *Walsky Constr. Co. v. United States*, 20 Cl. Ct. 317, 321(1990) (citation omitted). Based on the limited description of the documents and the fact that defendant did not identify a particularized, specific harm as to any of the individually withheld documents, plaintiffs cannot determine with certainty if the documents are privileged.

Furthermore, only discussions between higher-level officials qualify as policy deliberations, because agency policies are usually established by or at the direction of senior-level officials. Wetlaufer, 65 IND. L.J. at 901-905. Accordingly, discussions between lower-level agency personnel do not and cannot properly constitute policy deliberations within the meaning of the executive privilege. Based on defendant's privilege logs, it is evident that lower-level agency personnel created a large number of the documents. Based on the foregoing, these documents cannot be privileged and must be produced.

### 3. Plaintiffs Have a Compelling Need, Which Outweighs Any Harm that Might Result From the Disclosure.[6]

The deliberative process privilege is a qualified privilege, which can be overcome by a sufficient showing of need by the party-seeking discovery. *Exxon Corp.*, 91 F.R.D. at 43. The court must balance the need of the evidence against the harm that may result from the disclosure. *Bank of America v. United States*, 1978 WL 4492, at *3 (N.D. Cal. May 24, 1978) ("[T]he need to protect the decision-making process of the agency may be overridden by the policy favoring broad discovery, together with the particularized need of the plaintiff in this case for the production of documents relevant and necessary to the search for truth."). In balancing the plaintiffs' need against any harm that may result, the Court should consider five factors: (1) the

---

[6] The Court does not need to determine whether the plaintiffs' needs outweighs any harm that might result from

Case 1:01-cv-00250-CFL Document 76-2 Filed 09/29/2006 Page 20 of 28

relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by a government employee. *Scott Paper Co.*, 943 F. Supp. at 496.

a. **The Documents that Defendant Is Withholding Under the Executive Privilege Are Relevant.**

The principal issues in this case are whether the adjustments made by the IRS in its FPAAs were appropriate and, if so, whether the application of an accuracy-related penalty is warranted. The major issue raised in the FPAAs on the merits is whether the loan premiums that St. Croix Ventures, LLC and Rogue Ventures, LLC received from a bank in connection with the funding of their investments in Klamath and Kinabalu, respectively, are to be treated as "liabilities" for purposes of calculating the partners' bases in the partnerships under Section 752. The FPAAs assert that, under Section 752 and Treasury Regulation Section 1.752-6, the amount of the premiums should be treated as liabilities. In the FPAAs, the Commissioner invoked Treasury Regulation Section 1.701-2 as the principal basis for ignoring the mandate of Section 752 that a contingent obligation is not to be treated as a liability for purposes of the partnership provisions of the Code. The requested documents are critical to this case for two reasons. First, plaintiffs have targeted their request at documents which reflect defendant's own prior understanding of what constitutes a liability, and under what circumstances it can rely on Treasury Regulation Section 1.701-2 to upset compliance with the Code. Second, defendant has asserted millions of dollars of penalties in this case on the claim that plaintiffs did not have substantial authority or reasonable cause and good faith for the tax positions at issue. Plaintiffs have requested documents that they believe will show that defendant understood plaintiff's legal

disclosure, as the three procedural requirements above were not met.

positions to have merit, which in fact caused defendant to promulgate Treasury Regulation Section 1.752-6 and give it retroactive effect, which was expressly designed to undermine plaintiff's tax positions. Documents that reflect the government's understanding of the rules and realization of a need to retroactively change them after the transaction at issue took place are highly probative of whether any penalty should be applied in this case.

**b. The Information Is Not Available From Any Other Source.**

The documents plaintiffs seek are the only way to obtain information critical to responding to the various issues raised by defendant. Access to these documents is the only means available to permit plaintiffs to adequately respond to defendant's assertions in the FPAAs. Plaintiffs, therefore, should be permitted to obtain the documents for which defendant asserts the deliberative process privilege. *Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena*, 40 F.R.D. 318, 328 (D.D.C. 1966) ("Necessity for production is sharply reduced where an available alternative for obtaining the desired evidence has not been explored.").

**c. The Litigation Is Serious as It Involves Millions of Dollar In Taxes, Interest, and Penalties.**

The government should not be able to hide relevant information to plaintiffs' defenses behind the executive privilege. *In re Franklin Nat. Bank Sec. Litig.*, 478 F. Supp. 577, 586 (D.C.N.Y. 1979) ("[A]n element of unfairness would enter if the government could further its defense against these claims by concealing relevant evidence behind the screen of government privilege."). Plaintiffs have millions of dollars at stake in this litigation. As a matter of fundamental fairness, defendant should not be allowed to shield thousands of pages of relevant information behind a poorly articulated and groundless claim of executive privilege.

**d. <u>The Government's Role In the Dispute Is as a Party to the Litigation</u>.**

When an agency is a litigant, its apparent self-interest in the proceeding should give courts significant hesitation when the agency invokes executive privilege to withhold relevant evidence, particularly when that evidence comprises thousands of pages, as it does here.

**e. <u>The Future Timidity of the Officials Is Unclear</u>.**

The Court must weigh the perceived damages of disclosure to the deliberative process against the impairment of withholding information to the just resolution of the dispute. *In re Franklin Nat. Bank Sec. Litig.*, 478 F. Supp. at 586 ("Even where the government's case for shielding its documents is more persuasive, the interests of the litigants and the public in disclosure are much more compelling. Accurate judicial factfinding is predominant."). Defendant has not articulated any specific or significant harm that would result from disclosure of the particular documents sought here. Nor is there proof that agency employees will be inhibited from expressing their views in fear that the public might some day be privy to such. *Nixon*, 418 U.S. at 712 ("[W]e cannot conclude that advisers will be moved to temper the candor of their remarks by the infrequent occasions of disclosure because of the possibility that such conversations will be called for in the context of a criminal prosecution").

Thus, all factors weigh in favor of compelling the production of the relevant documents. Accordingly, defendant should be compelled to produce the documents at issue, as plaintiffs' need outweighs any potential harm that might result from disclosure. *See First Heights Bank v. United States*, 46 Fed. Cl. 312, 322-25 (2000) (holding that First Height Bank's need for the documents overcame the government's assertion of the deliberative process privilege, as (1) the documents may shed significant light on First Heights Bank's knowledge regarding the deductibility of covered asset losses, which is important for First Heights Bank's response to the government's "assumption of risk" defense, (2) there was no other way for First Heights Bank to

obtain the documents, and (3) the government did not articulate any particular harm that would result from the particular documents being sought).

## III. PRAYER FOR RELIEF.

WHEREFORE, for the reasons stated herein, plaintiffs respectfully request that their Motion to Compel the Production of Documents be granted.

Respectfully submitted.

/s/ N. Jerold Cohen
N. Jerold Cohen (Lead Attorney)
GA Bar No. 174700
Kent L. Jones (of counsel)
D.C. Bar No. 929075
Sheldon M. Kay (of counsel)
GA Bar No. 409341
Thomas A. Cullinan (of counsel)
GA Bar No. 738420
Kristin Balding Gutting (of counsel)
GA Bar No. 141423

Dated: July 7, 2006

Sutherland Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 853-8000
(404) 853-8806 (fax)

Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

IT IS HEREBY CERTIFIED that service of the foregoing **Plaintiffs' Motion to Compel the Production of Documents and Memorandum in Support** has been made on July 7, 2006, by mailing a copy thereof to:

Andrew L. Sobotka
Department of Justice
Tax Division
717 N. Harwood, Suite 400
Dallas, Texas 75201

/s/ N. Jerold Cohen

N. Jerold Cohen (Lead Attorney)
GA Bar No. 174700
Kent L. Jones (of counsel)
D.C. Bar No. 929075
Sheldon M. Kay (of counsel)
GA Bar No. 409341
Thomas A. Cullinan (of counsel)
GA Bar No. 738420
Kristin Balding Gutting (of counsel)
GA Bar No. 141423

Sutherland Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 853-8000
(404) 853-8806 (fax)

Attorneys for Plaintiffs

**CERTIFICATE OF CONFERENCE**

It is hereby certified that counsel for plaintiffs has conferred with counsel for defendant in a good faith attempt to resolve the matter at issue in Plaintiffs' Motion to Compel the Production of Documents and Memorandum in Support without court intervention. Counsel for plaintiffs tried to resolve this matter with counsel for defendants since May 8, 2006. Counsel for defendant opposes the motion.

/s/ N. Jerold Cohen

N. Jerold Cohen (Lead Attorney)
GA Bar No. 174700
Kent L. Jones (of counsel)
D.C. Bar No. 929075
Sheldon M. Kay (of counsel)
GA Bar No. 409341
Thomas A. Cullinan (of counsel)
GA Bar No. 738420
Kristin Balding Gutting (of counsel)
GA Bar No. 141423

Sutherland Asbill & Brennan LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 853-8000
(404) 853-8806 (fax)

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TEXARKANA DIVISION

| | | |
|---|---|---|
| KLAMATH STRATEGIC INVESTMENT FUND, LLC | § | |
| VS. | § | CIVIL ACTION NO. 5:04-CV-278 |
| UNITED STATES OF AMERICA | § | |

**ORDER**

The court grants in part and denies in part the plaintiffs' motion to compel the production of documents (#90). The motion challenges the government's assertion of the deliberative process privilege. The deliberative process privilege protects "predecisional materials 'reflecting deliberative or policy-making processes,' but not materials that are 'purely factual.'" *Skelton v. United States Postal Service*, 687 F.2d 35, 38 (5th Cir. 1982)(*quoting EPA v. Mink*, 410 U.S. 73, 87-89 (1973)). To assess the applicability of the privilege, the court ordered an *in camera* review of the documents at issue in the motion to compel. The court has reviewed the documents tendered by the government, and the court sustains the government's claims of privilege with respect to all of the documents, including those that were redacted on those grounds. In addition, the court finds that the government has appropriately claimed the privilege. *Marriott International Resorts, L.P. v. United States*, 437 F.3d 1302 (Fed. Cir. 2006); *see also Branch v. Phillips Petroleum Co.*, 638 F.2d 873, 882-83 (5th Cir. 1981).

Other documents tendered by the government were redacted, apparently to protect certain privacy interests. The court orders these documents produced, in unredacted form, to counsel for

PENGAD-Bayonne, N. J.
EXHIBIT
3

the plaintiffs in this case. Such documents shall be marked confidential and shall be disclosed only to the attorneys representing the plaintiffs, pursuant to the terms of the court's Protective Order (See dkt. # 18). These documents include: Binder 7, documents numbered 3382, 3537, and 3549; Binder 8, document numbered 4850-4867; and Binder 9, documents numbered 7791, 7871, 7940, 7945, 7946, 7986, and 7988.

Finally, the government asserts, in conjunction with its claims of deliberative process privilege, a separate statutory privilege against the disclosure of third party return information. 26 U.S.C. § 6103. The government claims this privilege with respect to three of the documents. The plaintiffs do not appear to be challenging the government's assertion of that statutory privilege, and the court, having reviewed the documents at issue, concludes that the government's assertion is proper and declines to order the documents produced.

SIGNED this 19th day of September, 2006.

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TEXARKANA DIVISION**

| | | |
|---|---|---|
| KLAMATH STRATEGIC INVESTMENT FUND, LLC, by and through ST. CROIX VENTURES, LLC, Plaintiff, | § § § § | |
| | § | CIVIL ACTION NO. 5:04-CV-278 (TJW) |
| v. | § | (consolidated with Civil Action No. 5-04-CV- |
| | § | 279) |
| UNITED STATED OF AMERICA, Defendant. | § | |

**ORDER**

Before the Court is Plaintiffs' Motion to Compel (#90). The Court hereby orders that Defendant tender the un-redacted and withheld documents requested in Plaintiffs' Motion for *in camera* inspection by July 17, 2006.

SIGNED this 11th day of July, 2006.

T. John Ward

T. JOHN WARD
UNITED STATES DISTRICT JUDGE

PENGAD-Bayonne, N. J.
EXHIBIT
4