## Pre-September 30, 1994

MORI, in the regular course of its business, obtains $83 million of fixed-rate, mostly 10-year term mortgages from timeshare purchasers.




**Tax Consequences:**

- MORI has a tax basis in the timeshare mortgages of $83 million. (MORI has income on the sale of the timeshares financed with the mortgages, but this is ignored for purposes of this analysis.)

## April & August 1994

MORI short-sells $75 million of 5-year Treasury notes in two short sales ($65 million in April and $10 million in August 1994), receiving cash proceeds of $73 million in total. MORI invests the $73 million proceeds in 30-day repurchase agreements ("repos"), which are periodically rolled over. MORI has a short-sale obligation ("SSO") to return the borrowed Treasury notes.



**May 1994**

MII organizes JBS with a contribution of $1 million.




**Tax Consequences:**

➢ MII has a basis of $1 million for its JBS stock.

**May - October 1994**

MORI and JBS organize MIR. MORI contributes the $83 million of mortgages (in May, August and October 1994) and $73 million of repos (in May and August 1994) to MIR, which also assumes MORI's SSO. MORI has a 99% interest in MIR. JBS contributes $1 million of cash to MIR. JBS has a 1% interest in MIR.




**Tax Consequences Per Marriott:**

- MORI's and JBS's respective contributions to MIR are tax-free under I.R.C. § 721.
- MIR has a carryover basis for the mortgages of $83 million and for the repos of $73 million under I.R.C. § 723. MORI's basis for its MIR interest is $156 ($83 + $73) million under I.R.C. § 722.
- MIR's assumption of the SSO has no tax effect, because the SSO is not a "liability" under I.R.C. § 752.

## September - October 1994

MIR sells $73 million of repos for $73 million. MIR acquires Treasury notes with a face value of $75 million for $72 million. The Treasury notes are used to close the SSO. MIR has $1 million remaining from the repo proceeds.




### Tax Consequences Per Marriot:

- MIR has no gain or loss from disposition of the repos. MIR recognizes $1 million of taxable gain on the short sale (i.e., $73 million of cash proceeds – $72 million cost to close SSO).
- MORI's basis for its MIR interest is increased to $157 ($156 + $1) million under I.R.C. § 705(a)(1)(A). MII's basis for its stock in MORI is increased by $1 million under Treas. Reg. § 1.1502-32(b)(2)(i).

### Tax Consequences Per IRS:

- The Notice of Final Partnership Administrative Adjustment (FPAA) issued with respect to MIR's Partnership Return (Form 1065) for the tax year ended October 28, 1994, reduced the partners' (JBS and MORI) bases in the partnership by $75 million because the U.S. Treasury notes short sale obligation constitutes a liability under I.R.C. § 752. Thus, MORI's basis for its MIR interest of $157 million was reduced to $82 million.

**October 1994** **(Page 1 of 2)**

MORI transfers its 99% interest in MIR to MICC.



**(Page 2 of 2)**

## Tax Consequences Per Marriott:

- **Distribution and Contribution:**
  - Under Rev. Rul. 78-83, the transfer is treated as a distribution of the MIR interest by MORI to MII, followed by a contribution of the MIR interest by MII to MICC.
  - MII has a carryover basis of $157 million for its interest in MIR under former Treas. Reg. § 1.1502-14(a)(4).
  - MII's basis for its MORI stock is reduced by $157 million under Treas. Reg. § 1.1502-32(b)(2)(iv).
  - MII's contribution to MICC is an I.R.C. § 351 transaction in which MICC takes a carryover basis ($157 million) for its MIR interest under I.R.C. § 362.
  - MII's basis in the stock of MICC increases by $157 million under I.R.C. § 358(a)(1).
- **Termination and Recontribution:**
  - The distribution from MORI to MII terminates MIR under I.R.C. §§ 708 and 761(e)(1). The termination is treated as the distribution of MIR's assets to MICC and JBS and the immediate recontribution of those assets by MICC and JBS to a new MIR partnership under former Treas. Reg. § 1.708-1(b)(1)(iv).
  - The MIR assets distributed to MICC take a basis equal to MICC's basis for its MIR interest, $157 million, of which $154 million is allocated to the mortgages, under I.R.C. § 732(b).
  - The MIR assets that MICC contributes to the new MIR have a carryover basis of $157 million under I.R.C. § 723.
  - The MIR assets distributed to JBS take a basis equal to JBS's basis for its MIR interest, $1 million, which is allocated to the mortgages JBS contributed to the new MIR, under I.R.C. § 732(b).
  - The new MIR's basis for the mortgages is $155 ($154 + $1) million under I.R.C. § 723.

**November 1994** **(Page 1 of 2)**

The new MIR sells a partial interest in the timeshare mortgages to TIAA for $82 million, which is distributed by the new MIR to MICC and by MICC to MII. $151 million of the mortgages' basis is allocated to the interest sold to TIAA.



## Tax Consequences Per Marriott:

- The amount realized by the new MIR from the sale is $82 million. The basis of the sold interest is $151 million. The new MIR recognizes a loss of $69 ($82 – $151) million, which is included in the MII consolidated return.
- The loss reduces MICC's basis in the new MIR by $69 million under I.R.C. § 705(a)(2)(A), and the distribution reduces MICC's basis in the new MIR by $82 million under I.R.C. § 733(1), a total of $151 million.
- The loss and distribution also reduce MII's basis for its stock in MICC by $69 million and $82 million, respectively, a total of $151 million.

## Tax Consequences Per IRS:

- The FPAA issued with respect to the new MIR's Partnership Return (Form 1065) for the tax year ended December 30, 1994, adjusted the amount reported on the sale of the timeshare mortgages. The new MIR claimed a loss of $69 million on the sale. Based on the basis reduction of $75 million applied to the old MIR's October 28, 1994, return, the IRS determined that there was actually a gain of $2 million on the sale of the mortgages by the new MIR and accordingly increased its gross income by $72 million.