**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**Nos. 01-256 T and 01-257 T**
**(Judge Charles F. Lettow)**

**MARRIOTT INTERNATIONAL RESORTS, et. al.,**

**Plaintiff**

**v.**

**THE UNITED STATES,**

**Defendant**

NOTICE OF RECENT DECISION

Defendant hereby notifies the Court of a recent decision which is relevant to the proceedings in this action. The decision (copy attached hereto) in Colm Producer, Inc. v. United States, 03-CV-3042 (N.D. Tex. Oct. 16, 2006), involves a short sale of U.S. Treasury Notes and the definition of liability within the meaning of § 752.

Respectfully submitted,

October 17, 2006

s/G. Robson Stewart
G. ROBSON STEWART
U.S. Department of Justice - Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Station
Washington, DC 20044
tel: (202) 307-6493
fax: (202) 514-9440

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
STEVEN I. FRAHM
Assistant Chief

October 17, 2006

s/Steven I. Frahm
Of Counsel

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| COLM PRODUCER, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:03-CV-3042-N |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court is Plaintiff COLM Producer, Inc.'s ("COLM") Motion for Summary Judgment [29] and Defendant United States of America's ("the Government") Cross-Motion for Summary Judgment [35]. Because the Court finds that the obligation to close the short sale transaction constitutes a liability within the meaning of section 752 of the Internal Revenue Code, the Court denies COLM's motion for summary judgment and grants the Government's cross-motion for summary judgment.

## I. FACTUAL BACKGROUND

The plaintiffs in this consolidated action are COLM Producer, Inc. ("COLM"), Kornman & Associates ("K&A"), and the Ettman Family Trust ("the Trust"). They have filed this action to challenge the IRS's disallowance of a short term capital loss that arose out of a series of transactions involving the transfer of obligations resulting from a short sale of U.S. Treasury Notes.

### *A. The Short Sale Transaction*

On December 23, 1999, the Trust opened a brokerage account at Donaldson, Lufkin, & Jenrette ("DLJ") with a cash deposit of $2 million. Using the $2 million as margin, the Trust then executed a short sale of $100 million (face value) of U.S. Treasury Notes ("T-Notes") on December 27, 1999. The short sale, in which the Trust borrowed $100 million worth of property in the form of T-Notes and then sold them on the open market, generated $102.5 million in cash proceeds. The proceeds were then deposited in the brokerage account. After the short sale, the DLJ brokerage account consisted of approximately $104.5 million in cash, plus an obligation to replace the borrowed property in the form of T-Notes.

### *B. Subsequent Transfers of the Brokerage Account*

On December 27, 1999, the Trust transferred the brokerage account to Valiant Investment, LP ("Valiant") in return for a 99.9% limited partnership interest in Valiant. Then, on December 28, 1999, the Trust transferred its interest in Valiant to GMK-GMK II, L.P. ("GMK") in exchange for an interest in GMK. At this point, the Trust owned a 99.9% limited partnership interest in GMK, which in turn owned a 99.9% limited partnership interest in Valiant, which in turn owned the DLJ brokerage account, including the cash balances and the obligation to replace the borrowed T-Notes.

On December 30, 1999, GMK sold its interest in Valiant to Brian Czerwinski, a third party, for approximately $1.8 million. According to Czerwinski, the price reflected the fact that, at the time of the sale, he believed would have to use a significant portion of the brokerage account assets to purchase replacement T-Notes in fulfillment of the short sale

obligation he had just assumed. At this point, Czerwinski controlled all decisions regarding the brokerage account, including the decision on when to "close" the short sale by purchasing and delivering replacement T-Notes.

### *C. Tax Treatment of the Transactions*

Following the sale of Valiant to Czerwinski, GMK claimed a loss of approximately $102.7 million on its federal income tax return for 1999. GMK calculated this loss by subtracting the amount realized on the sale, approximately $1.8 million, from its cost basis in Valiant, which GMK believed to be approximately $104.5 million. GMK did not factor the obligation to replace the borrowed T-Notes in its cost basis calculation, nor did it include its relief from that obligation in its amount realized on the sale. GMK did not adjust its basis or amount realized by the short sale obligation because it determined that the obligation to "cover" a short sale, i.e. to replace the borrowed securities, did not constitute a "liability" within the meaning of section 752.

The IRS disallowed the loss in a Final Notice of Partnership Administrative Adjustments (FPAA) issued on September 25, 2003, maintaining that the value associated with Cerwinski's assumption of the obligation to replace the borrowed T-Notes should be treated as an amount realized on the sale of Valiant because the obligation constituted a liability under section 752. Thus, the IRS determined that the amount GMK realized on the sale of Valiant totaled approximately $104.3 million because it included both the sale price of $1.8 million plus the value of the obligation to close the short sale, which was about $102.5 million. Accordingly, the IRS allowed a loss of approximately $177,000, which it

calculated by subtracting GMK's amount realized of approximately $104.3 million from GMK's cost basis of approximately $104.5 million.

COLM, K&A, and the Trust, as either tax matters partners or notice partners of GMK and Valiant, challenged the IRS's disallowance of the $102.7 million loss and this litigation ensued.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the parties do not dispute any material facts, such that the only issues before the court are pure questions of law. *Sheline v. Dunn & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991). The principle issue in this case is whether the term "liability" within the meaning of section 752 encompasses the obligation to replace the T-Notes borrowed and sold in the short sale transaction. The meaning of the term "liability" is a pure question of law and the parties do not dispute the facts that are material to this determination; therefore, summary judgment is appropriate.

## III. "LIABILITY" UNDER SECTION 752

The Government contends that GMK significantly overstated the amount of its short-term capital loss by failing to treat its obligation to replace the T-Notes that it sold short as a liability under section 752. The Court agrees.

A plain reading of section 752 indicates that GMK should have treated the obligation to replace the borrowed T-Notes as a liability under section 752. Section 752 of the Code provides, in relevant part:

> (b) <u>Decrease in Partner's Liabilities</u>. Any decrease in a partner's share of the liabilities of a partnership, or any decrease in a partner's individual liabilities by reason of the assumption by the partnership of such liabilities, shall be considered as a distribution of money to the partner by the partnership.
>
> ****
>
> (d) <u>Sale or Exchange of an Interest</u>. In the case of a sale or exchange of an interest in a partnership, liabilities shall be treated in the same manner as liabilities in connection with the sale or exchange of property not associated with partnerships.

26 I.R.C. § 752. Although the Code fails to define "liability" for purposes of section 752, normal principles of statutory construction suggest that the term includes the obligation to replace the T-Notes borrowed for the short sale. The construction of a statute begins with its plain language. *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68 (1982). In the absence of clearly expressed Congressional intent to apply a special meaning, the Court must apply the language according to its plain and ordinary meaning. *See id.* ("As in all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed in the ordinary meaning of the words used.") (internal quotes omitted). Consistent with these principles, the Court holds that the language of section 752 indicates that Congress intended for the term "liability" to include the obligation to close the short sale by replacing the borrowed T-notes, because the ordinary meaning of the term would include such an obligation. *See* BLACK'S LAW DICTIONARY 932 (8th ed. 2004) (defining "liability" as "the quality or state of being legally obligated or accountable" or as "a financial or pecuniary obligation").

Furthermore, existing case law and an IRS Revenue Ruling explicitly state that the obligation to close a short sale by replacing the borrowed securities falls within the ambit of

Case 1:03-cv-00256-CL Document 480-2 Filed 10/16/2006 Page 6 of 8

section 752. *Salina P'ship LP v. Comm'r*, T.C. Memo. 2000-352, 2000 WL 1700928, at *12 (2000); Rev. Rule 95-26, 1995-14 I.R.B. 6. In Revenue Ruling 95-26, a partnership entered into a short sale of securities, left the cash proceeds from the sale with the broker-dealer as collateral, and then deposited additional cash with the broker-dealer as further collateral. The short sale agreement obligated the partnership to return identical securities to close out the short sale. *Id.* The Commissioner reasoned that the partnership received an asset in the cash produced from the short sale; therefore, the basis in the partnership's assets increased. *Id.* Noting that a liability for purposes of section 752 includes obligations to the extent that incurring the liability creates or increases a partner's basis in any of the partnership's assets, the IRS ruled that a short sale creates a liability under section 752 because it both increases basis in the partnership and generates an obligation to replace the borrowed securities. *Id.*

Likewise, *Salina* held that a partnership's obligation to close a short sale by replacing the borrowed securities constitutes a "liability" for purposes of section 752. 2000 WL 1700928, at *12. In *Salina*, a partnership entered into a series of transactions, including a short sale of securities, that generated a current capital gain and future offsetting losses, which the partnership reported on its income tax return. *Id.* at *3–8. The partnership calculated the gain on the transactions by not treating the obligation to replace the shorted securities as a liability under section 752. The IRS disallowed the loss and the Tax Court affirmed, citing Revenue Ruling 95-26 in support of its conclusion that the IRS properly treated the obligation to replace the borrowed securities as a section 752 liability. *Id.* at *17.

COLM asserts that the obligation to replace the borrowed T-Notes was a contingent liability when GMK sold Valiant to Czerwinski and, therefore, the value of the obligation should not be taken into account in calculating the gain or loss on the sale. COLM bases this argument on the fact that the short sale remained an "open" transaction at the time of the transfer, meaning that GMK could not determine the value of the gain or loss on the short sale transaction until it actually purchased and delivered the replacement securities.

The Court finds COLM's argument unpersuasive. Although COLM correctly states that "liability" within the meaning of section 752 does not encompass contingent obligations, COLM erroneously concludes that the obligation to replace the borrowed T-Notes constitutes a contingent obligation. The cases on which COLM relies stand for the proposition that liabilities that are contingent as to the obligation itself or as to the amount of the obligation do not qualify as "liabilities" for purposes of section 752.[1] However, the obligation to close a short sale by replacing the borrowed T-Notes is not contingent in this way. First, the existence of the obligation to replace the borrowed T-Notes was not itself contingent; the obligation existed as a legally enforceable obligation when GMK sold Valiant to Czerwinski. Second, the amount of the obligation became fixed at the moment GMK sold Valiant because

---

[1] *See La Rue v. Comm'r* 90 T.C. 465, 479 (1988) (clarifying that a fixed and definite contractual liability does not amount to a "liability" under section 752 until the cost of that obligation becomes fixed in amount); *Long v. Comm'r*, 71 T.C. 1, 7 (1978) (stating that "although [the claims at issue] may be considered 'liabilities' in the generic sense of the term, contingent or contested liabilities are not 'liabilities' for [section 752 purposes] at least until they become fixed or liquidated"); *Helmer v. Comm'r*, 34 T.C.M. (CCH) 727 (1975) (holding that partnership's receipt of option payments from a third party under an option agreement for purchase of property did not give rise to a section 752 liability because the partnership's obligation to credit the payments against the purchase price was contingent upon the third party's exercise of the option); *see also Gibson Prods. Co. v. U.S.*, 637 F.2d 1041 (5th Cir. 1981) (finding that promissory note did not constitute a liability for purposes of section 752 when the partnership's liability on the note depended upon future oil and gas production under the oil and gas lease).

at that time GMK could determine its gain or loss on the short sale transaction according to the current market rates for T-Notes; any future fluctuations in the interest rates affected the gain or loss of the short sale transaction only as to Czerwinski, not GMK.

Accordingly, the Court finds that the obligation to replace the borrowed securities constituted a liability under section 752 of the Internal Revenue Code. Because this issue is dispositive, the Court does not reach the additional arguments briefed by the parties. The Court therefore grants the Government's motion for summary judgment and denies COLM's motion for summary judgment.

Signed October 16, 2006.

David C. Godbey
United States District Judge