Appendix D

# SUBCHAPTER A—BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM

## PART 220—CREDIT BY BROKERS AND DEALERS (REGULATION T)

Sec.

220.1 Authority, purpose, and scope.
220.2 Definitions.
220.3 General provisions.
220.4 Margin account.
220.5 Margin account exceptions and special provisions.
220.6 Special memorandum account.
220.7 Arbitrage account.
220.8 Cash account.
220.9 Nonsecurities credit and employee stock ownership account.
220.10 Omnibus account.
220.11 Broker-dealer credit account.
220.12 Market functions account.
220.13 Arranging for loans by others.
220.14 Clearance of securities, options, and futures.
220.15 Borrowing by creditors.
220.16 Borrowing and lending securities.
220.17 Requirements for the list of marginable OTC stocks and the list of foreign margin stocks.
220.18 Supplement: Margin requirements.

INTERPRETATIONS

220.101 Transactions of customers who are brokers or dealers.
220.102 [Reserved]
220.103 Borrowing of securities.
220.104 [Reserved]
220.105 Ninety-day rule in special cash account.
220.106 Designation of New York Stock Exchange for purposes of specialists transactions.
220.107 Transactions in undermargined accounts.
220.108 International Bank Securities.
220.109 Arrangement for credit by brokers or dealers.
220.110 Assistance by Federal credit union to its members.
220.111 Arranging for extensions of credit to be made by a bank.
220.112 Arranging loan to purchase open-end investment company shares.
220.113 Necessity for prompt payment and delivery in special cash accounts.
220.114 Transactions in restricted accounts under amended withdrawal rules.
220.115 Short sales made prior to recent amendments, but covered subsequent thereto.
220.116 Simultaneous long and short positions in same margin account where short position is taken first.
220.117 Exception to 90-day rule in special cash account.
220.118 Time of payment for mutual fund shares purchased in a special cash account.
220.119 Applicability of margin requirements to credit extended to corporation in connection with retirement of stock.
220.120 Loan value of securities used to make required deposit.
220.121 Applicability of margin requirements to joint account between two creditors.
220.122 "Deep in the money put and call options" as extensions of credit.
220.123 Partial delayed issue contracts covering nonconvertible bonds.
220.124 Installment sale of tax-shelter programs as "arranging" for credit.
220.125 Extending, maintaining or arranging credit on mutual fund shares having portfolio of exempted securities.
220.126 Put and call options.
220.127 Independent broker/dealers arranging credit in connection with the sale of insurance premium funding programs.
220.128 Treatment of simultaneous long and short positions in the same margin account when put or call options or combinations thereof on such stock are also outstanding in the account.
220.129 Applicability of same-day substitution rule to accounts subject to section 220.8(g).
220.130 Escrow receipts for option transactions.
220.131 Application of the arranging section to broker-dealer activities under SEC Rule 144A.

AUTHORITY: Secs. 3, 7, 8, 17 and 23 of the Securities Exchange Act of 1934, as amended (15 U.S.C. 78c, 78g, 78h, 78q and 78w).

SOURCE: Regulation T, §§220.1 through 220.18 appear at 48 FR 23165, May 24, 1983, unless otherwise noted.

EDITORIAL NOTES: (1) A copy of each form referred to in this part is filed as a part of the original document. Copies are available upon request to the Board of Governors of the Federal Reserve System or any Federal Reserve Bank.

(2) See the List of CFR Sections Affected in the Finding Aids section of this volume for FR citations to part 220 OTC Margin Stocks changes.

### § 220.1 Authority, purpose, and scope.

(a) *Authority and purpose.* Regulation T (this part) is issued by the Board of

Governors of the Federal Reserve System (the Board) pursuant to the Securities Exchange Act of 1934 (the Act) (15 U.S.C. 78a *et seq.*). Its principal purpose is to regulate extensions of credit by and to brokers and dealers; it also covers related transactions within the Board's authority under the Act. It imposes, among other obligations, initial margin requirements and payment rules on securities transactions.

(b) *Scope.* (1) This part provides a margin account and seven special purpose accounts in which to record all financial relations between a customer and a creditor. Any transaction not specifically permitted in a special account shall be recorded in a margin account.

(2) This part does not preclude any exchange, national securities association, or creditor from imposing additional requirements or taking action for its own protection.

### § 220.2 Definitions.

The terms used in this part have the meanings given them in section 3(a) of the Act or as defined in this section.

(a) *Credit balance* means the cash amount due the customer in a margin account after debiting amounts transferred to the special memorandum account.

(b) *Creditor* means any broker or dealer (as defined in sections 3(a)(4) and 3(a)(5) of the Act), any member of a national securities exchange, or any person associated with a broker or dealer (as defined in section 3(a)(18) of the Act), except for business entities controlling or under common control with the creditor.

(c) *Customer* includes: (1) Any person or persons acting jointly: (i) To or for whom a creditor extends, arranges, or maintains any credit; or (ii) who would be considered a customer of the creditor according to the ordinary usage of the trade;

(2) Any partner in a firm who would be considered a customer of the firm absent the partnership relationship; and

(3) Any joint venture in which a creditor participates and which would be considered a customer of the creditor if the creditor were not a participant.

(d) *Debit balance* means the cash amount owed to the creditor in a margin account after debiting amounts transferred to the special memorandum account.

(e) *Delivery against payment, Payment against delivery,* or a *C.O.D. transaction* refers to an arrangement under which a creditor and a customer agree that the creditor will deliver to, or accept from, the customer, or the customer's agent, a security against full payment of the purchase price.

(f) *Equity* means the total current market value of security positions held in the margin account plus any credit balance less the debit balance in the margin account.

(g) *Escrow agreement* means any agreement issued in connection with a call or put option under which a bank, holding the underlying security, foreign currency, certificate of deposit, or required cash, is obligated to deliver to the creditor (in the case of a call option) or accept from the creditor (in the case of a put option) the underlying security, foreign currency, or certificate of deposit against payment of the exercise price upon exercise of the call or put.

(h) *Examining authority* means: (1) The national securities exchange or other self-regulatory organization of which a creditor is a member; or

(2) If not a member of any such self-regulatory organization, the Regional Office of the Securities and Exchange Commission (SEC) where the creditor has its principal place of business; or

(3) If a member of more than one self-regulatory organization, the organization designated by the SEC as the examining authority for the creditor.

(i) *Foreign margin stock* means: (1) A foreign security that is an equity security and that appears on the Board's periodically published List of Foreign Margin Stocks based on information submitted by a self-regulatory organization under procedures approved by the Board; or

(2) A foreign security that is a debt security convertible into a margin security.

(j) *Foreign security* means a security issued in a jurisdiction other than the United States.

(k) *Good faith margin* means the amount of margin which a creditor, exercising sound credit judgment, would customarily require for a specified security position and which is established without regard to the customer's other assets or securities positions held in connection with unrelated transactions.

(l) *In or at the money* means the current market price of the underlying security is not more than one standard exercise interval below (with respect to a call option) or above (with respect to a put option) the exercise price of the option.

(m) *In the money* means the current market price of the underlying security is not below (with respect to a call option) or above (with respect to a put option) the exercise price of the option.

(n) *Margin call* means a demand by a creditor to a customer for a deposit of additional cash or securities to eliminate or reduce a margin deficiency as required under this part.

(o) *Margin deficiency* means the amount by which the required margin exceeds the equity in the margin account.

(p) *Margin excess* means the amount by which the equity in the margin account exceeds the required margin. When the margin excess is represented by securities, the current value of the securities is subject to the percentages set forth in § 220.18 (the Supplement).

(q) *Margin security* means:

(1) Any registered security;

(2) Any OTC margin stock;

(3) Any OTC margin bond;

(4) Any OTC security designated as qualified for trading in the National Market System under a designation plan approved by the Securities and Exchange Commission (NMS security);

(5) Any security issued by either an open-end investment company or unit investment trust which is registered under section 8 of the Investment Company Act of 1940 (15 U.S.C. 80a–8)

(6) Any foreign margin stock.

(r) *Nonexempted security* means any security other than an exempted security (as defined in section 3(a)(12) of the Act).

(s) *Nonmember bank* means a bank that is not a member of the Federal Reserve System.

(t) *OTC margin bond* means: (1) A debt security not traded on a national securities exchange which meets all of the following requirements:

(i) At the time of the original issue, a principal amount of not less than $25,000,000 of the issue was outstanding;

(ii) The issue was registered under section 5 of the Securities Act of 1933 (15 U.S.C. 77e) and the issuer either files periodic reports pursuant to section 13(a) or 15(d) of the Act or is an insurance company which meets all of the conditions specified in section 12(g)(2)(G) of the Act; and

(iii) At the time of the extension of credit, the creditor has a reasonable basis for believing that the issuer is not in default on interest or principal payments; or

(2) A private mortgage pass-through security (not guaranteed by an agency of the U.S. government) meeting all of the following requirements:

(i) An aggregate principal amount of not less than $25,000,000 (which may be issued in series) was issued pursuant to a registration statement filed with the SEC under section 5 of the Securities Act of 1933;

(ii) Current reports relating to the issue have been filed with the SEC; and

(iii) At the time of the credit extension, the creditor has a reasonable basis for believing that mortgage interest, principal payments and other distributions are being passed through as required and that the servicing agent is meeting its material obligations under the terms of the offering; or

(3) A *mortgage related security* as defined in section 3(a)(41) of the Act; or

(4) A debt security issued or guaranteed as a general obligation by the government of a foreign country, its provinces, states, or cities, or a supranational entity, if at the time of the extension of credit one of the following is rated in one of the two highest rating categories by a nationally recognized statistical rating organization:

(i) The issue,

(ii) The issuer or guarantor (implicitly), or

(iii) Other outstanding unsecured long-term debt securities issued or guaranteed by the government or entity; or

(5) A foreign security that is a nonconvertible debt security that meets all of the following requirements:

(i) At the time of original issue, a principal amount of at least $100,000,000 was outstanding;

(ii) At the time of the extension of credit, the creditor has a reasonable basis for believing that the issuer is not in default on interest or principal payments; and

(iii) At the time of the extension of credit, the issue is rated in one of the two highest rating categories by a nationally recognized statistical rating organization, except that an issue that has not been rated as of the effective date of this provision shall be considered an *OTC margin bond* if a subsequent unsecured issue of at least $100,000,000 of the same issuer is rated in one of the two highest rating categories by a nationally recognized statistical rating organization.

(u) *OTC margin stock* means any equity security not traded on a national securities exchange that the Board has determined has the degree of national investor interest, the depth and breadth of market, the availability of information respecting the security and its issuer, and the character and permanence of the issuer to warrant being treated like an equity security traded on a national securities exchange. An OTC stock is not considered to be an *OTC margin stock* unless it appears on the Board's periodically published list of OTC margin stocks.

(v) *Overlying option* means: (1) A put option purchased or a call option written against a long position in an underlying security in the specialist record in § 220.12(b); or

(2) A call option purchased or a put option written against a short position in an underlying security in the specialist record in § 220.12(b).

(w) *Purpose credit* means credit for the purpose of: (1) Buying, carrying, or trading in securities; or

(2) Buying or carrying any part of an investment contract security which shall be deemed credit for the purpose of buying or carrying the entire security.

(x) *Registered security* means any security that: (1) Is registered on a national securities exchange; or

(2) Has unlisted trading privileges on a national securities exchange.

(y) *Short call or short put* means a call option or a put option that is issued, endorsed, or guaranteed in or for an account.

(1) A short call obligates the customer to sell the underlying security, foreign currency, or certificate of deposit at the exercise price upon receipt of an exercise notice at any time prior to the expiration date of the option.

(2) A short put obligates the customer to purchase the underlying security, foreign currency, or certificate of deposit at the exercise price upon receipt of an exercise notice at any time prior to the expiration date of the option.

(3) A short call or a short put on stock index options obligates the customer to pay the holder of an *in the money* long put or call who has exercised the option the cash difference between the exercise price and the current assigned value of the index as established by the option contract.

(z) *Specialist joint account* means an account which, by written agreement, provides for the commingling of the security positions of the participants and a sharing of profits and losses from the account on some predetermined ratio.

(aa) *Underlying security* means the security that will be delivered upon exercise of an option.

[48 FR 23165, May 24, 1983; 48 FR 34945, Aug. 2, 1983, as amended at 49 FR 35758, Sept. 12, 1984; 52 FR 32292, Aug. 27, 1987; 53 FR 30831, Aug. 16, 1988; 55 FR 11159, Mar. 27, 1990]

### § 220.3 General provisions.

(a) *Records*. The creditor shall maintain a record for each account showing the full details of all transactions.

(b) *Separation of accounts*. Except as provided for in the margin account and the special memorandum account, the requirements of an account may not be met by considering items in any other account. If withdrawals of cash or securities are permitted under the regulation, written entries shall be made when cash or securities are used for purposes of meeting requirements in another account.

(c) *Maintenance of credit.* Except as prohibited by this part, any credit initially extended in compliance with this part may be maintained regardless of:

(1) Reductions in the customer's equity resulting from changes in market prices;

(2) Any security in an account ceasing to be margin or exempted; or

(3) Any change in the margin requirements prescribed under this part.

(d) *Guarantee of accounts.* No guarantee of a customer's account shall be given any effect for purposes of this part.

(e) *Receipt of funds or securities.* (1) A creditor, acting in good faith, may accept as immediate payment:

(i) Cash or any check, draft, or order payable on presentation; or

(ii) Any security with sight draft attached.

(2) A creditor may treat a security, check or draft as received upon written notification from another creditor that the specified security, check, or draft has been sent.

(3) Upon notification that a check, draft, or order has been dishonored or when securities have not been received within a reasonable time, the creditor shall take the action required by this part when payment or securities are not received on time.

(4) A creditor may accept, in lieu of securities, a properly executed exercise notice for a stock option issued by the customer's employer and instructions to the issuer to deliver the resulting stock to the creditor. Prior to acceptance, the creditor must verify that the issuer will deliver the securities promptly and the customer must designate the account into which the securities are to be deposited.

(f) *Exchange of securities.* (1) To enable a customer to participate in an offer to exchange securities which is made to all holders of an issue of securities, a creditor may submit for exchange any securities held in a margin account, without regard to the other provisions of this part, provided the consideration received is deposited into the account.

(2) If a nonmargin, nonexempted security is acquired in exchange for a margin security, its retention, withdrawal, or sale within 60 days following its acquisition shall be treated as if the security is a margin security.

(g) *Valuing securities.* The current market value of a security shall be determined as follows:

(1) Throughout the day of the purchase or sale of a security, the creditor shall use the security's total cost of purchase or the net proceeds of its sale including any commissions charged.

(2) At any other time, the creditor shall use the closing sale price of the security on the preceding business day, as shown by any regularly published reporting or quotation service. If there is no closing price, the creditor may use any reasonable estimate of the market value of the security as of the close of business on the preceding business day.

(h) *Innocent mistakes.* If any failure to comply with this part results from a mistake made in good faith in executing a transaction or calculating the amount of margin, the creditor shall not be deemed in violation of this part if, promptly after the discovery of the mistake, the creditor takes appropriate corrective action.

(i) *Variable annuity contracts issued by insurance companies.* Any insurance company that issues or sells variable annuity contracts or engages in a general securities business as a broker or dealer shall be subject to this part only for transactions in connection with those activities. Extensions of credit associated with conventional lending practices of insurance companies are subject to part 207 of this chapter.

[48 FR 23165, May 24, 1983, as amended at 52 FR 48805, Dec. 28, 1987]

### § 220.4 Margin account.

(a) *Margin transactions.* (1) All transactions not specifically authorized for inclusion in another account shall be recorded in the margin account.

(2) A creditor may establish separate margin accounts for the same person to:

(i) Clear transactions for other creditors where the transactions are introduced to the clearing creditor by separate creditors; or

(ii) Clear transactions through other creditors if the transactions are effected by separate creditors; or

(iii) Provided one or more accounts over which the creditor or a third party investment adviser has investment discretion.

(b) *Required margin.* The required margin for each position in securities is set forth in § 220.18 (the Supplement) and is subject to the exceptions and special provisions contained in § 220.5 (Margin Account Exceptions and Special Provisions).

(c) *When additional margin is required*—(1) *Computing deficiency.* All transactions on the same day shall be combined to determine whether additional margin is required by the creditor. For the purpose of computing equity in an account, security positions are established or eliminated and a credit or debit created on the trade date of a security transaction. Additional margin is required on any day when the day's transactions create or increase a margin deficiency in the account and shall be for the amount of the margin deficiency so created or increased. To the extent that debits in a margin account are denominated in foreign currency secured by specifically identified foreign margin securities as provided in § 220.5(g), each foreign currency debit position shall be considered separately for purposes of computing a deficiency and no credit shall be given to such specifically identified foreign margin securities for purposes of computing equity in the margin account either in United States dollars or in any other specific foreign currency.

(2) *Satisfaction of deficiency.* The additional required margin may be satisfied by a transfer from the special memorandum account or by a deposit of cash, margin securities, exempted securities, or any combination thereof.

(3) *Time limits.* (i) A margin call shall be satisfied within 7 business days after the margin deficiency was created or increased.

(ii) The 7 day period may be extended for one or more limited periods upon application by the creditor to a self-regulatory organization or national securities association unless the organization or association believes that the creditor is not acting in good faith or that the creditor has not sufficiently determined that exceptional circumstances warrant such action. Applications shall be filed and acted upon prior to the end of the 7 day period or the expiration of any subsequent extension. However, applications filed by firms having no direct electronic access to the organization or association may be accepted as timely filed if postmarked by midnight of the last day of the 7 day period or any subsequent extension.

(4) *Satisfaction restriction.* Any transaction, position, or deposit that is used to satisfy one requirement under this part shall be unavailable to satisfy any other requirement.

(d) *Liquidation in lieu of deposit.* If any margin call is not met in full within the required time, the creditor shall liquidate securities sufficient to meet the margin call or to eliminate any margin deficiency existing on the day such liquidation is required, whichever is less. If the margin deficiency created or increased is $500 or less, no action need be taken by the creditor.

(e) *Withdrawals of cash or securities.* (1) Cash or securities may be withdrawn from an account, except if:

(i) Additional cash or securities are required to be deposited into the account for a transaction on the same or a previous day; or

(ii) The withdrawal, together with other transactions, deposits, and withdrawals on the same day, would create or increase a margin deficiency.

(2) Margin excess may be withdrawn or may be transferred to the special memorandum account (§ 220.6) by making a single entry to that account which will represent a debit to the margin account and a credit to the special memorandum account.

(3) If a creditor does not receive a distribution of cash or securities which is payable with respect to any security in a margin account on the day it is payable and withdrawal would not be permitted under this paragraph, a withdrawal transaction shall be deemed to have occurred on the day the distribution is payable.

(f) *Interest, service charges, etc.* (1) Without regard to the other provisions of this section, the creditor, in its usual practice, may debit the following items to a margin account if they are

considered in calculating the balance of such account:

(i) Interest charged on credit maintained in the margin account;

(ii) Premiums on securities borrowed in connection with short sales or to effect delivery;

(iii) Dividends, interest, or other distributions due on borrowed securities;

(iv) Communication or shipping charges with respect to transactions in the margin account; and

(v) Any other service charges which the creditor may impose.

(2) A creditor may permit interest, dividends, or other distributions credited to a margin account to be withdrawn from the account if:

(i) The withdrawal does not create or increase a margin deficiency in the account; or

(ii) The current market value of any securities withdrawn does not exceed 10 percent of the current market value of the security with respect to which they were distributed.

[48 FR 23165, May 24, 1983, as amended at 55 FR 11159, Mar. 27, 1990]

### §220.5 Margin account exceptions and special provisions.

(a) *Unissued securities.* (1) The required margin on a net long or net short commitment in an unissued security is the margin that would be required if the security were an issued margin security, plus any unrealized loss on the commitment or less any unrealized gain.

(2) Margin is not required on a net short commitment in unissued securities when the account contains the related issued securities, nor for any net short or net long position in unissued exempted securities.

(b) *Short sales*—(1) The required margin for the short sale of a security shall be the amount set forth in §220.18 (the Supplement).

(2) A short sale "against the box" shall be treated as a long sale for the purpose of computing the equity and the required margin.

(c) *Options*—(1) *Margin or cover for options on exempted debt securities, certificates of deposit, stock indices, or securities exchange traded options on foreign currencies.* The required margin for each transaction involving any short put or short call on an exempted debt security, certificate of deposit, stock index, or foreign currency (if the option is traded on a securities exchange), shall be the amount or positions in lieu of margin set forth in §220.18 (the Supplement).

(2) *Margin for options on equity securities.* The required margin for each transaction involving any short put or short call on an equity security shall be the amount set forth in §220.18 (the Supplement).

(3) *Cover or positions in lieu of margin.* No margin is required for an option written on an equity security position when the account holds any of the following:

(i) The underlying security in the case of a short call, or a short position in the underlying security in the case of a short put;

(ii) Securities immediately convertible into or exchangeable for the underlying security without the payment of money in the case of a short call, if the right to convert or exchange does not expire on or before the expiration date of the short call;

(iii) An escrow agreement for the underlying security or foreign exhange (in the case of a short call) or cash (in the case of a short put);

(iv) A long call on the same number of shares of the same underlying security if the long call does not expire before the expiration date of the short call, and if the amount (if any), by which the exercise price of the long call exceeds the exercise price of the short call is deposited in the account;

(v) A long put on the same number of shares of the same underlying security if the long put does not expire before the expiration date of the short put, and if the amount (if any), by which the exercise price of the short put exceeds the exercise price of the long put is deposited in the account;

(vi) A warrant to purchase the underlying security, in the case of a short call, if the warrant does not expire on or before the expiration date of the short call, and if the amount (if any), by which the exercise price of the warrant exceeds the exercise price of the short call is deposited in the account. A warrant used in lieu of the required

margin under this provision shall contribute no equity to the account.

(4) *Adjustments.* (i) When a short position held in the account serves in lieu of the required margin for a short put, the amount prescribed by paragraph (c)(2) of this section as the amount to be added to the required margin in respect of short sales shall be increased by any unrealized loss on the position.

(ii) When a security held in the account serves in lieu of the required margin for a short call, the security shall be valued at no greater than the exercise prices of the short call.

(5) *Straddles.* When both a short put and a short call are in a margin account on the same number of shares of the same underlying security, the required margin shall be the margin on either the short put or the short call, whichever is greater, plus any unrealized loss on the other option.

(6) *Exclusive designation.* The customer may designate at the time the option order is entered which security position held in the account is to serve in lieu of the required margin, if such service is offered by the creditor; or the customer may have a standing agreement with the creditor as to the method to be used for determining on any given day which security position will be used in lieu of the margin to support an option transaction. Only security held in the account which serves in lieu of the required margin for a short put or a short call shall be unavailable to support any other option transaction in the account.

(d) *Accounts of partners.* If a partner of the creditor has a margin account with the creditor, the creditor shall disregard the partner's financial relations with the firm (as shown in the partner's capital and ordinary drawing accounts) in calculating the margin or equity of the partner's margin account.

(e) *Contribution to joint venture.* If a margin account is the account of a joint venture in which the creditor participates, any interest of the creditor in the joint account in excess of the interest which the creditor would have on the basis of its right to share in the profits shall be treated as an extension of credit to the joint account and shall be margined as such.

(f) *Transfer of accounts.* (1) A margin account that is transferred from one creditor to another may be treated as if it had been maintained by the transferee from the date of its origin, if the transferee accepts, in good faith, a signed statement of the transferor (or, if that is not practicable, of the customer), that any margin call issued under this part has been satisfied.

(2) A margin account that is transferred from one customer to another as part of a transaction, not undertaken to avoid the requirements of this part, may be treated as if it had been maintained for the transferee from the date of its origin, if the creditor accepts in good faith and keeps with the transferee account a signed statement of the transferor describing the circumstances for the transfer.

(g) *Credit denominated in foreign currency.* A creditor may extend credit denominated in a foreign currency secured by foreign margin securities denominated or traded in the same foreign currency and specifically identified on the creditor's books and records as securing the foreign currency debit.

[48 FR 23165, May 24, 1983, as amended at 50 FR 26355, June 26, 1985; 55 FR 11159, Mar. 27, 1990]

### § 220.6 Special memorandum account.

(a) A special memorandum account (SMA) may be maintained in conjunction with a margin account. A single entry amount may be used to represent both a credit to the SMA and a debit to the margin account. A transfer between the two accounts may be effected by an increase or reduction in the entry. When computing the equity in a margin account, the single entry amount shall be considered as a debit in the margin account. A payment to the customer or on the customer's behalf or a transfer to any of the customer's other accounts from the SMA reduces the single entry amount.

(b) The SMA may contain the following entries:

(1) Dividend and interest payments;

(2) Cash not required by this part, including cash deposited to meet a maintenance margin call or to meet any requirement of a self-regulatory organization that is not imposed by this part;

(3) Proceeds of a sale of securities or cash no longer required on any expired or liquidated security position that may be withdrawn under § 220.4(e) of this part; and

(4) Margin excess transferred from the margin account under § 220.4(e)(2) of this part.

**§ 220.7 Arbitrage account.**

In an arbitrage account a creditor may effect and finance for any customer *bona fide* arbitrage transactions. For the purpose of this section, the term "*bona fide* arbitrage" means:

(a) A purchase or sale of a security in one market together with an offsetting sale or purchase of the same security in a different market at as nearly the same time as practicable for the purpose of taking advantage of a difference in prices in the two markets, or

(b) A purchase of a security which is, without restriction other then the payment of money, exchangeable or convertible within 90 calendar days of the purchase into a second security together with an offsetting sale of the second security at or about the same time, for the purpose of taking advantage of a concurrent disparity in the prices of the two securities.

**§ 220.8 Cash account.**

(a) *Permissible transactions.* In a cash account, a creditor, may:

(1) Buy for or sell to any customer any security if: (i) There are sufficient funds in the accounts; or (ii) the creditor accepts in good faith the customer's agreement that the customer will promptly make full cash payment for the security before selling it and does not contemplate selling it prior to making such payment;

(2) Buy from or sell for any customer any security if: (i) The security is held in the account; or (ii) the creditor accepts in good faith the customer's statement that the security is owned by the customer or the customer's principal, and that it will be promptly deposited in the account;

(3) Issue, endorse, or guarantee an option for any customer if:

(i) In the case of a call option, the underlying security (or a security immediately convertible into the underlying security, without the payment of money) is held in or purchased for the account on the same day, and the option premium is held in the account until cash payment for the underlying or convertible security is received; or

(ii) In the case of a put option, the creditor obtains cash in an amount equal to the exercise price or holds in the account any of the following instruments with a current market value at least equal to the exercise price and with one year or less to maturity: securities issued or guaranteed by the United States or its agencies, negotiable bank certificates of deposit, or bankers acceptances issued by banking institutions in the United States and payable in the United States.

(4) Use an escrow agreement in lieu of the cash or underlying security position if:

(i) In the case of a call or a put, the creditor is advised by the customer that the required securities or cash are held by a bank and the creditor independently verifies that an appropriate escrow agreement will be delivered by the bank promptly; or

(ii) In the case of a call issued, endorsed, or guaranteed on the same day the underlying security is purchased in the account and the underlying security is to be delivered to a bank, the creditor verifies that an appropriate escrow agreement will be delivered by the bank promptly.

(b) *Time periods for payment; cancellation or liquidation*—(1) *Full cash payment.* A creditor shall obtain full cash payment for customer purchases—

(i) Within seven business days of the date:

(A) Any nonexempted security was purchased;

(B) Any unissued security was made available by the issuer for delivery to purchasers;

(C) Any "when distributed" security was distributed under a published plan;

(D) A security owned by the customer has matured or has been redeemed and a new refunding security of the same issuer has been purchased by the customer, provided:

(*1*) The customer purchased the new security no more than 35 calendar days prior to the date of maturity or redemption of the old security;

(*2*) The customer is entitled to the proceeds of the redemption; and

(*3*) The delayed payment does not exceed 103 percent of the proceeds of the old security.

(ii) In the case of the purchase of a foreign security, within seven business days of the trade date or the date on which settlement is required to occur by the rules of the foreign securities market, provided this period does not exceed the maximum time permitted by this part for delivery against payment transactions.

(2) *Delivery against payment.* If a creditor purchases for or sells to a customer a security in a delivery against payment transaction, the creditor shall have up to 35 calendar days to obtain payment if delivery of the security is delayed due to the mechanics of the transaction and is not related to the customer's willingness or ability to pay.

(3) *Shipment of securities, extension.* If any shipment of securities is incidental to consummation of a transaction, a creditor may extend the 7 business day period by the number of days required for shipment, but not by more than 7 business days.

(4) *Cancellation; liquidation; minimum amount.* A creditor shall promptly cancel or otherwise liquidate a transaction or any part of a transaction for which the customer has not made full cash payment within the required time. A creditor may, at its option, disregard any sum due from the customer not exceeding $500.

(c) *90 day freeze.* (1) If a nonexempted security in the account is sold or delivered to another broker or dealer without having been previously paid for in full by the customer, the privilege of delaying payment beyond the trade date shall be withdrawn for 90 calendar days following the date of sale of the security. Cancellation of the transaction other than to correct an error shall constitute a sale.

(2) The 90 day freeze shall not apply if: (i) Within 7 business days of the trade date, full payment is received or any check or draft in payment has cleared and the proceeds from the sale are not withdrawn prior to such payment or check clearance; or (ii) the purchased security was delivered to another broker or dealer for deposit in a cash account which holds sufficient funds to pay for the security. The creditor may rely on a written statement accepted in good faith from the other broker or dealer that sufficient funds are held in the other cash account.

(d) *Extension of time periods; transfers.* (1) Unless a self-regulatory organization or association believes that the creditor is not acting in good faith or that the creditor has not sufficiently determined that exceptional circumstances warrant such action, it may, upon application by the creditor:

(i) Extend any period specified in paragraph (b) of this section;

(ii) Authorize transfer to another account of any transaction involving the purchase of a margin or exempted security; or

(iii) Grant a waiver from the 90 day freeze.

(2) Applications shall be filed and acted upon prior to the end of the 7 day period or the expiration of any subsequent extension. However, an application filed from firms having no direct electronic access to the exchange or association may be accepted as timely filed if it is postmarked no later than midnight of the last day of the 7 day period or any subsequent extension.

[48 FR 23165, May 24, 1983, as amended at 55 FR 11159, Mar. 27, 1990]

## § 220.9 Nonsecurities credit and employee stock ownership account.

(a) In a nonsecurities credit account a creditor may:

(1) Effect and carry transactions in commodities;

(2) Effect and carry transactions in foreign exchange;

(3) Extend and maintain secured or unsecured nonpurpose credit, subject to the requirements of paragraph (b) of this section.

(4) Extend and maintain credit to employee stock ownership plans without regard to the other sections of this part.

(b) Every extension of credit, except as provided in paragraphs (a) (1) and (2) of this section, shall be deemed to be purpose credit unless, prior to extending the credit, the creditor accepts in good faith from the customer a written statement that it is not purpose credit.

The statement shall conform to the requirements established by the Board. To accept the customer's statement in good faith, the creditor shall be aware of the circumstances surrounding the extension of credit and shall be satisfied that the statement is truthful.

[48 FR 23165, May 24, 1983, as amended at 50 FR 26356, June 26, 1985]

**§220.10 Omnibus account.**

(a) In an omnibus account, a creditor may effect and finance transactions for a broker or dealer who is registered with the SEC under section 15 of the Act and who gives the creditor written notice that:

(1) All securities will be for the account of customers of the broker or dealer; and

(2) Any short sales effected will be short sales made on behalf of the customers of the broker or dealer other than partners.

(b) The written notice required by paragraph (a) shall conform to any SEC rule on the hypothecation of customers' securities by brokers or dealers.

**§220.11 Broker-dealer credit account.**

(a) *Permissible transactions.* In a broker-dealer credit account, a creditor may:

(1) Purchase any security from or sell any security to another creditor under a good faith agreement to promptly deliver the security against full payment of the purchase price.

(2) Effect or finance transactions of any of its owners if the creditor is a clearing and servicing broker or dealer owned jointly or individually by other creditors.

(3) Extend and maintain credit to any partner or stockholder of the creditor for the purpose of making a capital contribution to, or purchasing stock of, the creditor, affiliated corporation or another creditor.

(4) Extend and maintain, with the approval of the appropriate examining authority:

(i) Credit to meet the emergency needs of any creditor; or

(ii) Subordinated credit to another creditor for capital purposes, if the other creditor:

(A) Is an affiliated corporation; or

(B) Will not use the proceeds of the loan to increase the amount of dealing in securities for the account of the creditor, its firm or corporation or an affiliated corporation.

(b) For purposes of paragraphs (a) (3) and (4) of this section *affiliated corporation* means a corporation all the common stock of which is owned directly or indirectly by the firm or general partners and employees of the firm, or by the corporation or holders of the controlling stock and employees of the corporation and the affiliation has been approved by the creditor's examining authority.

**§220.12 Market functions account.**

(a) *Requirements.* In a market functions account, a creditor may effect or finance the transactions of market participants in accordance with the following provisions. A separate record shall be kept for the transactions specified for each category described in paragraphs (b) through (e) of this section. Any position in a separate record shall not be used to meet the requirements of any other category.

(b) *Specialists*—(1) *Applicability.* A creditor may clear or finance specialist transactions for any specialist, or any specialist joint account, in which all participants, or all participants other than the creditor, are registered as specialists on a national securities exchange that requires regular reports on the use of specialist credit from the registered specialists.

(2) *Permitted offset positions.* A specialist in options may establish, on a share-for-share basis, a long or short position in the securities underlying the options in which the specialist makes a market, and a specialist in securities other than options may purchase or write options overlying the securities in which the specialist makes a market, if the account holds the following permitted offset positions:

(i) A short option position which is "in or at the money" and is not offset by a long or short option position for an equal or greater number of shares of the same underlying security which is "in the money";

(ii) A long option position which is "in or at the money" and is not offset by a long or short option position for

an equal or greater number of shares of the same underlying security which is "in the money";

(iii) A short option position against which an exercise notice was tendered;

(iv) A long option position which was exercised;

(v) A net long position in a security (other than an option) in which the specialist makes a market; or

(vi) A net short position in a security (other than an option) in which the specialist makes a market.

(3) *Required margin.* The required margin for a specialist's transactions shall be:

(i) Good faith margin for any long or short position in a security in which the specialist makes a market;

(ii) Good faith margin for any wholly-owned margin security or exempted security;

(iii) The margin prescribed by § 220.18 (the Supplement) when a security purchased or sold short in the account does not qualify as a specialist or permitted offset position.

(4) *Additional margin; restriction on "free-riding."* (i) Except as required by paragraph (b)(5) of this section, the creditor shall issue a margin call on any day when additional margin is required as a result of specialist transactions. The creditor may allow the specialist a maximum of 7 business days to satisfy a margin call.

(ii) If a specialist fails to satisfy a margin call within the period specified in this paragraph (and the creditor is required to liquidate securities to satisfy the call), the creditor shall be prohibited for a 15 calendar day period from extending any further credit to the specialist to finance transactions in nonspecialty securities.

(iii) The restriction on "free-riding" shall not apply to:

(A) Any specialist on a national securities exchange that has an SEC-approved rule on "free-riding" by specialists; or (B) the acquisition or liquidation of a permitted offset position.

(5) *Deficit status.* On any day when a specialist's separate record would liquidate to a deficit, the creditor shall not extend any further specialist credit in the account and shall issue a margin call at least as large as the deficit. If the call is not met by noon of the following business day, the creditor shall liquidate positions in the specialist's account.

(6) *Withdrawals.* Withdrawals may be permitted to the extent that the equity exceeds the margin requirements specified in paragraph (b)(3) of this section.

(c) *Underwritings and distributions.* A creditor may effect or finance for any dealer or group of dealers transactions for the purpose of facilitating the underwriting or distribution of all or a part of an issue of securities with a good faith margin.

(d) *OTC Marketmakers and Third Marketmakers.* (1) A creditor may clear or finance with a good faith margin, marketmaking transactions for an OTC marketmaker or a third marketmaker who:

(i) Is in compliance with any applicable SEC rule, including minimum net capital rules;

(ii) Regularly submits *bona fide* competitive bid and offer quotations to a recognized inter-dealer quotation system;

(iii) Is ready, willing, and able to effect transactions in reasonable amounts with other brokers and dealers at the quoted prices; and

(iv) Has a reasonable average rate of inventory turnover.

(2) If the credit extended to a marketmaker ceases to be for the purpose of marketmaking, or the dealer ceases to be a marketmaker for an issue of securities for which credit was extended, the credit shall be subject to the margin specified in § 220.18 (the Supplement).

(e) *Odd-lot dealers.* A creditor may clear and finance odd-lot transactions for any creditor who is registered as an odd-lot dealer on a national securities exchange with a good faith margin.

[48 FR 23165, May 24, 1983; 48 FR 26590, June 9, 1983]

### § 220.13 Arranging for loans by others.

A creditor may not arrange for the extension or maintenance of credit to or for any customer by any person upon terms and conditions other than those upon which the creditor may itself extend or maintain credit under the provisions of this part, except that this limitation shall not apply to credit arranged for a customer which does

not violate parts 207 and 221 of this chapter and results solely from:

(a) Investment banking services, provided by the creditor to the customer, including, but not limited to, underwritings, private placements, and advice and other services in connection with exchange offers, mergers, or acquisitions, except for underwritings that involve the public distribution of an equity security with installment or other deferred payment provisions;

(b) The sales of nonmargin securities (including securities with installment or other deferred payment provisions) if the sale is exempted from the registration requirements of the Securities Act of 1933 under section 4(2) of section 4(6) of the Act;

(c) A subsequent loan or advance on a face-amount certificate as permitted under 15 U.S.C. 80a–28(d); or

(d) Credit extended by a foreign person to purchase foreign securities.

[50 FR 10934, Mar. 19, 1985, as amended at 55 FR 11160, Mar. 27, 1990]

### §220.14 Clearance of securities, options, and futures.

(a) *Credit for clearance of securities.* The provisions of this part shall not apply to the extension or maintenance of any credit that is not for more than one day if it is incidental to the clearance of transactions in securities directly between members of a national securities exchange or association or through any clearing agency registered with the SEC.

(b) *Deposit of securities with a clearing agency.* The provisions of this part shall not apply to the deposit of securities with an options or futures clearing agency for the purpose of meeting the deposit requirements of the agency if:

(1) The clearing agency:

(i) Issues, guarantees performance on, or clears transactions in, any security (including options on any security, certificate of deposit, securities index or foreign currency); or

(ii) Guarantees performance of contracts for the purchase or sale of a commodity for future delivery or options on such contracts;

(2) The clearing agency is registered with the Securities and Exchange Commission or is the clearing agency for a contract market regulated by the Commodity Futures Trading Commission; and

(3) The deposit consists of any margin security and complies with the rules of the clearing agency that have been approved by the Securities and Exchange Commission or the Commodity Futures Trading Commission.

[48 FR 23165, May 24, 1983, as amended at 56 FR 46110, Sept. 10, 1991]

### §220.15 Borrowing by creditors.

(a) *Restrictions on borrowing.* A creditor may not borrow in the ordinary course of business as a broker or dealer using as collateral any registered nonexempted security, except:

(1) From or through a member bank of the Federal Reserve System; or

(2) From any nonmember bank that has filed with the Board an agreement as prescribed in paragraph (b) of this section, which agreement is still in effect; or

(3) From another creditor if the loan is permissible under this part.

(b) *Agreements of nonmember banks.* (1) A nonmember bank shall file an agreement that conforms to the requirements of section 8(a) of the Act (See Form F.R. T–2) if:

(i) Its principal place of business is in a territory or insular possession of the United States; or

(ii) It has an office or agency in the United States and its principal place of business is outside the United States.

(2) Any other nonmember bank shall file an agreement that conforms to the requirements of section 8(a) of the Act (See Form F.R. T–1).

(3) Any nonmember bank may terminate its agreement if it obtains the written consent of the Board.

### §220.16 Borrowing and lending securities.

Without regard to the other provisions of this part, a creditor may borrow or lend securities for the purpose of making delivery of the securities in the case of short sales, failure to receive securities required to be delivered, or other similar situations. Each borrowing shall be secured by a deposit of one or more of the following: cash, securities issued or guaranteed by the United States or its agencies, negotiable bank certificates of deposit and

bankers acceptances issued by banking institutions in the United States and payable in the United States, or irrevocable letters of credit issued by a bank insured by the Federal Deposit Insurance Corporation or a foreign bank that has filed an agreement with the Board on Form F.R. T-2. Such deposit made with the lender of the securities shall have at all times a value at least equal to 100 percent of the market value of the securities borrowed, computed as of the close of the preceding business day.

**§220.17 Requirements for the list of marginable OTC stocks and the list of foreign margin stocks.**

(a) *Requirements for inclusion on the list of marginable OTC stocks.* Except as provided in paragraph (f) of this section, OTC margin stock shall meet the following requirements:

(1) Four or more dealers stand willing to, and do in fact, make a market in such stock and regularly submit bona fide bids and offers to an automated quotations system for their own accounts;

(2) The minimum average bid price of such stock, as determined by the Board, is at least $5 per share.

(3) The stock is registered under section 12 of the Act, is issued by an insurance company subject to section 12(g)(2)(G) of the Act, is issued by a closed-end investment management company subject to registration pursuant to section 8 of the Investment Company Act of 1940 (15 U.S.C. 80a-8), is an American Depository Receipt (ADR) of a foreign issuer whose securities are registered under section 12 of the Act, or is a stock of an issuer required to file reports under section 15(d) of the Act;

(4) Daily quotations for both bid and asked prices for the stock are continuously available to the general public;

(5) The stock has been publicly traded for at least six months;

(6) The issuer has at least $4 million of capital, surplus, and undivided profits;

(7) There are 400,000 or more shares of such stock outstanding in addition to shares held beneficially by officers, directors or beneficial owners of more than 10 percent of the stock;

(8) There are 1,200 or more holders of record, as defined in SEC Rule 12g5-1 (17 CFR 240.12g5-1), of the stock who are not officers, directors or beneficial owners of 10 percent or more of the stock, or the average daily trading volume of such stock as determined by the Board, is at least 500 shares; and

(9) The issuer or a predecessor in interest has been in existence for at least three years.

(b) *Requirements for continued inclusion on the list of marginable OTC stocks.* Except as provided in paragraph (f) of this section, OTC margin stock shall meet the following requirements:

(1) Three or more dealers stand willing to, and do in fact, make a market in such stock and regularly submit bona fide bids and offers to an automated quotations system for their own accounts;

(2) The minimum average bid price of such stocks, as determined by the Board, is at least $2 per share;

(3) The stock is registered as specified in paragraph (a)(3) of this section;

(4) Daily quotations for both bid and asked prices for the stock are continuously available to the general public;

(5) The issuer has at least $1 million of capital, surplus, and undivided profits;

(6) There are 300,000 or more shares of such stock outstanding in addition to shares held beneficially by officers, directors, or beneficial owners of more than 10 percent of the stock; and

(7) There continue to be 800 or more holders of record, as defined in SEC Rule 12g5-1 (17 CFR 240.12g5-1), of the stock who are not officers, directors, or beneficial owners of 10 percent or more of the stock, or the average daily trading volume of such stock, as determined by the Board, is at least 300 shares.

(c) *Requirements for inclusion on the list of foreign margin stocks.* Except as provided in paragraph (f) of this section, a foreign margin stock shall meet the following requirements:

(1) The security is listed for trading on or through the facilities of a foreign securities exchange or a recognized foreign securities market and has been trading on such exchange or market for at least six months;

(2) Daily quotations for both bid and asked or last sale prices for the security provided by the foreign securities exchange or foreign securities market on which the security is traded are continuously available to creditors in the United States pursuant to an electronic quotation system;

(3) The aggregate market value of shares, the ownership of which is unrestricted, is not less than $1 billion;

(4) The average weekly trading volume of such security during the preceding six months is either at least 200,000 shares or $1 million; and

(5) The issuer or a predecessor in interest has been in existence for at least five years.

(d) *Requirements for continued inclusion on the list of foreign margin stocks.* Except as provided in paragraph (f) of this section, a foreign margin stock shall meet the following requirements:

(1) The security continues to meet the requirements specified in paragraphs (c) (1) and (2) of this section;

(2) The aggregate market value of shares, the ownership of which is unrestricted, is not less than $500 million; and

(3) The average weekly trading volume of such security during the preceding six months is either at least 100,000 shares or $500,000.

(e) *Removal from the lists.* The Board shall periodically remove from the lists any stock that:

(1) Ceases to exist or of which the issuer ceases to exist, or

(2) No longer substantially meets the provisions of paragraphs (b) or (d) of this section or § 220.2(u).

(f) *Discretionary authority of Board.* Without regard to other paragraphs of this section, the Board may add to, or omit or remove from the list of marginable OTC stocks and the list of foreign margin stocks and equity security, if in the judgment of the Board, such action is necessary or appropriate in the public interest.

(g) *Unlawful representations.* It shall be unlawful for any creditor to make, or cause to be made, any representation to the effect that the inclusion of a security on the list of marginable OTC stocks or the list of foreign margin stocks is evidence that the Board or the SEC has in any way passed upon the merits of, or given approval to, such security or any transactions therein. Any statement in an advertisement or other similar communication containing a reference to the Board in connection with the lists or stocks on those lists shall be an unlawful representation.

[48 FR 23165, May 24, 1983; 48 FR 34945, Aug. 2, 1983, as amended at 55 FR 11160, Mar. 27, 1990]

**§ 220.18 Supplement: Margin Requirements.**

The required margin for each security position held in a margin account shall be as follows:

(a) Margin equity security, except for an exempted security or a long position in an option: 50 percent of the current market value of the security or the percentage set by the regulatory authority where the trade occurs, whichever is greater.

(b) Exempted security, registered nonconvertible debt security or OTC margin bond: The margin required by the creditor in good faith or the percentage set by the regulatory authority where the trade occurs, whichever is greater.

(c) Short sale of nonexempted security: 150 percent of the current market value of the security, or 100 percent of the current market value if a security exchangeable or convertible within 90 calendar days without restriction other than the payment of money into the security sold short is held in the account.

(d) Short sale of an exempted security: 100 percent of the current market value of the security plus the margin required by the creditor in good faith.

(e) Nonmargin, nonexempted security or a long position in any option: 100 percent of the current market value.

(f) Short put or short call on a security, certificate of deposit, securities index or foreign currency:

(1) In the case of puts and calls issued by a registered clearing corporation and listed or traded on a registered national securities exchange or a registered securities association, the amount, or other position (except in the case of an option on an equity security), specified by the rules of the registered national securities exchange or

the registered securities association authorized to trade the option, provided that all such rules have been approved or amended by the SEC; or

(2) In the case of all other puts and calls, the amount, or other position (except in the case of an option on an equity security), specified by the maintenance rules of the creditor's self-regulatory organization.

[50 FR 26356, June 26, 1985, as amended at 55 FR 11160, Mar. 27, 1990]

INTERPRETATIONS

**§ 220.101 Transactions of customers who are brokers or dealers.**

The Board has recently considered certain questions regarding transactions of customers who are brokers or dealers.

(a) The first question was whether delivery and payment under § 220.4(f)(3) must be exactly simultaneous (such as in sight draft shipments), or whether it is sufficient if the broker-dealer customer, "as promptly as practicable in accordance with the ordinary usage of the trade," mails or otherwise delivers to the creditor a check in settlement of the transaction, the check being accompanied by instructions for transfer or delivery of the security. The Board ruled that the latter method of setting the transaction is permissible.

(b) The second question was, in effect, whether the limitations of § 220.4(c)(8) apply to the account of a customer who is himself a broker or dealer. The answer is that the provision applies to any "special cash account," regardless of the type of customer.

(c) The third question was, in effect, whether a purchase and a sale of an unissued security under § 220.4(f)(3) may be offset against each other, or whether each must be settled separately by what would amount to delivery of the security to settle one transaction and its redelivery to settle the other. The answer is that it is permissible to offset the transactions against each other without physical delivery and redelivery of the security.

[11 FR 14155, Dec. 7, 1946]

**§ 220.102 [Reserved]**

**§ 220.103 Borrowing of securities.**

(a) The Board of Governors has been asked for a ruling as to whether § 220.6(h), which deals with borrowing and lending of securities, applies to a borrower of securities if the lender is a private individual, as contrasted with a member of a national securities exchange or a broker or dealer.

(b) Section 220.6(h) does not require that the lender of the securities in such a case be a member of a national securities exchange or a broker or dealer. Therefore, a borrowing of securities may be able to qualify under the provision even though the lender is a private individual, and this is true whether the security is registered on a national securities exchange or is unregistered. In borrowing securities from a private individual under § 220.6(h), however, it becomes especially important to bear in mind two limitations that are contained in the section.

(c) The first limitation is that the section applies only if the broker borrows the securities for the purpose specified in the provision, that is, "for the purpose of making delivery of such securities in the case of short sales, failure to receive securities he is required to deliver, or other similar cases". The present language of the provision does not require that the delivery for which the securities are borrowed must be on a transaction which the borrower has himself made, either as agent or as principal; he may borrow under the provision in order to relend to someone else for the latter person to make such a delivery. However, the borrowing must be related to an actual delivery of the type specified—a delivery in connection with a specific transaction that has already occurred or is in immediate prospect. The provision does not authorize a broker to borrow securities (or make the related deposit) merely in order that he or some other broker may have the securities "on hand" or may anticipate some need that may or may not arise in the future.

(d) The ruling in the 1940 Federal Reserve Bulletin, at page 647, is an example of a borrowing which, on the facts as given, did not meet the requirement.